Kassim M. Ferris, OSB No. 965260
Nathan C. Brunette, OSB No. 090913
STOEL RIVES LLP
760 S.W. Ninth Ave., Suite 3000
Portland, OR  97205
Telephone: (503) 224-3380
Facsimile:  (503) 220-2480

Brian C. Park (*pro hac vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101-4109
Telephone: (206) 386-7542
Facsimile:  (206) 386-7500

Attorneys for Plaintiff  Leupold & Stevens, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LEUPOLD & STEVENS, INC., | No. 3:16-cv-1570-HZ |
| Plaintiff / Counterclaim-Defendant, | **NOTICE OF FILING PLAINTIFF LEUPOLD & STEVENS MARKMAN HEARING PRESENTATION MATERIALS (JANUARY 8, 2018)** |
| v. | |
| LIGHTFORCE USA, INC. d/b/a NIGHTFORCE OPTICS and NIGHTFORCE USA. | |
| Defendant / Counterclaimant. | |

Attached as **Exhibit 1** is a copy of the presentation slides Plaintiff Leupold & Stevens,

Inc. used at the claim construction hearing on January 8, 2018.

Page 1  -  **NOTICE OF FILING LEUPOLD & STEVENS MARKMAN HEARING PRESENTATION  MATERIALS (JANUARY 8, 2018)**

Respectfully submitted this 11th day of January, 2018

STOEL RIVES LLP

*s/ Nathan C Brunette*
Kassim M. Ferris, OSB No. 965260
Nathan C. Brunette, OSB No. 090913
Elliott J. Williams, OSB No. 144835
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
*kassim.ferris@stoel.com*
*nathan.brunette@stoel.com*
*elliott.williams@stoel.com*

Brian C. Park (*pro hac vice*)
600 University Street, Suite 3600
Seattle, WA  98101-4109
Telephone: (206) 386-7542
Facsimile: (206) 386-7500
*brian.park@stoel.com*

Attorneys for Plaintiff
Leupold & Stevens, Inc.

# Exhibit 1

1.    U.S. Pat. No. 8,006,429: Telescopic Sight

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| a magnifying firearm aiming device | an instrument with an arrangement of lenses and/or mirrors that gathers visible light allowing direct observation or photographic recording of distant objects. |

# 1
## LOCKING TURRET KNOB

### RELATED APPLICATIONS

This application is a national phase entry under 35 U.S.C. §371 of International Application No. PCT/US2005/043336, filed Nov. 30, 2005 and claims the benefit under 35 U.S.C. §119(e) of U.S. Provisional Patent Application Ser. No. 60/632,331, filed Nov. 30, 2004 and U.S. Provisional Patent Application Ser. No. 60/638,561, filed Dec. 22, 2004, which are incorporated by reference herein.

### BACKGROUND

The present disclosure relates to an optical enhancing device, such as a telescopic observation sighting device or individual shoulder (or hand-fired) firearms sighting device (telescopic sight herein). Embodiments described herein may also be used with any optical enhancing device containing adjusters, such as a microscope, telescope, etc. For purposes of illustration, it will be assumed herein that the optical enhancing device is a telescopic sight. A telescopic sight, typically used to aim a firearm, is usually mounted on the firearm. An adjustment knob on a telescopic sight is typically used for changing a setting of an adjuster that may change the adjustment of, for example, elevation, crossrange (also "windage" herein), or parallax of the telescopic sight. Parameters such as elevation, crossrange, and parallax, may be painstakingly set in order that the firearm hit a specific target. Once set for a particular target, the setting preferably remains unchanged until after a shot is fired.

4.    U.S. Pat. No. 9,665,120: Sighting Device

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| an aiming device | a device for observation with an optical enhancing device such as a telescope or riflescope |

# 1
## LOCKING TURRET KNOB

### RELATED APPLICATIONS

This application is a national phase entry under 35 U.S.C. §371 of International Application No. PCT/US2005/043336, filed Nov. 30, 2005 and claims the benefit under 35 U.S.C. §119(e) of U.S. Provisional Patent Application Ser. No. 60/632,331, filed Nov. 30, 2004 and U.S. Provisional Patent Application Ser. No. 60/638,561, filed Dec. 22, 2004, which are incorporated by reference herein.

### BACKGROUND

The present disclosure relates to an optical enhancing device, such as a telescopic observation sighting device or individual shoulder (or hand-fired) firearms sighting device (telescopic sight herein). Embodiments described herein may also be used with any optical enhancing device containing adjusters, such as a microscope, telescope, etc. For purposes of illustration, it will be assumed herein that the optical enhancing device is a telescopic sight. A telescopic sight, typically used to aim a firearm, is usually mounted on the firearm. An adjustment knob on a telescopic sight is typically used for changing a setting of an adjuster that may change the adjustment of, for example, elevation, crossrange (also "windage" herein), or parallax of the telescopic sight. Parameters such as elevation, crossrange, and parallax, may be painstakingly set in order that the firearm hit a specific target. Once set for a particular target, the setting preferably remains unchanged until after a shot is fired.

4.   U.S. Pat. No. 9,665,120: Sighting Device

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| an aiming device | a device for observation with an optical enhancing device such as a telescope or riflescope |

## U.S. Patent No. 6,657,784

### (Sample *Swarovski Optik* patent re understanding of OSA)

US (P) No 6,657,784 (issued to 12/2/2003 to Swaraovski Optik)



FIG.1

telescope (1)

sighting device (4)

4.    U.S. Pat. No. 9,665,120: Sighting Device

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| an aiming device | a device for observation with an optical enhancing device such as a telescope or riflescope |

## **Example from Telescope**
### (re understanding of OSA)



1.    U.S. Pat. No. 8,516,736: Actuator / Lock Actuator / Drives

| | Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|---|
| Actuator | Plain meaning. Needs no construction.\n\nAlternatively: a device that puts another structure into motion or action | a motor-driven device that is connected to a computer and is responsive to commands from the computer |
| Lock Actuator | a structure that operates the locking mechanism | a motor-driven device that is connected to a computer and adjusts the locking mechanism in response to computer commands |
| Drives | moves by force | motor-supplied movement of a component to propel another component |

,736 B2

4

FIG. 10 shows a flow diagram for making a locking turret knob according to one embodiment.

DETAILED DESCRIPTION

According to one embodiment, an adjustment knob is provided for an optical setting, such as elevation, windage, parallax, or illuminated reticle power control of an optical-based instrument, such as a telescopic sighting system, a telescope or a microscope, that is mechanically lockable and weather proof, thereby eliminating inadvertent adjustment of an optical setting by accidental physical contact. Accordingly, the user may mechanically unlock the adjustment knob to make a desired adjustment of an optical or power setting. Thus, optical or power settings made by a user are reliably maintained regardless of the environmental conditions or whether the adjustment knob is accidentally touched.

1.    U.S. Pat. No. 8,516,736: The Second Portion <mark>Selectively Movable</mark> Between Locked and Unlocked Positions

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| Plain meaning. Needs no construction. Alternatively: the second portion is moveable <mark>by a user</mark> between a first position where it is unable to be rotated about the axis of rotation relative to the firearm sighting device, and a second position where it is able to be rotated about the axis of rotation relative to the firearm sighting device | The second portion is moveable between a first position where it is unable to be rotated about the axis of rotation, and a second position where it is able to be rotated about the axis of rotation, <mark>where the first position is chosen from multiple positions</mark> where the second portion is unable to be rotated about the axis of rotation. |



**Fig. 1**
**(side view of turret knob – locked)**

FIG. 1
LOCKED

See, e.g., '736 patent, col. 4:66 - col. 5:9.



**Fig. 2**
**(side view of turret knob – unlocked)**

FIG. 2
UNLOCKED

See, e.g., '736 patent, col. 4:66 - col. 5:9.

### 1.    U.S. Pat. No. 9,665,120: Engage One Another in a Locked Position

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| secure in position to prevent rotation relative to one another[1] | unable to be rotated about the axis of rotation of the knob |

---

[1] In Leupold's opening brief, this proposed construction included a typographical error by inserting the word "and" instead of "to." Leupold Brief at 20. The Joint Claim Construction Chart contains the accurate version of Leupold's proposed construction for this term (Dkt. 45 at 93) and is reproduced here.



3.    U.S. Pat. No. 9,170,068: [A] Locking Adjustment Device for Adjusting a
Setting of a Riflescope or Other Aiming Device

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| a securable adjuster of a weapon targeting device | "for adjusting a setting of a riflescope or other aiming device" is not an element of the claims for two reasons: 1) it is preamble; and 2) it is intended use language. To the extent it is considered an element of the claims "or other aiming device" includes any optics device that benefit from adjustment of one or more of parallax, focus, illumination brightness, or other suitable features, including riflescopes, telescopes, binoculars, spotting scopes, and other aimed optical devices. Cameras and video cameras are not excluded. |



FIG. 7

7.    **U.S. Pat. No. 9,170,068: Around**

| Leupold's Proposed Construction | Nightforce's Proposed Construction |
|---|---|
| Plain meaning. Needs no construction.<br><br>Alternatively: to the side of | on all sides of; encircle |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

**Quint Crispin**                                                    Confirmation No. 1045

Application No. 13/343,656

Filed: January 4, 2012

For:  LOCKING ADJUSTMENT DEVICE

Group Art Unit:  3641

Examiner:  Benjamin S. Gomberg

Attorney Docket No. 48139/5930

Date:  June 24, 2015

AMENDMENT AND RESPONSE TO FINAL OFFICE ACTION

TO THE COMMISSIONER FOR PATENTS:

In response to the March 11, 2015 Office action, please amend the above-identified patent application as follows.

**Amendments to the Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

L&S002202

Exhibit 26
Page 1 of 5

**Listing of Claims**

1.  (Currently Amended)  A locking adjustment device for adjusting a setting of a riflescope or other aiming device, comprising:

a guideway including a curved slide surface extending around a rotational axis, and a notch formed at a first end of in the curved slide surface;

a knob mountable over the guideway for rotation about the rotational axis when the adjustment device is installed on the aiming device;

a guide tab carried by the knob for rotation therewith and slidably received in the guideway when the adjustment device is installed on the aiming device, the guide tab being movable relative to the knob and biased against the curved slide surface so as to urge at least a portion of the guide tab toward the notch when the knob is rotated to a locked position at which the guide tab is aligned with the notch, thereby preventing inadvertent rotation of the knob relative to the aiming device from the locked position; and

a button carried by the knob for rotation therewith, the button operably associated with the guide tab and movable therewith relative to the knob when the button is manually depressed to urge the guide tab out of the notch and thereby allow the knob to be manually rotated about the rotational axis away from the locked position.

2.  (Currently Amended)  The locking adjustment device of claim 1, wherein the guideway includes a second curved slide surface extending around the axis and linked to the curved slide surface via a transition section, wherein the guide tab is movable along the second curved slide surface and the transition section when the knob is rotated.

3.  (Currently Amended)  The locking adjustment device of claim 2, wherein the guideway includes a second end on the second curved slide surface, and wherein the second end defines includes a stop that blocks the guide tab to limit rotation of the knob beyond the second end stop.

4.  (Currently Amended)  The locking adjustment device of claim 3, wherein the guideway is spiraled and the curved slide surface is at a first radial position from the rotational axis and the second curved slide surface is at a second radial position from the rotational axis.

2

L&S002203

Exhibit 26
Page 2 of 5

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

**Quint Crispin**                                                    Confirmation No. 1045

Application No. 13/343,656

Filed:  January 4, 2012

For:  **LOCKING ADJUSTMENT DEVICE**

Group Art Unit:  3641

Examiner:  Benjamin S. Gomberg

Attorney Docket No. 48139/5930

Date:  June 24, 2015

<mark>AMENDMENT AND RESPONSE TO FINAL OFFICE ACTION</mark>

TO THE COMMISSIONER FOR PATENTS:

In response to the March 11, 2015 Office action, please amend the above-identified patent application as follows.

**Amendments to the Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

L&S002202

**Listing of Claims:**

1. (Currently Amended)  A locking adjustment device for adjusting a setting of a riflescope or other aiming device, comprising:

a guideway including a ~~curved~~ slide surface extending around a rotational axis, and a notch formed ~~at a first end of~~ in the ~~curved~~ slide surface;

a knob mountable over the guideway for rotation about the rotational axis when the adjustment device is installed on the aiming device;

a guide tab carried by the knob for rotation therewith and slidably received in the guideway when the adjustment device is installed on the aiming device, the guide tab being movable relative to the knob and biased against the ~~curved~~ slide surface so as to urge at least a portion of the guide tab toward the notch when the knob is rotated to a locked position at which the guide tab is aligned with the notch, thereby preventing inadvertent rotation of the knob relative to the aiming device from the locked position; and

a button carried by the knob for rotation therewith, the button operably associated with the guide tab and movable therewith relative to the knob when the button is manually depressed to urge the guide tab out of the notch and thereby allow the knob to be manually rotated about the rotational axis away from the locked position.

2. (Currently Amended)  The locking adjustment device of claim 1, wherein the guideway includes a second ~~curved~~ slide surface extending around the axis and linked to the ~~curved~~ slide surface via a transition section, wherein the guide tab is movable along the second ~~curved~~ slide surface and the transition section when the knob is rotated.

3. (Currently Amended)  The locking adjustment device of claim 2, wherein the ~~guideway includes a second end on the~~ second ~~curved~~ slide surface~~, and wherein the second end defines~~ includes a stop that blocks the guide tab to limit rotation of the knob beyond the ~~second end~~ stop.

4. (Currently Amended)  The locking adjustment device of claim 3, wherein the guideway is spiraled and the ~~curved~~ slide surface is at a first radial position from the rotational axis and the second ~~curved~~ slide surface is at a second radial position from the rotational axis.

5. (Currently Amended)  The locking adjustment device of claim 1, further comprising an indicator unit carried by the knob and movable relative to the knob, the indicator unit visible on a surface of the knob, wherein the indicator unit is at a first position when the guide tab is aligned with the notch and at a second position when the guide tab is positioned along the ~~curved~~ slide surface away from the ~~first end~~ notch.

6. (Previously Presented)  The locking adjustment device of claim 5, wherein the indicator unit is coupled to the guide tab, and the locking adjustment device further comprises a biasing element operatively associated with the guide tab and the indicator unit to urge movement of the indicator unit from the second position to the first position.

7. (Original)  The locking adjustment device of claim 5, wherein the indicator unit is slidably received in a slot arranged on the surface of the knob.

8. (Currently Amended)  The locking adjustment device of claim 3, further comprising:

an indicator unit coupled to the guide tab and visible on a surface of the knob; and

a biasing element operatively associated with the guide tab and the indicator unit, wherein the indicator unit is at a first position when the guide tab is aligned with the notch, a second position when the guide tab is positioned along the ~~curved~~ slide surface away from the notch, and a third position when the guide tab is positioned along the second ~~curved~~ slide surface, and wherein the biasing element urges movement of the indicator unit from the third position to the second position and from the second position to the first position.

9. (Previously Presented)  The locking adjustment device of claim 1, wherein the aiming device includes a housing and the locking adjustment device further comprises:

a spindle mounted to the housing for rotation about the axis; and

a threaded plunger extending within the housing of the aiming device and threadably coupled to the spindle, wherein rotation of the spindle about the axis causes movement of the threaded plunger along the axis.

10. (Original)  The locking adjustment device of claim 9, wherein the guideway is formed along a substantially circular guide ring.

L&S002204

Exhibit 26
Exhibit to Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 12 of 82

11. (Previously Presented)  The locking adjustment device of claim 10, further comprising a retaining ring surrounding the spindle for securing the spindle to the housing, wherein the guide ring is press fit to the retaining ring.

12. (Previously Presented)  The locking adjustment device of claim 1, wherein the notch extends in a radial direction relative to the rotational axis, and wherein the guide tab is biased in the radial direction.

13. (Previously Presented)  The locking adjustment device of claim 12, wherein the guide tab extends inwardly within the knob toward the aiming device.

14-20. (Cancelled)

21. (Previously Presented)  The locking adjustment device of claim 1, wherein the guideway comprises a channel.

22. (Previously Presented)  The locking adjustment device of claim 1, wherein a radial distance from the guide tab to the rotational axis changes when the button is depressed.

23. (Currently Amended) The locking adjustment device of claim 1, wherein the guide tab automatically transitions from the ~~curved~~ slide surface into the notch when the knob is rotated to the locked position.

24. (New)  The locking adjustment device of claim 1, wherein the knob further includes a scale comprising indicia spaced apart on a circumference of the knob to facilitate fine adjustments.

25. (New)  The locking adjustment device of claim 1, wherein the locked position corresponds to a baseline position of the adjustable setting.

## Remarks

Claims 1-23 are in the application, of which claims 1 and 14 are in independent form. Claims 1-5, 8, and 23 have been amended and dependent claims 24 and 25 have been added without adding new matter. Claims 14-20 have been cancelled.

### *Allowable Subject Matter*

The Office action mailed March 11, 2015 indicates claims 1-13 and 21-23 are allowed. Applicant thanks the examiner for favorable consideration of these claims.

### *Claim Rejections*

The Office action rejects claims 14-20 under 35 U.S.C. § 102(b) as being unpatentable over WO 2010/008810 of Windauer. To expedite prosecution, claims 14-20 have been cancelled from the application. Accordingly, the rejection is moot and it is requested that the rejection be withdrawn.

### New Claims 24 and 25

Claims 24-25, which depend from claim 1, have been added. Accordingly, dependent claims 24-25 should be allowable at least because they depend from an allowable base claim.

### *Conclusion*

Thus it is respectfully submitted that claims 1-13 and 21-25 are allowable and a Notice of Allowance is earnestly solicited. The Examiner is invited to contact the undersigned attorney if it determined that such communication would promote progress of this application.

This Response is being timely filed within four months of the date of the Office action. The Commissioner is hereby authorized to charge any *additional* fees which may be required in connection with filing of this paper, or credit overpayment, to Deposit Acct. No. 19-4455.

Respectfully submitted,

By *Alfredo Villanueva*

Alfredo Villanueva
Registration No. 66,301

STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204-1268
Telephone: (503) 224-3380

L&S002206



# *Leupold and Stevens, Inc. v. Lightforce USA, Inc.*

# Case No. 3:16-cv-01570-HZ

# Jan. 8, 2018  *Markman* Hearing

# U.S. Patent No. 6,351,907
## *Spiral Cam Mechanism for Rifle Sight Adjustment*

# ILLUSTRATIVE EXAMPLE OF OPERATION:

### LEUPOLD & STEVENS, INC.

U.S. Patent No. 6,351,907: Sprial Cam Mechanism for Rifle Sight Adjusment
(Claim Terms: "Along the Longitudinal Axis", "Drive Face", "Cam Track", & "Cam Follower")

3



# "Drive Face"

# DESCRIPTION IN THE SPECIFICATION

(12) **United States Patent**
**Otteman**

(10) **Patent No.: US 6,351,907 B1**
(45) **Date of Patent: Mar. 5, 2002**

(54) **SPIRAL CAM MECHANISM FOR RIFLE SIGHT ADJUSTMENT**

(75) Inventor: **Rodney H. Otteman**, Aloha, OR (US)

(73) Assignee: **Leupold & Stevens, Inc.**, Beaverton, OR (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/494,963**

(22) Filed: **Jan. 31, 2000**

(51) **Int. Cl.**[7] ..... **F41G 1/00**
(52) **U.S. Cl.** ..... **42/120**
(58) **Field of Search** ..... 33/245-250, 359/399, 359/693, 356/247, 350/187; 42/122

(56) **References Cited**

U.S. PATENT DOCUMENTS

FOREIGN PATENT DOCUMENTS

* cited by examiner

*Primary Examiner*—Michael J. Carone
*Assistant Examiner*—Denise J Buckley
(74) *Attorney, Agent, or Firm*—Stoel Rives LLP

(57) **ABSTRACT**

A focus adjustment mechanism for a telescopic rifle sight includes a rotatable cam hub including a drive face and a spiral cam track formed in the drive face around an axis of rotation. An actuator slide of the adjustment mechanism is slidably mounted to a housing of the telescopic rifle sight for movement along a longitudinal axis of the housing. The actuator slide includes a cam follower that is operably engaged in the spiral cam track so that the actuator slide moves generally along the longitudinal axis in response to rotation of the cam hub to changing a setting of the adjustment mechanism. The actuator slide is operatively connected to a movable optical element positioned within the housing of the telescopic rifle sight to drive the optical element in response to rotation of the cam hub. The rate of linear movement of the optical element relative to the rate of rotation of the cam hub is controlled by the shape and arcuate angle of the spiral cam track. A spring biases the actuator slide relative to the housing to prevent rifle recoil from inducing changes to the setting of the adjustment mechanism.

**20 Claims, 5 Drawing Sheets**

Col. 3, ll. 28-36; Col. 5 ll. 50-67; Fig. 6B.

STOEL RIVES LLP

# DESCRIPTION IN THE SPECIFICATION

The focus control knob of the present invention includes a cam hub mounted to the housing for rotation about an axis of rotation. The cam hub includes a drive face positioned facing the interior of the housing and a spiral cam track formed in the drive face around the axis of rotation and spiraling outwardly from the axis of rotation. An actuator 30



Col. 3, ll. 28-36; Col. 5 ll. 50-67; Fig. 6B.    5

# DESCRIPTION IN THE SPECIFICATION

The focus control knob of the present invention includes a cam hub mounted to the housing for rotation about an axis of rotation. The cam hub includes a drive face positioned facing the interior of the housing and a spiral cam track formed in the drive face around the axis of rotation and spiraling outwardly from the axis of rotation. An actuator 30

within a guide slot 128 of housing 12. Guide slot 128 is oriented generally parallel to longitudinal axis 14 of housing 12. A cam hub 134 is rotatably mounted to housing 12 so that actuator 122 is slidably captured between housing 12 and a drive face 136 of cam hub 134. FIGS. 6A and 6B are respective enlarged top and bottom perspective views of cam hub 134 showing detail of drive face 136. With reference to FIGS. 4, 5, 6A, and 6B, a cam follower pin 140 of actuator 122 extends into and is guided by a spiral cam groove 142 formed in drive face 136. Rotation of cam hub 134 about its axis of rotation 144 drives actuator 122 along guide slot 128, which in turn moves movable objective lens portion 26 along longitudinal axis 14 to adjust the focus of sight 10. The size of spiral cam groove 142 determines the amount of travel of actuator 122 and objective lens portion 26. The size of spiral cam groove 142 is limited only by the diameter of drive face 136. Cam hub 134 is preferably molded of a plastic resin, such as, for example, nylon, for 50 55 60 65



Col. 3, ll. 28-36; Col. 5 ll. 50-67; Fig. 6B.    5

# DESCRIPTION IN THE SPECIFICATION

The focus control knob of the present invention includes a cam hub mounted to the housing for rotation about an axis of rotation. The cam hub includes a drive face positioned 30 facing the interior of the housing and a spiral cam track formed in the drive face around the axis of rotation and spiraling outwardly from the axis of rotation. An actuator

within a guide slot 128 of housing 12. Guide slot 128 is 50 oriented generally parallel to longitudinal axis 14 of housing 12. A cam hub 134 is rotatably mounted to housing 12 so that actuator 122 is slidably captured between housing 12 and a drive face 136 of cam hub 134. FIGS. 6A and 6B are 55 respective enlarged top and bottom perspective views of cam hub 134 showing detail of drive face 136. With reference to FIGS. 4, 5, 6A, and 6B, a cam follower pin 140 of actuator 122 extends into and is guided by a spiral cam groove 142 formed in drive face 136. Rotation of cam hub 134 about its axis of rotation 144 drives actuator 122 along 60 guide slot 128, which in turn moves movable objective lens portion 26 along longitudinal axis 14 to adjust the focus of sight 10. The size of spiral cam groove 142 determines the amount of travel of actuator 122 and objective lens portion 26. The size of spiral cam groove 142 is limited only by the 65 diameter of drive face 136. Cam hub 134 is preferably molded of a plastic resin, such as, for example, nylon, for



(12) United States Patent
Otteman

(10) Patent No.:    US 6,351,907 B1
(45) Date of Patent:    Mar. 5, 2002

(54) SPIRAL CAM MECHANISM FOR RIFLE
      SIGHT ADJUSTMENT

(75) Inventor: Rodney H. Otteman, Aloha, OR (US)

(73) Assignee: Leupold & Stevens, Inc., Beaverton,
      OR (US)

(*) Notice: Subject to any disclaimer, the term of this
      patent is extended or adjusted under 35
      U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/494,963

(22) Filed: Jan. 31, 2000

(51) Int. Cl.⁷ .......................... F41G 1/00
(52) U.S. Cl. .......................... 42/120
(58) Field of Search .......... 33/245–298, 356/399;
                              359/693, 356/247, 360/247, 42/122

(56)              References Cited
            U.S. PATENT DOCUMENTS

(57)              ABSTRACT

Col. 3, ll. 28-36; Col. 5 ll. 50-67; Fig. 6B.    5

# THE PARTIES' DIFFERING CONSTRUCTIONS:

Leupold:

- A surface in which the cam track is formed

6

STOEL RIVES LLP
Exhibit 1 - Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 23 of 82

# THE PARTIES' DIFFERING CONSTRUCTIONS:

## Leupold:

- A surface in which the cam track is formed

## Nightforce:

- The face of a cam hub that contacts and drives an actuator positioned between the cam hub and a housing of a rifle sight.

6

# THE PARTIES' DIFFERING CONSTRUCTIONS:

## Leupold:

- A surface in which the cam track is formed

## Nightforce:

- The face of a cam hub that contacts and drives an actuator positioned between the cam hub and a housing of a rifle sight.



FIG. 6B

6

# THE PARTIES' DIFFERING CONSTRUCTIONS:

## Leupold:

- A surface in which the cam track is formed

## Nightforce:

- The face of a cam hub that contacts and drives an actuator positioned between the cam hub and a housing of a rifle sight.



FIG. 6B

6

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 26 of 82

# THE PARTIES' DIFFERING CONSTRUCTIONS:

Leupold:

- A surface in which the cam track is formed

Nightforce:

- The face of a cam hub that contacts and drives an actuator positioned between the cam hub and a housing of a rifle sight.





6

# THE PARTIES' DIFFERING CONSTRUCTIONS:

Leupold:

- A surface in which the cam track is formed

Nightforce:

- The face of a cam hub that contacts and drives an actuator positioned between the cam hub and a housing of a rifle sight.





6

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B

STOEL RIVES LLP
Exhibit 1 - Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 29 of 82

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B

7

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B



FIG. 5

7

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B



FIG. 5

7

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B



FIG. 5

7

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B



FIG. 5

7

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 34 of 82

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



STOEL RIVES LLP

# FIG. 5 IS CONSISTENT WITH FIG. 6B:



FIG. 6B

FIG. 5



"Cam Track"

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.

9

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 38 of 82

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification. Claims limited to "cam track" that is a **groove**, not a **rail**.



FIG. 6B

9

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 39 of 82

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.



FIG. 6B

136 = "Drive Face"

9

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.



FIG. 6B

136 = "Drive Face"

9

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.

1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising: _10_

a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a ==spiral cam track formed in the drive face== around the _15_ axis of rotation; and

an actuator slidably mounted for movement along the longitudinal axis of the housing and including a ==cam follower operably engaged in the spiral cam track== so _20_ that the actuator moves generally along the longitudinal axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.



FIG. 6B

136 = "Drive Face"

9

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.

> 1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising:                                      10
>
> a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a spiral cam track formed in the drive face around the    15 axis of rotation; and
>
> an actuator slidably mounted for movement along the longitudinal axis of the housing and including a cam follower operably engaged in the spiral cam track so that the actuator moves generally along the longitudinal    20 axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.

9



FIG. 6B

136 = "Drive Face"

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 43 of 82

# CLAIM LANGUAGE IS DETERMINATIVE

- Language of claims does not extend to alternative embodiments taught in specification.  Claims limited to "cam track" that is a **groove**, not a **rail**.

> 1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising:   10
>
> a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a spiral cam track formed in the drive face around the   15 axis of rotation; and
>
> an actuator slidably mounted for movement along the longitudinal axis of the housing and including a cam follower operably engaged in the spiral cam track so that the actuator moves generally along the longitudinal   20 axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.

9



FIG. 6B

136 = "Drive Face"

STOEL RIVES LLP
Exhibit 1 - Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 44 of 82

# CLAIM DIFFERENTIATION

- Claim 6 is narrower than Claim 1 because Claim 6 requires "cam follower" to include a "pin."

> 6. The adjustment mechansim of claim 1 in which the spiral cam track includes a spiral groove and in which the cam follower includes a pin.

- "Claim differentiation" doctrine does not apply where some other claim element (here, pin) makes the dependent claim narrower than the independent claim.

  - *See* NF Response (Dkt. 58 at 22 n.13.)

10



# "Actuator"

# LEGAL PRESUMPTION *AGAINST* §112 ¶6

- Where patentee has not elected means-plus-function treatment by using triggering language ("means" or "means for") presumption that §112 ¶6 DOES NOT apply.

- To overcome the presumption Nightforce must show that the claim limitation is only a **function**, without reference to **structure**.

12

STOEL RIVES LLP

Exhibit 1 - Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 47 of 82

# LEGAL PRESUMPTIO

- Where patentee has not function treatment by us ("means" or "means for" ¶6 DOES NOT apply.

- To overcome the presum show that the claim limit without reference to **stru**

Williamson v. Citrix Online, LLC, 792 F.3d 1339 (2015)
115 U.S.P.Q.2d 1106

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by BroServices, LLC v. Certified Aviation Services, LLC, C.D.Cal., May 18, 2017

792 F.3d 1339
United States Court of Appeals,
Federal Circuit.

Richard A. WILLIAMSON, Trustee for at Home Bondholders Liquidating Trust, Plaintiff–Appellant
v.
CITRIX ONLINE, LLC, Citrix Systems, Inc., Microsoft Corporation, Adobe Systems, Inc., Defendants–Appellees
Webex Communications, Inc., Cisco Webex, LLC, Cisco Systems, Inc., Defendants–Appellees
International Business Machines Corporation, Defendant–Appellee.

No. 2013–1130.
|
June 16, 2015.

**Synopsis**

**Background:** Patentee brought action alleging infringement of patent for system and method of distributed learning. The United States District Court for the Central District of California, A. Howard Matz, J., entered stipulated judgment in alleged infringers' favor, and patentee appealed.

**Holdings:** The Court of Appeals, Linn, Circuit Judge, held that:

[1] claims requiring "graphical display" representative of classroom did not require pictorial map that identified participants' location;

[2] presumption that the means-plus-function statute does not apply to a patent claim that does not use the word "means" is not strong, overruling *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286;

[3] term "distributed learning control module," as used in patent was means-plus-function claim term; and

[4] specification did not disclose sufficient structure corresponding to the "distributed learning control module" referred to in means-plus-function claims, making those claims invalid for indefiniteness.

Affirmed in part, vacated in part, and remanded.

Reyna, Circuit Judge, filed opinion concurring in part and dissenting in part.

Opinion, 770 F.3d 1371, superseded on rehearing.

West Headnotes (21)

[1] Patents
Construction and Operation of Patents
District court's claim construction determinations based on evidence intrinsic to the patent as well as its ultimate interpretations of the patent claims are legal questions reviewed de novo.

4 Cases that cite this headnote

[2] Patents
Construction and Operation of Patents
To the extent the district court, in construing patent claims, makes underlying findings of fact based on extrinsic evidence, the Court of Appeals reviews such findings of fact for clear error.

3 Cases that cite this headnote

[3] Patents
Business methods:Internet applications
Claims in patent for system and method of distributed learning requiring "graphical display" representative of classroom did not require pictorial map that identified participants' location, even though specification disclosed examples and

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

STOEL RIVES LLP

# LEGAL PRESUMPTION

- Where patentee has not function treatment by us ("means DOE

- To over show th without

Williamson v. Citrix Online, LLC, 792 F.3d 1339 (2015)
115 U.S.P.Q.2d 1105

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by ProServices, LLC v. Certified Aviation Services,
LLC C.D.Cal., May 18, 2017

792 F.3d 1339
United States Court of Appeals,
Federal Circuit.

Richard A. WILLIAMSON, Trustee for at Home
Bondholders Liquidating Trust, Plaintiff–Appellant
v.
CITRIX ONLINE, LLC, Citrix Systems,
Inc., Microsoft Corporation, Adobe

[3] term "distributed learning control module," as used in patent was means-plus-function claim term; and

[4] specification did not disclose sufficient structure corresponding to the "distributed learning control module" referred to in means-plus-function claims, making those claims invalid for indefiniteness.

Affirmed in part, vacated in part, and remanded.

Reyna, Circuit Judge, filed opinion concurring in part and dissenting in part.

for structure. *Greenberg, 91 F.3d at 1583*. **When a claim term lacks the word "means," the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function."** *Watts, 232 F.3d at 880*. The converse presumption remains unaffected: "use of the word 'means' creates a presumption that § 112, ¶ 6 applies." *Personalized Media, 161 F.3d at 703*.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

12

STOEL RIVES LLP

# ACTUATOR: CLAIM LANGUAGE CONTEXT

US006351907B1

(12) **United States Patent**
**Otteman**

(10) **Patent No.: US 6,351,907 B1**
(45) **Date of Patent: Mar. 5, 2002**

(54) **SPIRAL CAM MECHANISM FOR RIFLE SIGHT ADJUSTMENT**

(75) Inventor: **Rodney H. Otteman**, Aloha, OR (US)

(73) Assignee: **Leupold & Stevens, Inc.**, Beaverton, OR (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/494,963**

(22) Filed: **Jan. 31, 2000**

(51) **Int. Cl.**[7] ........ **F41G 1/00**
(52) **U.S. Cl.** ........ **42/120**
(58) **Field of Search** ........ 33/245-250, 359/399, 359/403; 356/247; 350/187; 42/122

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 2,585,042 | A | * | 1/1952 | Dayton | 33/246 |
| 2,811,894 | A | * | 11/1957 | Boker | 33/246 |
| 3,095,750 | A | | 7/1963 | Mahn | 74/107 |
| 3,615,544 | A | | 10/1971 | Pilhal et al. | 95/45 |
| 3,766,751 | A | | 10/1973 | Noguchi | 350/252 |
| 3,930,720 | A | | 1/1976 | Uesugi | 350/187 |
| 4,000,508 | A | | 12/1976 | Sakaguchi et al. | 354/197 |
| 4,080,043 | A | * | 3/1978 | Altenheiner et al. | 350/76 |
| 4,247,161 | A | * | 1/1981 | Unertl, Jr. | 33/246 |
| 4,643,542 | A | | 2/1987 | Gibson | 350/562 |
| 4,998,811 | A | * | 3/1991 | Basta | 350/560 |
| 5,020,892 | A | * | 6/1991 | Glover et al. | 350/537 |
| 5,115,261 | A | | 5/1992 | Morisawa | 359/225 |
| RE34,059 | E | | 9/1992 | Akitake | 359/700 |
| 5,291,241 | A | | 3/1994 | Hirano et al. | 355/55 |

FOREIGN PATENT DOCUMENTS

DE 297 20 737 3/1998

* cited by examiner

*Primary Examiner*—Michael J. Carone
*Assistant Examiner*—Denise J Buckley
(74) *Attorney, Agent, or Firm*—Stoel Rives LLP

(57) **ABSTRACT**

A focus adjustment mechanism for a telescopic rifle sight includes a rotatable cam hub including a drive face and a spiral cam track formed in the drive face around an axis of rotation. An actuator slide of the adjustment mechanism is slidably mounted to a housing of the telescopic rifle sight for movement along a longitudinal axis of the housing. The actuator slide includes a cam follower that is operably engaged in the spiral cam track so that the actuator slide moves generally along the longitudinal axis in response to rotation of the cam hub to changing a setting of the adjustment mechanism. The actuator slide is operatively connected to a movable optical element positioned within the housing of the telescopic rifle sight to drive the optical element in response to rotation of the cam hub. The rate of linear movement of the optical element relative to the rate of rotation of the cam hub is controlled by the shape and arcuate angle of the spiral cam track. A spring biases the actuator slide relative to the housing to prevent rifle recoil from inducing changes to the setting of the adjustment mechanism.

**20 Claims, 5 Drawing Sheets**

# ACTUATOR: CLAIM LANGUAGE CONTEXT

(12) **United States Patent**
Otteman

(10) Patent No.: US 6,351,907 B1
(45) Date of Patent: Mar. 5, 2002

1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising: 10

a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a spiral cam track formed in the drive face around the axis of rotation; and 15

an actuator slidably mounted for movement along the longitudinal axis of the housing and including a cam follower operably engaged in the spiral cam track so that the actuator moves generally along the longitudinal 20 axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.

144

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 51 of 82

# ACTUATOR: CLAIM LANGUAGE CONTEXT

**United States Patent**
Otteman

(10) Patent No.: US 6,351,907 B1
(45) Date of Patent: Mar. 5, 2002

US006351907B1

1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising:

  a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a spiral cam track formed in the drive face around the axis of rotation; and

  an actuator slidably mounted for movement along the longitudinal axis of the housing and including a cam follower operably engaged in the spiral cam track so that the actuator moves generally along the longitudinal axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.

144

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 52 of 82

# ACTUATOR: CLAIM LANGUAGE CONTEXT

(12) **United States Patent**
Otteman

(10) Patent No.: **US 6,351,907 B1**
(45) Date of Patent:    Mar. 5, 2002

1. An adjustment mechanism for a telescopic rifle sight of the type including an elongate tubular housing having a longitudinal axis and a movable optical element mounted within the housing, comprising: 10

a cam hub mounted to the housing for rotation about an axis of rotation, the cam hub positioned so that the axis of rotation is substantially perpendicular to the longitudinal axis, the cam hub including a drive face and a spiral cam track formed in the drive face around the 15 axis of rotation; and

an actuator slidably mounted for movement along the longitudinal axis of the housing and including a cam follower operably engaged in the spiral cam track so that the actuator moves generally along the longitudinal 20 axis in response to rotation of the cam hub, the actuator operatively connected to the optical element to drive the optical element in response to rotation of the cam hub.

144

STOEL RIVES LLP

# *STRUCTURES* **WITH FUNCTIONAL NAMES**

- *Greenberg v. Ethicon Endo-Surgery* (Fed. Cir. 1996)
  - [T]he fact that a particular mechanism—here "<u>detent mechanism</u>"—is defined in functional terms is not sufficient to . . . [invoke] section 112(6). Many devices take their name from the functions they perform. The examples are innumerable, such as "<u>filter</u>," "<u>brake</u>," "<u>clamp</u>," "<u>screwdriver</u>," or "<u>lock</u>." Indeed, several of the devices at issue in this case have names that describe their functions, such as "<u>graspers</u>," "<u>cutters</u>," and "<u>suture applicators</u>."

14

# CASES FINDING §112 ¶6 INAPPLICABLE:

- "Acutator" is not subject to §112 ¶6:
  - *Intelligent Water Solutions, LLC v. Kohler Co.*, 2017 WL 2444723, at *18-19 (E.D.Tex. Jun. 5, 2017)

- *See also*:
  - *Sunrace Roots v. SRAM Corp.*, 336 F.3d 1298 (Fed. Cir. 2003) (affirming refusal to construe "shift actuator" more narrowly than ordinary meaning; finding term had ordinary meaning referring to structures that control changing of gears)

15

# CASES FINDING §112 ¶6 INAPPLICABLE:

- "Acutator" is not subject

  - *Intelligent Water Solut*

    2017 WL 2444723, at *1

- *See also*:

  - *Sunrace Roots v. SRA*

    (Fed. Cir. 2003) (affirm

    actuator" more narrowly

    finding term had ordina

    structures that control c



Intelligent Water Solutions, LLC v. Kohler Co., S8p Copy (2017)

2017 Markman 2444723

2017 WL 2444723
United States District Court,
E.D. Texas, Marshall Division.

INTELLIGENT WATER
SOLUTIONS, LLC, Plaintiff,
v.
KOHLER CO., Defendant.

CASE NO. 2:16-CV-689
|
Signed 06/05/2017

Go to Markman Construed Terms

Attorneys and Law Firms

Jay D. Ellwanger, Andrew Gerald Dinovo, Daniel Louis Schmid, Dinovo Price Ellwanger & Hardy LLP, Austin, TX, Shawn A. Latchford, Eric M. Albritton, Albritton Law Firm, Longview, TX, for Plaintiff.

Arthur Gollwitzer, III, Michael Best & Friedrich LLP, Austin, TX, Rachel N. Bach, Michael Best & Friedrich, LLP, Milwaukee, WI, for Defendant.

MEMORANDUM OPINION AND ORDER

ROY S. PAYNE, UNITED STATES MAGISTRATE JUDGE

*1 Before the Court is the opening claim construction brief of Plaintiff Intelligent Water Solutions, LLC. ("Plaintiff") (Dkt. No. 55, filed on April 12, 2017), the response of Defendant Kohler Co. ("Defendant") (Dkt. No. 57, filed on April 26, 2017), and the reply of Plaintiff (Dkt. No. 59, filed on May 3, 2017). The Court held a claim construction hearing on May 24, 2017. Having considered the arguments and evidence presented by the parties, the Court issues this Claim Construction Order.

Table of Contents

I. BACKGROUND....——

II. LEGAL PRINCIPLES....——

III. CONSTRUCTION OF AGREED TERMS....——

IV. CONSTRUCTION OF DISPUTED TERMS....——

A. "system control means ..."....——

B. "microprocessor ..."....——

C. "programmable digital processor ..."....——

D. "remote system monitoring / control device ..."....——

E. "fluid supply control valve" and "fluid control valve"....——

F. "fluid supply control valve actuator ..." and "fluid control valve actuator..."....——

G. "external data storage and input means ..."....——

H. "memory means ..."....——

I. "domestic water supply system"....——

J. "user interface input"....——

V. CONCLUSION....——

I. BACKGROUND
Plaintiff brings suit alleging infringement of United States Patent No. 6,286,764 ("the '764 patent" or "patent-in-suit") by the Defendant.

The application leading to the '764 patent was filed on July 14, 1999 and issued on September 11, 2001. The '764 patent is entitled "Fluid and Gas Supply System." In general, the '764 patent is directed to a fluid or gas delivery system that controls temperature, flow rate, and volume at a system outlet by controlling/regulating valves and/or flows. The Abstract of the '764 patent states:

A fluid or gas delivery system is provided for controlling fluid or gas temperature, flow rate and volume at a system outlet. The system comprises single or double control valves for regulating flow of a first fluid or gas and a second fluid or

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   1

# CASES FINDING §112 ¶6 INAPPLICABLE:

Here, the disputed term does not recite the word "**means**." Therefore, there is a rebuttable presumption that § 112, ¶ 6 does not apply. While the Defendant argues that the use of the term "**actuator**" is a nonce term, the Court disagrees. The term "**actuator**" is not a nonce term, such as the generic terms "mechanism," "element," "device," and similar nonce words. Thus, there is a presumption that this term is not a **means-plus-function** limitation. And as detailed below, Defendant has failed to rebut the presumption because "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite **meaning** as the name for structure." *Williamson*, 792 F.3d at 1348. Overall, the Court finds that the disputed "**actuator**" terms provide sufficiently definite structure given the context of the limitations in which the claim terms are found.

As provided by the Plaintiff, "**actuator**" is a well known word and is defined in the Dictionary of Mechanical Engineering as "[a]n electric, hydraulic, mechanical or pneumatic device, or combination of these to effect some predetermined linear or rotating movement." The fact that a technical dictionary, which is evidence of the understandings of persons of skill in the art, provides a **meaning** to the "**actuator**" term plainly indicates that the term "**actuator**" connotes structure. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (finding structure for the term "circuit" based at least in part on "circuit" being defined in a technical

---

Intelligent Water Solutions, LLC v. Kohler Co., Slip Copy (2017)
2017 Markman 2444723

2017 WL 2444723
United States District Court,
E.D. Texas, Marshall Division.

INTELLIGENT WATER
SOLUTIONS, LLC, Plaintiff,
v.
KOHLER CO., Defendant.

CASE NO. 2:16-CV-689

Signed 06/05/2017

**Go to Markman Construed Terms**

**Attorneys and Law Firms**

Jay D. Ellwanger, Andrew Gerald Dinovo, Daniel Louis Schmid, Dinovo Price Ellwanger & Hardy LLP, Austin, TX, Shawn A. Latchford, Eric M. Albritton, Albritton Law Firm, Longview, TX, for Plaintiff.

Arthur Gollwitzer, III, Michael Best & Friedrich LLP, Austin, TX, Rachel N. Bach, Michael Best & Friedrich, LLP, Milwaukee, WI, for Defendant.

**MEMORANDUM OPINION AND ORDER**

ROY S. PAYNE, UNITED STATES MAGISTRATE JUDGE

\*1 Before the Court is the opening claim construction brief of Plaintiff Intelligent Water Solutions, LLC. ("Plaintiff") (Dkt. No. 55, filed on April 12, 2017), the response of Defendant Kohler Co. ("Defendant") (Dkt. No. 57, filed on April 26, 2017), and the reply of Plaintiff (Dkt. No. 59, filed on May 3, 2017). The Court held a claim construction hearing on May 24, 2017. Having considered the arguments and evidence presented by the parties, the Court issues this Claim Construction Order.

**Table of Contents**

I. BACKGROUND...——
II. LEGAL PRINCIPLES...——
III. CONSTRUCTION OF AGREED TERMS...——
IV. CONSTRUCTION OF DISPUTED TERMS...——
  A. "system control **means** ..."...——
  B. "microprocessor ..."...——
  C. "programmable digital processor ..."...——
  D. "remote system monitoring / control device ..."...——
  E. "fluid supply control valve" and "fluid control valve"...——
  F. "fluid supply control valve **actuator** ..." and "fluid control valve **actuator** ..."...——
  G. "external data storage and input **means** ..."...——
  H. "memory **means** ..."...——
  I. "domestic water supply system"...——
  J. "user interface input"...——
V. CONCLUSION...——

**I. BACKGROUND**

Plaintiff brings suit alleging infringement of United States Patent No. 6,286,764 ("the '764 patent" or "patent-in-suit") by the Defendant.

The application leading to the '764 patent was filed on July 14, 1999 and issued on September 11, 2001. The '764 patent is entitled "Fluid and Gas Supply System." In general, the '764 patent is directed to a fluid or gas delivery system that controls temperature, flow rate, and volume at a system outlet by controlling/regulating valves and/or flows. The Abstract of the '764 patent states:

> A fluid or gas delivery system is provided for controlling fluid and gas temperature, flow rate and volume at a system outlet. The system comprises single or double control valves for regulating flow of a first fluid or gas and a second fluid or

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 57 of 82

CASES FINDING §112 ¶6 INAPPLICABLE

Here, the disputed term does not recite the word "**means**." Therefore, there is a rebuttable presumption that § 112, ¶ 6 does not apply. While the Defendant argues that the use of the term "**actuator**" is a nonce term, the Court disagrees. The term "**actuator**" is not a nonce term, such as the generic terms "mechanism," "element," "device," and similar nonce words. Thus, there is a presumption that this term is not a **means-plus-function** limitation. And as detailed below, Defendant has failed to rebut the presumption because "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite **meaning** as the name for structure." *Williamson*, 792 F.3d at 1348. Overall, the Court finds that the disputed "**actuator**" terms provide sufficiently definite structure given the context of the limitations in which the claim terms are found.

As provided by the Plaintiff, "**actuator**" is a well known word and is defined in the Dictionary of Mechanical Engineering as "[a]n electric, hydraulic, mechanical or pneumatic device, or combination of these to effect some predetermined linear or rotating movement." The fact that a technical dictionary, which is evidence of the understandings of persons of skill in the art, provides a **meaning** to the "**actuator**" term plainly indicates that the term "**actuator**" connotes structure. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (finding structure for the term "circuit" based at least in part on "circuit" being defined in a technical

dictionary). Far from being a placeholder, "**actuator**" defines a class of structures to a person of ordinary skill. "[I]t is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *TecSec*, 731 F.3d at 1347 (*citing Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-60 (Fed. Cir. 2004)).

**\*19** Consistent with this understanding, the specification provides an example of the **actuator means** as being any electric, pneumatic, hydraulic, or magnetically driven motor, or solenoid, as well as a stepper motor. *See, e.g.*, '764 patent, col. 5, ll. 34-66; col. 8, ll. 14-21; col. 16, ll. 10-12. Further, the claim terms provide meaningful context and describe how the "**actuator**" interacts with other components. For example, the "flow control valve **actuator**" is "operatively connected to said flow control valve for **actuating** opening and closure operations thereof." Similarly, the "fluid supply control **actuator**" is "operatively connected to said fluid supply valve for **actuating** opening and closure operations thereof." The Court finds that the Defendant has not rebutted the presumption that the term is not a **means-plus-function**

Table of Contents

I. BACKGROUND....—

# CASES FINDING §112 ¶6 INAPPLICABLE

Here, the disputed term does not recite the word "**means**." Therefore, there is a rebuttable presumption that § 112, ¶ 6 does not apply. While the Defendant argues that the use of the term "**actuator**" is a nonce term, the Court disagrees. The term "**actuator**" is not a nonce term, such as the generic terms "mechanis[m]" and similar nonce words. Thu[s] that this term is not a **means** And as detailed below, Defen[d] the presumption because "the understood by persons of ordin[a] a sufficiently definite **meaning** *Williamson*, 792 F.3d at 1348. O[n] the disputed "**actuator**" terms p[r] structure given the context of th[e] claim terms are found.

As provided by the Plaintiff, "[a] word and is defined in the D[] Engineering as "[a]n electric, pneumatic device, or combinati[on] predetermined linear or rotati[] that a technical dictionary, w[] understandings of persons of skill in the art, provides a **meaning** to the "**actuator**" term plainly indicates that the term "**actuator**" connotes structure. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (finding structure for the term "circuit" based at least in part on "circuit" being defined in a technical

dictionary). Far from being a placeholder, "**actuator**" defines a class of structures to a person of ordinary skill. "[I]t is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by [] 347 (*citing Lighting [E]tc.*, 382 F.3d 1354,

limitation. On balance, the Plaintiff has persuasively demonstrated that the disputed term refers to a particular class of structures and/or that the disputed term's use of the word "**actuator**" (along with other limitations) is structural rather than functional. Thus, the term is a not **means-plus-function** limitation governed by 35 U.S.C § 112, ¶ 6.

One of ordinary skill in the art, based upon the specification and the claims, would understand the disputed terms to have their plain and ordinary **meaning**. The Court rejects Defendants' arguments to the contrary. No further clarification of the terms is necessary. Because this resolves the dispute between the parties, the Court finds that the term requires no further construction.

[] the specification [] **means** as being [] magnetically driven [] [motor]. *See, e.g.,* [] ll. 14-21; col. 16, [] provide meaningful [] **actuator**" interacts with [] "flow control valve [] said flow control [] closure operations [] control **actuator**" [] supply valve for [] ions thereof." The [] not rebutted the [] **means-plus-function**

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# REJECTING §112 ¶6 IS SUFFICIENT TO RESOLVE THE PARTIES' DISPUTE

- NF's case involves a very different situation
  - *Eon Corp. IP Holdings LLC v. Silver Spring Network*, 815 F.3d 1314 (Fed. Cir. 2016)

- *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015)

- *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206–07 (Fed. Cir. 2010)

16

# REJECTING §112 ¶6 IS SUFFICIENT TO RESOLVE THE PARTIES' DISPUTE

- NF's case involves a very di[…]
  - *Eon Corp. IP Holdings LL*[…] *Network*, 815 F.3d 1314 (F[…]
- *Summit 6, LLC v. Samsun*[…] 1283, 1291 (Fed. Cir. 2015)
- *Finjan, Inc. v. Secure Com*[…] F.3d 1197, 1206–07 (Fed. C[…]

Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197 (2010)
97 U.S.P.Q.2d 1161

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Tomtom, Inc. v. Adolph, E.D.Va., November 24, 2015

626 F.3d 1197
United States Court of Appeals,
Federal Circuit.

FINJAN, INC. (Formerly Finjan Software, Ltd.), Plaintiff–Cross Appellant,
v.
SECURE COMPUTING CORPORATION, Cyberguard Corporation, and Webwasher AG, Defendants–Appellants,
and
Does 1 through 100, Defendants.

Nos. 2009–1576, 2009–1594.
|
Nov. 4, 2010.
|
Rehearing and Rehearing En Banc Denied May 26, 2011.

**Synopsis**
**Background:** Patentee brought action against competitor, alleging infringement of patents directed to "proactive scanning" technology for computer security. Competitor counterclaimed for infringement of its own patents. Following jury trial, the United States District Court for the District of Delaware, Gregory M. Sleet, Chief Judge, entered judgment in favor of patentee, and subsequently, 2009 WL 2524495,granted in part and denied in part parties' post-trial motions. Competitor appealed and patentee cross-appealed.

**Holdings:** The Court of Appeals, Linn, Circuit Judge, held that:

[1] patentee's failure to allege indirect or joint infringement was not fatal to its claim that competitor infringed patents' "system" and "storage medium" claims;

[2] evidence was insufficient to demonstrate competitor directly infringed patents' method claims in United States;

[3] district court was not required to provide additional guidance to jury on construction of claim term construed to have its plain and ordinary meaning;

[4] competitor failed to rebut presumption that jurors followed their charge to not include sales of accused products to United States government in calculating royalty base for purposes of damages award;

[5] substantial evidence supported jury's award of damages based on expert's calculation of royalty percentages; and

[6] patentee was entitled to damages award for lost sales incurred during period between date of entry of original judgment and date amended judgment was entered.

Affirmed in part, reversed in part, and remanded.

**Attorneys and Law Firms**

*1200 Daryl L. Joseffer, King & Spalding LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were Paul D. Clement; Paul J. Andre, Lisa Kobialka, of Redwood Shores, CA; and Adam Conrad, of Charlotte, NC.

David J. Healey, Fish & Richardson P.C., of Houston, TX, argued for defendants-appellants. With him on the brief was Justin M. Barnes, of San Diego, CA. Of counsel on the brief were Ronald J. Schutz, Jacob M. Holdreith, Christopher A. Seidl, and Trevor J. Foster, Robins, Kaplan, Miller & Ciresi LLP, of Minneapolis, MN. Of counsel was Benjamin C. Elnoqua.

Before NEWMAN, GAJARSA, and LINN, Circuit Judges.

**Opinion**

LINN, Circuit Judge.

This is a patent infringement case involving "proactive scanning" technology for computer security. Finjan, Inc. sued Secure Computing Corporation ("Secure"), Cyberguard Corporation, and Webwasher AG (collectively "Defendants") in the District Court for the District of Delaware for infringement of U.S. Patents No. 6,092,194 ("#194 patent"), No. 6,804,780 ("#780 patent"), and No. 7,058,822 ("#822 patent"). Defendants

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

STOEL RIVES LLP

# REJECTING §112 ¶6 IS SUFFICIENT TO RESOLVE THE PARTIES' DISPUTE

No such error happened here. Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction, which required an IP address. Later, at trial, it prevented the jury from reconstruing the term by stopping Defendants' expert, Dr. Dan Wallach, from repeating to the jury that the

• *Summit 6, LLC v. Samsung* 1283, 1291 (Fed. Cir. 2015)

• *Finjan, Inc. v. Secure Com* F.3d 1197, 1206–07 (Fed. C

*Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197 (2010)
97 U.S.P.Q.2d 1151

... sive Treatment
... Inc. v. Adolph, E.D.Va., November 24,

... F.3d 1197
... s Court of Appeals,
... ral Circuit.

... formerly Finjan Software,
... ff–Cross Appellant,
... v.
... TTING CORPORATION,
... d Corporation, and
... Defendants–Appellants,
... and
... ugh 100, Defendants.

... –1576, 2009–1594.
...
... ov. 2, 2010.

Rehearing and Rehearing En
Banc Denied May 26, 2011.

**Synopsis**
**Background:** Patentee brought action against competitor, alleging infringement of patents directed to "proactive scanning" technology for computer security. Competitor counterclaimed for infringement of its own patents. Following jury trial, the United States District Court for the District of Delaware, Gregory M. Sleet, Chief Judge, entered judgment in favor of patentee, and subsequently, 2009 WL 2524495,granted in part and denied in part parties' post-trial motions. Competitor appealed and patentee cross-appealed.

**Holdings:** The Court of Appeals, Linn, Circuit Judge, held that:

[1] patentee's failure to allege indirect or joint infringement was not fatal to its claim that competitor infringed patents' "system" and "storage medium" claims;

[2] evidence was insufficient to demonstrate competitor directly infringed patents' method claims in United States;

[3] district court was not required to provide additional guidance to jury on construction of claim term construed to have its plain and ordinary meaning;

[4] competitor failed to rebut presumption that jurors followed their charge to not include sales of accused products to United States government in calculating royalty base for purposes of damages award;

[5] substantial evidence supported jury's award of damages based on expert's calculation of royalty percentages; and

[6] patentee was entitled to damages award for lost sales incurred during period between date of entry of original judgment and date amended judgment was entered.

Affirmed in part, reversed in part, and remanded.

**Attorneys and Law Firms**

*1200 Daryl L. Joseffer, King & Spalding LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were Paul D. Clement; Paul J. Andre, Lisa Kobialka, of Redwood Shores, CA; and Adam Conrad of Charlotte, NC.

David J. Healey, Fish & Richardson P.C., of Houston, TX, argued for defendants-appellants. With him on the brief was Justin M. Barnes, of San Diego, CA. Of counsel on the brief were Ronald J. Schutz, Jacob M. Holdreith, Christopher A. Seidl, and Trevor J. Foster, Robins, Kaplan, Miller & Ciresi LLP, of Minneapolis, MN. Of counsel was Benjamin C. Elacqua.

Before NEWMAN, GAJARSA, and LINN, Circuit Judges.

**Opinion**

LINN, Circuit Judge.

This is a patent infringement case involving "proactive scanning" technology for computer security. Finjan, Inc. sued Secure Computing Corporation ("Secure"), Cyberguard Corporation, and Webwasher AG (collectively "Defendants") in the District Court for the District of Delaware for infringement of U.S. Patents No. 6,092,194 ("#194 patent"), No. 6,804,780 ("#780 patent"), and No. 7,058,822 ("#822 patent"). Defendants

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

16

# REJECTING §112 ¶6 IS SUFFICIENT TO RESOLVE THE PARTIES' DISPUTE

No such error happened here. Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction, which required an IP address. Later, at trial, it prevented the jury from reconstruing the term by stopping Defendants' expert, Dr. Dan Wallach, from repeating to the jury that the

asserted claims require an IP address. Defs.' Principal Br.

- ***Finjan, Inc. v. Secure Com*** F.3d 1197, 1206–07 (Fed. Ci

Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197 (2010)
97 U.S.P.Q.2d 1161

[3] district court was not required to provide additional guidance to jury on construction of claim term construed to have its plain and ordinary meaning;

[4] competitor failed to rebut presumption that jurors followed their charge to not include sales of accused products to United States government in calculating royalty base for purposes of damages award;

[5] substantial evidence supported jury's award of damages based on expert's calculation of royalty percentages; and

[6] patentee was entitled to damages award for lost sales incurred during period between date of entry of original judgment and date amended judgment was entered.

Affirmed in part, reversed in part, and remanded.

**Attorneys and Law Firms**

*1200 Daryl L. Joseffer, King & Spalding LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were Paul D. Clement; Paul J. Andre, Lisa Kobialka, of Redwood Shores, CA; and Adam Conrad, of Charlotte, NC.

David J. Healey, Fish & Richardson P.C., of Houston, TX, argued for defendants-appellants. With him on the brief was Justin M. Barnes, of San Diego, CA. Of counsel on the brief were Ronald J. Schutz, Jacob M. Holdreith, Christopher A. Seidl, and Trevor J. Foster, Robins, Kaplan, Miller & Ciresi LLP, of Minneapolis, MN. Of counsel was Benjamin C. Elacqua.

Before NEWMAN, GAJARSA, and LINN, Circuit Judges.

**Opinion**

LINN, Circuit Judge.

This is a patent infringement case involving "proactive scanning" technology for computer security. Finjan, Inc. sued Secure Computing Corporation ("Secure"), Cyberguard Corporation, and Webwasher AG (collectively "Defendants") in the District Court for the District of Delaware for infringement of U.S. Patents No. 6,092,194 ("#194 patent"), No. 6,804,780 ("#780 patent"), and No. 7,058,822 ("#822 patent"). Defendants

16

Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 63 of 82

# U.S. Patent No. 9,188,408
## *Auto-Locking Adjustment Device*

Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 64 of 82

# "Locking Mechanism" and "Button"

# (Common Issues)

# TWO KEY DISPUTES

| Leuopld | Nightforce |
|---|---|
| **Locking Mechanism**<br><br>Plain meaning. Needs no construction.<br><br>Alternatively:  a mechanism for securing a structure in a position | **Locking Mechanism**<br><br>a system of parts that includes a linkage, a locking pin, and wedge pin that provide a locking capability |
| **Button**<br><br>Plain meaning. Needs no construction.<br><br>Alternatively:  a manually depressible actuator | **Button**<br><br>a component, separate from the locking mechanism, that is triggered by a user so as to cause an actuator to contract [sic] the linkage of the locking mechanism and move the locking mechanism |

STOEL RIVES LLP

Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 66 of 82

# EXEMPLARY EMBODIMENTS DO NOT LIMIT BROADER CLAIM LANGUAGE

- *InterDigital Cmm'cns v. ITC*, 690 F.3d at 1328 (Fed. Cir. 2012)

- *Plantronics v. Aliph, 724 F.3d at 1350* (Fed. Cir. 2013)

- *Thorner v. Sony*, 669 F.3d at 1367 (Fed. Cir. 2012)

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 67 of 82

# SEPARATE CLAIM TERMS DO NOT REQUIRE PHYSICALLY SEPARATE STRUCTURES

- ***Rexnord Corp v. Laitram Corp.***, 274 F.3d 1336, 1343-45 (Fed. Cir. 2001)

- ***Applied Med. Res. Corp. v. US Surgical***, 448 F3d at 1333 n.3 (Fed. Cir. 2006)

- ***Oatey v. IPS Corp***. 514 F.3d at 1277-78 (Fed. Cir. 2008)

31

# SEPARATE CLAIM TER
# PHYSICALLY SEPARATI

- ***Rexnord Corp v. Laitra***
  1343-45 (Fed. Cir. 2001

- ***Applied Med. Res. Co***
  F3d at 1333 n.3 (Fed. C

- ***Oatey v. IPS Corp***. 514
  2008)

Rexnord Corp. v. Laitram Corp., 274 F.3d 1336 (2001)
60 U.S.P.Q.2d 1851

KeyCite Yellow Flag - Negative Treatment
Distinguished by Cambrian Science Corp. v. Cox Communications, Inc.,
Fed.Cir.(Cal.), June 29, 2015

274 F.3d 1336
United States Court of Appeals,
Federal Circuit.

REXNORD CORPORATION, Plaintiff–Appellant,
v.
The LAITRAM CORPORATION and
Intralox, Inc., Defendants–Appellees.

No. 00–1395.
|
Nov. 15, 2001.

**Synopsis**
Patentee brought action against alleged infringer relating
to patent on device used in bottling and packaging
processes. The United States District Court for the
Western District of Wisconsin, Barbara B. Crabb, Chief
Judge, granted summary judgment of noninfringement.
Patentee appealed. The Court of Appeals, Clevenger,
Circuit Judge, held that term "portion" was required to be
interpreted broadly to contemplate parts that were either
"separate" or "integral."

Reversed and remanded.

West Headnotes (20)

[1]    **Patents**
       In general;comparison with patent
       claims
       **Patents**
       Questions of law or fact
       A patent infringement analysis is a two-step
       process in which the court first determines,
       as a matter of law, the correct claim scope,
       and then the fact finder compares the properly
       construed claim to the accused device to
       determine, as a matter of fact, whether all
       of the claim limitations are present, either
       literally or by a substantial equivalent, in the
       accused device.

11 Cases that cite this headnote

[2]    **Patents**
       Scope, Standard, and Extent of Review
       Because questions regarding construction of
       patent claims are issues of law, the Court of
       Appeals reviews them without deference to the
       district court.

Cases that cite this headnote

[3]    **Patents**
       Language of claims in general
       The Court of Appeals begins its claim
       construction analysis with the language of the
       patent claims.

28 Cases that cite this headnote

[4]    **Patents**
       State of the art
       As a general rule, all terms in a patent claim
       are to be given their plain, ordinary, and
       accustomed meaning to one of ordinary skill
       in the relevant art.

65 Cases that cite this headnote

[5]    **Patents**
       State of the art
       Unless compelled to do otherwise, a court will
       give a patent claim term the full range of its
       ordinary meaning as understood by an artisan
       of ordinary skill.

94 Cases that cite this headnote

[6]    **Patents**
       Construction of Particular Claims as
       Affected by Other Claims
       A patent claim term should be construed
       consistently with its appearance in other
       places in the same claim or in other claims of
       the same patent.

111 Cases that cite this headnote

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

51

# SEPARATE CLAIM
# PHYSICALLY SEPA

- ***Rexnord Corp v. Laitra***
  1343-45 (Fed. Cir. 2001
- ***Applied Med. Res. Co***
  F3d at 1333 n.3 (Fed. C
- ***Oatey v. IPS Corp***. 514
  2008)

Nov. 15, 2001.

Synopsis
Patentee brought action against alleged infringer relating to patent on device used in bottling and packaging processes. The United States District Court for the Western District of Wisconsin, Barbara B. Crabb, Chief Judge, granted summary judgment of noninfringement. Patentee appealed. The Court of Appeals, Clevenger, Circuit Judge, held that term "portion" was required to be interpreted broadly to contemplate parts that were either "separate" or "integral."

Reversed and remanded.

West Headnotes (20)

[1] Patents
In general; comparison with patent claims
Patents
Questions of law or fact
A patent infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then the fact finder compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device.

Language of claims in general
The Court of Appeals begins its claim construction analysis with the language of the patent claims.

28 Cases that cite this headnote

[4] Patents
State of the art
As a general rule, all terms in a patent claim are to be given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art.

65 Cases that cite this headnote

[5] Patents
State of the art
Unless compelled to do otherwise, a court will give a patent claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill.

94 Cases that cite this headnote

[6] Patents
Construction of Particular Claims as Affected by Other Claims
A patent claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.

111 Cases that cite this headnote

STOEL RIVES LLP

# SEPARATE CLAIM
# PHYSICALLY SEPA



chain link

chain pin inserted here

link module portion        cantilevered portion

[14]  [15]  In this case, the district court noted that the plain, ordinary meaning of "portion" included two possible readings—parts that were "separable from the whole" and parts that were "not separated from the whole." *Rexnord*, slip op. at 24–25. Instead of giving the term the full range of its ordinary meaning (which would encompass both readings), the district court incorrectly concluded that the term was uncertain. *Id.* Upon considering the intrinsic evidence, the district court determined in the first instance that the term should be construed to have the narrower meaning of "separate" parts. In doing so, the district court relied solely on the preferred embodiment in the written description and its drawings (which admittedly reads on the narrower meaning of the key word) and on one passage from the *1344 prosecution history. Concerning the latter, the district court concluded that the examiner's objection during prosecution to a particular paragraph structure used in an original claim implied that the examiner viewed the "portions" to be separate pieces. *Rexnord*, slip op. at 36–37. For the reasons explained below, we conclude that the district court erred in its assessment of the written description and of the prosecution history.

Nov. 15, 2001.

**Synopsis**

Patentee brought action against alleged infringer relating to patent on device used in bottling and packaging processes. The United States District Court for the Western District of Wisconsin, Barbara B. Crabb, Chief Judge, granted summary judgment of noninfringement. Patentee appealed. The Court of Appeals, Clevenger, Circuit Judge, held that term "portion" was required to be interpreted broadly to contemplate parts that were either "separate" or "integral."

Reversed and remanded.

West Headnotes (20)

[1]   **Patents**
       In general;comparison with patent claims
      **Patents**
       Questions of law or fact
      A patent infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then the fact finder compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device.

      Language of claims in general
      The Court of Appeals begins its claim construction analysis with the language of the patent claims.

      28 Cases that cite this headnote

[4]   **Patents**
       State of the art
      As a general rule, all terms in a patent claim are to be given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art.

      65 Cases that cite this headnote

[5]   **Patents**
       State of the art
      Unless compelled to do otherwise, a court will give a patent claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill.

      94 Cases that cite this headnote

[6]   **Patents**
       Construction of Particular Claims as Affected by Other Claims
      A patent claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.

      111 Cases that cite this headnote

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 71 of 82



"Locking Mechanism"

# DISPUTE: NF'S ADDED TERMS NOT FOUND IN CLAIM LANGUAGE

| Leuopld | Nightforce |
|---|---|
| **Locking Mechanism**<br>Plain meaning. Needs no construction.<br><br>Alternatively: a mechanism for securing a structure in a position | **Locking Mechanism**<br><br>a system of parts that includes a linkage, a locking pin, and wedge pin that provide a locking capability |

33

# SUPPOSED "EXPRESS DEFINITION" IN SPECIFICATION

- Nightforce's Opening Brief (Dkt. 52 at 26) quoting Col. 7, ll.17-30)

  – Mere discussion of an exemplary preferred embodiment

  – Not limiting features of the invention itself, defined by the broader claims

34

# SUPPOSED "EXPRESS DEFINITION" IN SPECIFICATION

- Nightforce's Opening Brief (Dkt. 52 at 26) quoting

> In the embodiment illustrated in FIGS. 1, 2, 3, 4, and 5, the assemblage of linkage 170 and locking pin 220 comprise a link that forms part of the locking mechanism. The link of FIGS. 1, 2, 3, 4, and 5 interacts with wedge pin 180 to further 20 form part of the locking mechanism. In other embodiments the locking mechanism includes a link comprising a linkage, such as linkage 170, a locking pin, such as locking pin 220, and a stopping element, such as wedge pin 180. In other embodiments, the locking mechanism includes a link com- 25 prising a linkage, such as linkage 170, a locking pin, such as locking pin 220, a stopping element, such as wedge pin 180, and an engagement surface 192. In yet other embodiments, a link may include a linkage and a locking pin that are formed as one item. 30

exemplary preferred

f the invention itself, defined by the broader claims

34

# SUPPOSED "EXPRESS DEFINITION" IN SPECIFICATION

- Nightforce's Opening Brief (Dkt. 52 at 26) quoting

In the embodiment illustrated in FIGS. **1**, **2**, **3**, **4**, and **5**, the assemblage of linkage **170** and locking pin **220** comprise a link that forms part of the locking mechanism. The link of FIGS. **1**, **2**, **3**, **4**, and **5** interacts with wedge pin **180** to further form part of the locking mechanism. In other embodiments the locking mechanism includes a link comprising a linkage, such as linkage **170**, a locking pin, such as locking pin **220**, and a stopping element, such as wedge pin **180**. In other embodiments, the locking mechanism includes a link comprising a linkage, such as linkage **170**, a locking pin, such as locking pin **220**, a stopping element, such as wedge pin **180**, and an engagement surface **192**. In yet other embodiments, a link may include a linkage and a locking pin that are formed as one item.

a locking mechanism carried by the spindle for rotation therewith, the locking mechanism switchable between a locked condition and an unlocked condition; and

a button carried by the spindle for rotation therewith and manually depressible transverse to the axis, the button mechanically driving the locking mechanism such that manually depressing the button switches the locking mechanism from the locked condition, wherein the locking mechanism interlocks with the engagement surface and prevents rotation of both the spindle and the button relative to the optical device, to the unlocked condition, wherein both the spindle and the button are rotatable about the axis relative to the optical device and the engagement surface.

by the broader claims

34

STOEL RIVES LLP
Exhibit 1- Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 76 of 82

# NO CLEAR DISAVOWAL OF CLAIM SCOPE IN PROSECUTION HISTORY

- Talpe reference:

  – Safety door knob with NO LOCKING MECHANISM at all

  – Knob always rotates freely, only connects to spindle when button pressed

35



"Button"

# TWO KEY DISPUTES

| Leuopld | Nightforce |
|---|---|
| **Button**<br><br>Plain meaning. Needs no construction.<br><br>Alternatively: a manually depressible actuator | **Button**<br><br>a component, separate from the locking mechanism, that is triggered by a user so as to cause an actuator to contract [sic] the linkage of the locking mechanism and move the locking mechanism |

37

# NO REQUIREMENT OF PHYSICALLY SEPARATE BUTTON AND LOCKING MECHANISM

- ***Rexnord Corp v. Laitram Corp.***, 274 F.3d 1336, 1343-45 (Fed. Cir. 2001)

- ***Applied Med. Res. Corp. v. US Surgical***, 448 F3d at 1333 n.3 (Fed. Cir. 2006)

- ***Oatey v. IPS Corp***. 514 F.3d at 1277-78 (Fed. Cir. 2008)

STOEL RIVES LLP

# NO BASIS TO INCLUDE "ACTUATOR" AND "LINKAGE" IN DEFINING "BUTTON"

- Claim language omits these additional elements

- Improper to limit broader claim term (button) to specific embodiment in specification/figures
  - (E.g., *Thorner*)

39

# NO BASIS TO INCLUDE "ACTUATOR" AND "LINKAGE" IN DEFINING "BUTTON"

a locking mechanism carried by the spindle for rotation therewith, the locking mechanism switchable between a locked condition and an unlocked condition; and

a button carried by the spindle for rotation therewith and manually depressible transverse to the axis, the button mechanically driving the locking mechanism such that manually depressing the button switches the locking mechanism from the locked condition, wherein the locking mechanism interlocks with the engagement surface and prevents rotation of both the spindle and the button relative to the optical device, to the unlocked condition, wherein both the spindle and the button are rotatable about the axis relative to the optical device and the engagement surface.

39

STOEL RIVES LLP
Exhibit 1 - Leupold & Stevens
Notice Filing Markman Hearing Presentation Materials
Page 82 of 82

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on the following named persons on the

date indicated below by

☐    mailing with postage prepaid

☐    hand delivery

☐    facsimile transmission

☐    overnight delivery

☐    Email

☒    notice of electronic filing using the CM/ECF system

to said persons a true copy thereof, contained in a sealed envelope, addressed to said persons at

his or her last-known addresses indicated below.

David A. Casimir
Casimir Jones S.C.
2275 Deming Way, Suite 310
Middleton, WI  53562

Scott E. Davis
Klarquist Sparkman, LLP
One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, OR  97204

Attorneys for Defendants

DATED:  January 11, 2018.                STOEL RIVES LLP


/s/ Nathan C. Brunette
NATHAN C. BRUNETTE
OSB No. 090913
Telephone:  (503)-224-3380

Attorneys for Plaintiff


Page 3    -    **NOTICE OF FILING LEUPOLD & STEVENS MARKMAN HEARING
PRESENTATION  MATERIALS (JANUARY 8, 2018)**