Scott E. Davis, OSB No. 022883
Email: scott.davis@klarquist.com
Todd M. Siegel, OSB No. 001049
Email: todd.siegel@klarquist.com
J. Christopher Carraway, OSB No. 961723
Email: chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone: (503) 595-5300

David A. Casimir, *pro hac vice*
Email: dacasimir@casimirjones.com
CASIMIR JONES, S.C.
2275 Deming Way, Ste. 310
Middleton, WI 53562
Telephone: (608) 662-1277

*Attorneys for Defendant*
LIGHTFORCE USA, INC.

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LEUPOLD & STEVENS, INC.,** | Civil Case No.: 3:16-cv-01570-HZ |
| Plaintiff, | **JOINT REPORT RE PROPOSED PRETRIAL DATES AND SCHEDULING** |
| v. | |
| **LIGHTFORCE USA, INC. d/b/a NIGHTFORCE OPTICS and NIGHTFORCE USA,** | |
| Defendant. | |

TABLE OF CONTENTS

Page

I.      SCHEDULE PROPOSALS ................................................................................. 1

        A.      Leupold's Position On Scheduling For A Second Trial ........................ 1

        B.      Nightforce's Position On Scheduling For A Second Trial ..................... 1

II.     LEUPOLD'S POSITION ................................................................................... 5

        A.      Status Of Fact And Expert Discovery .................................................... 6

                1.      Fact Discovery Is Complete As To All Issues Properly
                        Presented In This Case But Would Have To Be Reopened If
                        Nightforce Were Permitted To Introduce New Invalidity Contentions. ...... 6

                2.      Expert Discovery Is Complete Except For Previously
                        Requested Expert Depositions But Would Have To Be Reopened If
                        Nightforce Were Permitted To Introduce New Invalidity Contentions. ...... 6

        B.      Invalidity Contentions Regarding The '907
                Patent Are Closed And Have Been Closed Since March 15, 2017. ...................... 8

                1.      Nightforce Cannot Show And Has Made No Attempt To Show
                        Required "Good Cause" For Amending Its Invalidity Contentions. .......... 9

                2.      Nightforce's Proposed Expansion
                        Of This Case Would Prejudice Leupold. .................................................. 11

        C.      Nightforce's Belated Attempt To Make New
                Summary Judgment Motions On The '907 Patent Is Improper. ........................... 13

III.    NIGHTFORCE'S POSITION ....................................................................... 15

        A.      Fact Discovery .................................................................................... 16

                1.      Additional Evidence Regarding Schmidt & Bender Prior Art ................ 17

                2.      In March 2019, Nightforce Promptly
                        Disclosed Weatherby And Zeiss Spiral Cam Prior Art ........................... 18

        B.      Expert Discovery ................................................................................ 20

        C.      Claim Construction And Invalidity Briefing ....................................... 21

                1.      Invalidating Weatherby Prior Art
                        Discovered Since Summary Judgment Briefing ...................................... 21

2.      Claim Construction ................................................................. 23

3.      Reduction To Practice Of Claim 10 ........................................ 25

D.      Pretrial Document Deadlines And Intervals ........................................ 27

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brinker v. Kray*,
    460 F.2d 1073 (C.C.P.A. 1972) ................................................................. 25

*CBS Interactive, Inc. v. Etilize, Inc.*,
    257 F.R.D. 195 (N.D. Cal. 2009) ................................................................. 9

*Cywee Grp. Ltd. v. HTC Corp.*,
    No. C17-0932JLR, 2018 WL 2289334 (W.D. Wash. May 18, 2018) ............................... 11, 23

*D Three Enterprises, LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ................................................................. 26

*Hummer v. Adm'r of Nat. Aeronautics & Space Admin.*,
    500 F.2d 1383 (C.C.P.A. 1974) ................................................................. 25

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) ................................................................. 24

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ................................................................. 24, 25

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ................................................................. 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 23

*REC Software USA, Inc. v. Bamboo Solutions Corp.*,
    No. C11-0554JLR, 2012 WL 3527891 (W.D. Wash. Aug. 15, 2012) .................... 9, 10, 11, 23

*S. Rambler Sales, Inc. v. Am. Motors Corp.*,
    375 F.2d 932 (5th Cir. 1967) ................................................................. 15

*Scripps Research Inst. v. Illumina, Inc.*,
    No. 2018-2089, 2019 WL 4071879 (Fed. Cir. Aug. 29, 2019) ................................................................. 24

**Statutes**

28 U.S.C. § 1498 ................................................................. 13

**Rules**

Fed. R. Civ. P. 1 ................................................................................................... 15, 16

Fed. R. Civ. P. 16 ............................................................................................... 8, 9, 13

Fed. R. Civ. P. 26 ...................................................................................................... 6

Fed. R. Civ. P. 56 ..................................................................................................... 14

**Other Authorities**

W.D. Wash. LPR 124 ............................................................................................... 8, 9

The parties met and conferred and were unable to reach agreement on the remaining events, and their sequence and timing leading up to the trial set for May 19, 2020. Below are the parties' separate proposals and position statements. Nightforce respectfully requests a scheduling conference to address the parties' competing proposals.[1]  Leupold believes this joint submission, which has already spiraled beyond what was anticipated, provides ample basis for the Court to enter a scheduling order.

I.    **SCHEDULE PROPOSALS**

Each party's proposed schedule is set forth below for events leading up to the trial set for May 19, 2020, on the '907 patent and, pending summary judgment rulings, the '305 patent.

A.    **Leupold's Position On Scheduling For A Second Trial**

Leupold has suggested an initial schedule for a second trial on the other (turret knob) patents, keyed from summary judgment. Leupold, continues to suffer ongoing patent infringement by a direct competitor. As such, Leupold believes it appropriate to have initial deadlines in place for the second trial on turret knobs, so the parties can commence trial preparation after the Court's summary judgment ruling, without waiting for any stay to be lifted.

B.    **Nightforce's Position On Scheduling For A Second Trial**

Nightforce has no proposal at this time for a schedule on any trial beyond that scheduled for May 19, 2020. Nightforce contends that it is premature to consider scheduling for other patents until summary judgment rulings are completed for those patents and the parties know what issues remain and if further claim construction or other issues are raised by the Court's summary judgment decisions. Nor does Nightforce understand the Court to have requested proposed scheduling for other patents. Nightforce contends that a stay of proceedings related to

---

[1] Leupold does not believe an additional hearing is necessary to decide these issues, unless such a hearing would be helpful to the Court.

JOIN REPORT RE PROPOSED PRETRIAL DATES AND SCHEDULING                1

patents other than those necessary for trial on the '907 patent and, if it survives summary

judgment, the '305 patent, should be entered.

| Event | Leupold's Proposal | Nightforce's Proposal |
|---|---|---|
| Close of fact discovery, contentions, and depositions (all patents). | Closed/Completed | December 31, 2019 for '907 and '305 patents; other patents TBD. |
| Close of expert discovery and depositions (all patents). | Closed/Completed<br><br>(*except for outstanding expert depositions previously agreed by parties*)[2]. | January 31, 2020 for '907 and '305 patents; other patents TBD depending on summary judgment rulings. |
| Disclosure of reliance upon any advice of counsel defense (all patents). | Closed/Completed ||
| Deadline to file dispositive motions, supplemental claim construction briefs. | Closed/Completed | November 18, 2019<br><br>Any opening briefs addressing claim construction and invalidity issues described in Section III.C for the '907 patent |
| ADR Deadline | Closed/Completed ||
| Expert Reports Responding to Supplemental Reports (to which no response has been made)[3] | Closed/Completed | December 31, 2019 |
| Close of Expert Discovery | Closed/Completed<br>(*see above*) | January 31, 2020 |
| Anticipated Date of MSJ ruling re 28 USC 1498 and re '305 Patent. | (t/b/d by the Court)<br>(potentially Jan. 2020 per the discussion with the Court during the 10/18/19 status conf.) ||
| Deadline to file motions to exclude or limit expert testimony under *Daubert* or FRE 702-703 (Trial 1: '907 and '305 Patents). | Thursday, 1/16/2020 | February 11, 2020 |

---

[2] The parties previously agreed and affirm that Plaintiff will take the depositions of Nightforce's non-reporting experts (Kevin Stockdill and Klaus Johnson) and that Defendant will resume the deposition of Leupold's technical expert (David Byron). Plaintiffs requests that the Court set a date for the completion of these deposition by December 13, 2019.

[3] This includes Nightforce responding to the Byron Declaration re testing (ECF No. 129) and the Byron Report served October 17, 2019.

| Event | Leupold's Proposal | Nightforce's Proposal |
|---|---|---|
| Plaintiff to serve proposed pretrial order, jury instructions and verdict form (Trial 1: '907 and '305 Patents)). | Thursday, 2/20/2020 | March 10, 2020 |
| Defendant to serve objections and counterproposals for proposed pretrial order, jury instructions and verdict form (Trial 1: '907 and '305 Patents). | Thursday, 3/5/2020 | March 20, 2020 |
| 1st Wave of Pre-Trial Filings (per standard Jury Trial Management Order). <br><br>(exhibits and exhibit lists; lay and expert witness statements; itemized list of economic damages; deposition designations; trial briefs) (Trial 1: '907 and '305 Patents). | Thursday, 3/19/2020 | March 31, 2020 |
| 2d Wave of Pre-Trial Filings (per standard Jury Trial Management Order) <br><br>(motions in limine; voir dire questions; jury instructions; verdict form; objections to witnesses; rebuttal witnesses/exhibits lists) (Trial 1: '907 and '305 Patents). | Thursday, 4/2/2020 | April 10, 2020 |
| 3d Wave of Pre-Trial Filings (per standard Jury Trial Management Order) <br><br>(one-page list of all potential witnesses; rebuttal witness statements, deposition designations and exhibits; responses to motions in limine; objections to exhibits; objections to witnesses) (Trial 1: '907 and '305 Patents). | Thursday, 4/16/2020 | April 21, 2020 |
| Final Wave of Pre-Trial Filings (per standard Jury Trial Management Order). <br><br>(lodge proposed pretrial order, joint motion in limine ruling chart; joint witness and exhibit ruling chart; objections to rebuttal witness statements, deposition designations and exhibits) (Trial 1: '907 and '305 Patents). | Thursday, 4/30/2020 | May 1, 2020 |

| Event | Leupold's Proposal | Nightforce's Proposal |
|---|---|---|
| Final Pre-Trial Conference (Trial 1: '907 and '305 Patents). | May 11, 2020 at 11:00 am | |
| JURY TRIAL (Trial 1: '907 and '305 Patents). | May 19, 2020 at 9:00 am<br><br>(10 trial days) | |
| **Other Patents (Scheduling Proposed by Leupold Only)** | | |
| Anticipated Date for Ruling on Remaining MSJ's (Trial 2: Locking Adjustment patents (LTK, '068, '408)). | (t/b/d by the Court) | Scheduling for future trials is premature. Proceedings on these patents should be stayed. |
| Deadline to file motions to exclude or limit expert testimony under *Daubert* or FRE 702-703 (Issues re Trial 2: Locking Adjustment patents). | 8 weeks after date of MSJ ruling | |
| Plaintiff to serve proposed pretrial order, jury instructions and verdict form (Trial 2: Locking Adjustment patents). | 12 weeks after date of MSJ ruling | |
| Defendant to serve objections and counterproposals for proposed pretrial order, jury instructions and verdict form (Trial 2: Locking Adjustment patents). | 13 weeks after date of MSJ ruling | |
| 1st Wave of Pre-Trial Filings (per standard Jury Trial Management Order)<br><br>(exhibits and exhibit lists; lay and expert witness statements; itemized list of economic damages; deposition designations; trial briefs) (Trial 2: Locking Adjustment patents). | 15 weeks after date of MSJ ruling | |
| 2d Wave of Pre-Trial Filings (per standard Jury Trial Management Order)<br><br>(motions in limine; voir dire questions; jury instructions; verdict form; objections to witnesses; rebuttal witnesses/exhibits lists) (Trial 2: Locking Adjustment patents). | 17 weeks after date of MSJ ruling | |

| Event | Leupold's Proposal | Nightforce's Proposal |
|---|---|---|
| 3d Wave of Pre-Trial Filings (per standard Jury Trial Management Order)<br><br>(one-page list of all potential witnesses; rebuttal witness statements, deposition designations and exhibits; responses to motions in limine; objections to exhibits; objections to witnesses) (Trial 2: Locking Adjustment patents). | 19 weeks after date of MSJ ruling | |
| Final Wave of Pre-Trial Filings (per standard Jury Trial Management Order)<br><br>(lodge proposed pretrial order, joint motion in limine ruling chart; joint witness and exhibit ruling chart; objections to rebuttal witness statements, deposition designations and exhibits) (Trial 2: Locking Adjustment patents). | 21 weeks after date of MSJ ruling | |
| Final Pre-Trial Conference and JURY TRIAL (Trial 2: Locking Adjustment patents). | (t/b/d by the Court)<br><br>(Leupold requests 10 trial days) | |

## II.   LEUPOLD'S POSITION

The Court, during the October 18, 2019 status conference, made clear its expectation that the parties prepare for a trial in this case on the '907 patent (and perhaps also the '305 patent) in May 2019, and directed the parties to propose a schedule of interim pretrial deadlines. [4] Leupold has prepared the schedule above, with aggressive but feasible dates to focus the issues and prepare for the jury trial. Now is the time to narrow and focus the issues—not introduce new theories, promulgate new fact and expert discovery, or brief new summary judgment motions.

Nightforce, in contrast, seeks to take a new bite at the apple by introducing new defenses into this case, which would expand the issues in dispute that the parties and the Court have now

---

[4] Both parties' scheduling proposals advocate for trying the '305 patent together with the '907 patent in the first trial.

spent more than a year attempting to narrow on summary judgment. Nightforce ignores that the deadline for such invalidity contentions expired years ago and also seeks to make a new untimely summary judgment motion on these issues, even though the deadline for such a motion also passed more than a year ago.

**A.    Status Of Fact And Expert Discovery**

**1.    Fact Discovery Is Complete As To All Issues Properly Presented In This Case But Would Have To Be Reopened If Nightforce Were Permitted To Introduce New Invalidity Contentions.**

Fact discovery in this case was initially set to close on December 1, 2016, and was extended to March 1, 2017, then to two months after the Court's claim construction ruling, and finally to July 26, 2018. *See* ECF Nos. 4, 8, 12, 18, 25, 40, 44, 72, and 74. In their proposed schedule filed on July 19, 2018, the parties left fact discovery open during expert reports and summary judgment briefing to allow ongoing fact discovery efforts concurrent with those activities, including third party deposition of Sony that was being resisted by the third party. ECF No. 79. Unless Nightforce is allowed to introduce new invalidity defense contentions into this case (as discussed in Section B, below) Leupold is done with fact discovery. If those contentions are not allowed, fact discovery is complete.[5]

**2.    Expert Discovery Is Complete Except For Previously Requested Expert Depositions But Would Have To Be Reopened If Nightforce Were Permitted To Introduce New Invalidity Contentions.**

Opening expert reports were initially due to be served 4 months after the Court's claim construction ruling, and rebuttal expert reports one month after that. *See* ECF Nos. 18, 25

---

[5] Nightforce, in its scheduling proposal, conflates the close of fact discovery (prohibiting new discovery) with supplementation of existing discovery responses, which is always required. Leupold agrees that the parties are under a duty to supplement their existing discovery responses before trial, pursuant to Fed. R. Civ. P. 26(e), but that is no basis to leave fact discovery open to new discovery on new issues.

(Ordering schedule set out in ECF No. 18). Those deadlines were extended to July 20, 2018 and August 24, 2018 (ECF No. 74) and then to August 10-14 and September 10-14, 2018 (ECF No. 79). With respect to the '907 Patent, Nightforce served an opening invalidity report from Allen Brandenburg, and Leupold served an opening technical report on infringement from David Byron and an opening damages report from Justin Lewis. Nightforce served rebuttal reports from Mr. Brandenburg (non-infringement) and Drew Voth (damages), Leupold served a rebuttal report (validity) from Mr. Byron, and all those experts were deposed on their reports. Then, after expert depositions and after summary judgment briefing and argument, in April 2019, Nightforce served supplemental expert reports from Mr. Brandenburg and *also from Douglas DuFaux, who never served an opening report on the '907 patent, regarding alleged new prior art (including the Weatherby reference).* Faced with the risk of being considered untimely or losing any opportunity to respond to Nightforce's shifting sands, Leupold served a rebuttal report from Mr. Byron.[6] The parties have also agreed that Nightforce will resume Mr. Byron's deposition for additional time and Leupold will take the depositions of Nightforce's disclosed hybrid fact/expert non-reporting witnesses Klaus Johnson and Kevin Stockdill in their expert capacities. Those depositions are not yet scheduled, but to complete them before Daubert briefing, Leupold has requested deposition dates for Mr. Johnson and Mr. Stockdill in November or early December. Nightforce has yet to respond. Unless Nightforce is permitted to introduce new

---

[6] Leupold also recently served a supplemental rebuttal report from Mr. Byron addressing yet more additional facts that came out during a third-party deposition noticed and taken by Nightforce. It is important to bear in mind that invalidity is a defense that Nightforce bears the burden of proof on—not Leupold (notwithstanding Nightforce characterizing Leupold's expert *responding* to Nightforce's belated invalidity theories as somehow "ironic" or creating more issues). Nightforce now seeks to *reply* to that supplemental report. To the contrary, however, no *reply* expert reports in response to rebuttal reports are permitted by the rules or this Court's scheduling orders.

invalidity contentions and reopen that part of the case *nunc pro tunc* (see below), expert

discovery will be complete with these three depositions.

**B.    Invalidity Contentions Regarding The '907**
   **Patent Are Closed And Have Been Closed Since March 15, 2017.**

The parties' agreed case management plan (ECF No. 18) (adopted and Ordered by the

Court at the February 7, 2017 Rule 16 conference, *see* ECF No. 25) called for invalidity

contentions <u>consistent with the Local Patent Rules of the Western District of Washington</u>, which

were due on March 15, 2017. (The parties agreed by stipulation (ECF No. 18), adopted by the

Court (ECF No. 25), to use the Local Patent Rules of the W.D. Wash. as a guide for invalidity

contentions in this case.) Nightforce timely served invalidity contentions for Counts I through

VII (the '907 patent) in this litigation. Later, when Count VIII (regarding the '120 patent) was

added to the case, the Court extend the deadline to allow time for invalidity contentions as to the

newly added Count VIII to August 25, 2017, but Nightforce admitted in its proposed schedule at

the time that invalidity contentions were already **complete** as to Count VII concerning the '907

patent. *See* ECF No. 40 at 5.

The invalidity contentions Nightforce served in 2017 make no mention of the Weatherby

reference Nightforce now seeks to assert.[7] In the more than two and a half years since invalidity

contentions were completed, Nightforce never moved for the required leave of court to amend its

invalidity contentions to add the '907 patent. *See* Fed. R. Civ. P. 16(b)(4); W.D. Wash. LPR 124.

Even now, after revealing that it seeks to file a new (also untimely) dispositive motion regarding

---

[7]In addition to the Weatherby reference, at the 11th hour while exchanging drafts of this joint
status report, Nightforce also suggested for the first time that it may also seek to add invalidity
contentions regarding another newly discovered prior art reference—the Zeiss/Zielsechs
reference. It remains unclear to what extent Nightforce seeks to include this additional reference
in new invalidity contentions, and all of Leupold's objections as to prejudice and lack of good
cause as to Weatherby apply equally or more so to the Zeiss/Zielsechs reference.

Weatherby, Nightforce *still* has not moved to amend its invalidity contentions to put invalidity

based on Weatherby at issue in this case, nor can Nightforce successfully do so because it lacks

any showing of the required "good cause" for such an amendment.

### 1.   Nightforce Cannot Show And Has Made No Attempt To Show Required "Good Cause" For Amending Its Invalidity Contentions.

Invalidity contention requirements in local patent rules are designed specifically to

require parties to crystallize their theories of the case early in the litigation and then to stick only

to those disclosed theories, so as to prevent the shifting sands approach to patent litigation and

claim construction issues. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355,

1364 (Fed. Cir. 2006). An amendment after the deadline requires a showing of "good cause,"

*regardless of whether or not such an amendment would prejudice the opposing party. See* Fed.

R. Civ. P. 16(b)(4); W.D. Wash. LPR 124 (requiring good cause and noting that "[t]he duty to

supplement discovery responses does not excuse the need to obtain leave of court to amend

discovery contentions."). In this context, "good cause" means diligence. The party seeking to

amend invalidity contentions under the Western District of Washington Local Patent Rules

(applicable to this case, *see* ECF Nos. 18, 25) must first show that good cause based on its own

diligence, and second must show that the amendment will not prejudice the opposing party. A

lack of diligence in *either* searching for prior art (prior to finding the allegedly new prior art) *or*

in seeking to amend after finding that prior art is fatal to a motion to amend. *See REC Software*

*USA, Inc. v. Bamboo Solutions Corp.*, No. C11-0554JLR, 2012 WL 3527891 at *3 (W.D. Wash.

Aug. 15, 2012); *see also, e.g., CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 202-203

(N.D. Cal. 2009) (holding that "[t]he Patent Local Rules disfavor untimely discoveries that leave

the opposing party with little time to conduct discovery on a new theory" and denying untimely

motion to amend invalidity contentions where defendant failed to promptly moving for leave to amend and made no showing of good cause).[8]

Good cause requires more than conclusory or prophetic assertions about what will happen if the relief requested were granted. Parties are not required to file substantive evidence and arguments (particularly on a Rule 16 scheduling matter) -- or to seek discovery -- rebutting theories that are not part of the case. In the period since summary judgment briefing and oral arguments were completed, Nightforce pursued any number of potential, alleged prior art leads but did not, until now, disclose an intent to amend its invalidity contentions to rely on any specific one of them. The good cause analysis turns on why something -- here, requesting leave to amend invalidity contentions, dive deeply into more fact and expert discovery, and redo claim construction and dispositive motions briefing -- could not have been done before. Nightforce offers no satisfactory answer as to why these requests could not have been made long ago. Blaming an opposing party based on an equitable estoppel defense that has already been the subject of a summary judgment order (ECF No. 180 at 37-40) is not the relevant analysis.

Nightforce fails to meaningfully address "good cause" and makes no showing that good cause is satisfied, either for the period of delay before Nightforce first disclosed Weatherby to Leupold in early 2019 (almost two years after the invalidity contention deadline actually ran) *or* for the more than six months of delay that have transpired since Nightforce first disclosed Weatherby without any motion for leave to amend invalidity contentions[9]. Nightforce provides

---

[8] *REC Software*, 2012 WL 3527891, at *2 ("[B]ecause of the strong similarity between the local patent rules of the Northern District of California and the Local Patent Rules of this District, the court views the Northern District of California cases interpreting their own local patent rules to be of assistance in this court's effort to fashion its own standard.").

[9] While Nightforce asserts below that it first learned of Weatherby in "early 2019," Nightforce provides no detail on whether it diligently pursued it after learning of it. This begs the question of why Nightforce did not bring up this issue, and flag its interest in reopening dispositive

no explanation for why it could not, through reasonable diligence, have found the Weatherby

scopes sooner than it did *or* that it undertook a consistent and diligent search for prior art at all

times before finding Weatherby, as would be required to show good cause. Nightforce also offers

no explanation as to why Weatherby could not have been found in a timely fashion *or*, perforce,

how Nightforce was diligent in seeking to amend its contentions when it never mentioned these

issues in the parties' three summary judgment hearings … and still has not moved to amend its

contentions (or even proposed any date to do so). [10]

### 2.    Nightforce's Proposed Expansion Of This Case Would Prejudice Leupold.

Nightforce's implicit effort to introduce a new invalidity contention into the case based

on the Weatherby reference also fails for the independent reason that doing so would prejudice

Leupold. At this late date, Leupold cannot fairly respond to and take its own discovery on

Nightforce's new prior art assertions.

---

motions and invalidity contentions, ***during either of the in-person summary judgment arguments*** also in early 2019 (including the February 13, 2019 summary judgment hearing where Nightforce made frequent reference to the '907 patent). At that time, perhaps it could have shown good cause. Today it cannot.

[10] For example, in *REC Software*, *supra*, a party promptly provided notice of the prior art at issue to the opposing party but delayed only ***8 weeks*** without amending its invalidity contentions. The court excused this delay on the ground that, prior to its opinion, no Washington court had yet explained the specificity and good cause requirements for invalidity contentions and amendments, but cautioned other parties in the future not to expect the same consideration. 2012 WL 3527891 at *5 ("In the future, however, the court will be less inclined to be so forgiving of a party's failure to move to amend its contentions to include a significant prior art reference or new infringement or invalidity theory."). Here, despite having the benefit of the *REC Software* court's detailed guidance, Nightforce waited far longer than 8 weeks -- going on 8+ *months* now -- after learning of the alleged prior art at issue before seeking to amend contentions or reopen dispositive motions. In other instances where courts have allowed amended invalidity contentions, the delay was a matter of weeks, not months. *See e.g.*, *Cywee Grp. Ltd. v. HTC Corp.*, No. C17-0932JLR, 2018 WL 2289334, at *1-2 (W.D. Wash. May 18, 2018) (28 days).

JOINT REPORT RE PROPOSED PRETRIAL DATES AND SCHEDULING                11

While fact discovery on all other issues is complete as discussed above, if Nightforce is permitted to amend its invalidity contentions to assert the new prior art at issue, Leupold will need additional discovery including third party depositions and document subpoenas regarding the Weatherby reference. This discovery will be directed, *inter alia*, to evidence confirming the provenance of the alleged new prior art, the understanding of a person of ordinary skill in the art ("POSA") about it, and the lack of a motivation to combine Weatherby with other prior art references, as apparently asserted by Nightforce. In addition, Leupold will also need to provide new expert reports based on this anticipated fact discovery, and Leupold will need to re-take the depositions of Mr. Brandenburg and Mr. DuFaux to ask about their opinions on the new prior art contentions, *if* those are allowed into the case. Leupold expects that such additional fact and expert discovery will show that Weatherby, like other alleged prior art asserted by Nightforce in the case, is missing a number of elements of the asserted claims of the asserted patent claims, if Weatherby can even be confirmed as a prior art reference, and that no motivation or rationale existed to combine Weatherby with other prior art to re-create the patented invention. Further, identification of claim terms for construction and claim construction briefing were conducted based on the existing invalidity contentions (without any Weatherby contention). If Nightforce's requests to reopen contentions and discovery are retroactively granted, Leupold will also have additional claim construction issues relating to Nightforce's Weatherby contentions that it will also need to raise.

There is, however, insufficient time remaining in the schedule proposed by Nightforce for Leupold to fairly pursue such fact discovery, expert discovery, and new claim construction briefing and argument, after any ruling on Nightforce's (not yet made) motion to amend its invalidity contentions. Nightforce's schedule is set up to allow Nightforce (which has had years

to get ready with its prior art, including any Weatherby invalidity theories) to make its own dispositive motions, while leaving no time for Leupold to take fact, then expert, discovery and to brief claim construction on these proposed new contentions. Given the current trial schedule, that unfairness is clear prejudice.

Conversely, extending the trial schedule would exacerbate, not cure, the prejudice to Leupold. Leupold and Nightforce are direct competitors, and Leupold has suffered Nightforce's continuing infringement of seven Leupold patents during the pendency of this case. Further delay in the case schedule due to Nightforce's lack of diligence in searching for prior art and in seeking to amend its invalidity contentions is no basis to extend Nightforce's competitive window against Leupold using Leupold's own patented inventions for an even longer period.

### C.    Nightforce's Belated Attempt To Make New Summary Judgment Motions On The '907 Patent Is Improper.

Despite the fact that many dispositive motions in this case are still pending, including dispositive motions on Nightforce's 28 U.S.C. § 1498 defense and on the '305 Patent that are needed for both parties' contemplated trial schedule, ***Nightforce revealed for the first time during the parties' meet-and-confer discussions that Nightforce seeks to make new summary judgment motions*** **and** ***to re-argue at least one summary judgment question on which the Court has already ruled against Nightforce***. Dispositive motions were due to be filed more than a year ago on October 5, 2018. Nightforce offers no showing of good cause under Fed. R. Civ. P. 16(b)(4) as to why it should be permitted to reopen dispositive motions and file a new motion for summary judgment at this late date. Nightforce's proposed "simple" dispositive motion as to its alleged new prior art theories should be denied because those theories cannot be admitted into the case, for the reasons discussed above. In addition, such a motion is improper because Leupold has not yet had a fair opportunity to take discovery and address claim construction on

those contentions—which Nightforce has not yet offered. Even if such a motion for summary judgment by Nightforce were timely (it is not), it would be contrary to Fed. R. Civ. P. 56(d) to grant the motion without affording Leupold the opportunity to conduct discovery on Nightforce's new contentions, leading to yet further delay and prejudice.

Nightforce also seeks to reargue an invalidity issue—reduction to practice—that was already decided by the Court on summary judgment. Such a motion for reconsideration cannot be used to make new arguments on an issue already decided when those arguments were not clearly presented to the Court in the first instance. That is exactly what Nightforce seeks to do as to its requested motion effectively seeking re-hearing on the Court's summary judgment ruling as to reduction to practice. <u>As the Court has ruled, this issue is appropriate for determination by the jury based on the parties' conflicting evidence over the material issue of disputed fact.</u> Wasting time re-briefing it and urging the Court to reconsider a legal decision Nightforce disagrees with will not help efficiently prepare this case for trial. (Certainly, there are additional summary judgment issues Leupold would like to raise with the benefit of hindsight too, but that time has passed.)

Finally, Nightforce suggests that additional claim construction rulings on several issues are needed from the Court. At this point, any such claim construction rulings will be used to instruct the jury for trial and are best resolved with other jury instruction issues at (or shortly in advance of) <u>the pretrial conference</u>. At that time, with the further narrowing and focus that the parties' pre-trial filings will force, it will be much clearer what the dispute actually is between the parties on any remaining claim constructions, and whether such a claim construction ruling is really needed or appropriate. If so, that is precisely the type of legal issue pretrial conferences are well-suited to addressing. Based on the reasoned methodology set forth in the Court's *Markman*

Opinion and Order (ECF No. 69) and the conceptual similarity with other dispute terms, Leupold submits that it is apparent how those purported claim construction issues will be resolved.

This case has been pending since 2016. The dispositive motions deadline was over one year ago. Trial is a matter of months away. It is time to focus on trying the disputed issues of fact to the finder of fact—not developing new fact and expert issues that will derail the case schedule and largely undo (or, at least, redo) the past year of work. "All things must end—even litigation." *S. Rambler Sales, Inc. v. Am. Motors Corp.*, 375 F.2d 932, 938 (5th Cir. 1967); Fed. R. Civ. P. 1 ("to secure the just, speedy, and inexpensive determination of every action and proceeding").

## III.    NIGHTFORCE'S POSITION

Justice will be better served and no prejudice will result from adopting Nightforce's proposed schedule for events leading to trial in May 2020 on the '907 patent, and potentially the '305 patent if it survives summary judgment.

The most significant differences in the parties' proposals relate to whether fact and expert discovery are complete and whether additional briefing relating to dispositive claim construction and invalidity should be accommodated in the schedule. Far from raising all "new" issues as Leupold contends, Nightforce seeks before trial a determination on Weatherby prior art, discovered while the summary judgment motions were under submission. Without objection from Leupold, the parties engaged in fact discovery and each served expert reports regarding the Weatherby prior art, while no trial date was set and beginning 14 months before the recently scheduled May 2020 trial date. Nightforce also seeks resolution of claim construction issues that must be addressed before trial.

Nightforce's proposal serves the public interest and the interests of justice.

For example, as discussed further in Section III.C.1, the Weatherby prior art is devastating to Leupold's case—it uses a *spiral cam mechanism for rifle sight adjustment* (shown below) which is the alleged point of novelty of the '907 patent entitled "Spiral Cam Mechanism for Rifle Sight Adjustment."



Justice favors deciding cases on the merits. Leupold advocates against that proposition by arguing Nightforce defenses should be excluded.

Leupold cites to Federal Rule of Civil Procedure 1, but Leupold's strategy of bringing in one suit what the Court noted "really is more like seven or eight different cases" (Oct. 18, 2019 Tr. at 4:10-11) precluded from the outset any hope of a "speedy" or "inexpensive determination." Fed. R. Civ. P. 1. Nightforce's proposal aims to at least "secure the just . . . determination" of the claims relating to the '907 patent. Good cause for proceeding to trial on the schedule of pretrial events proposed by Nightforce will be more fully explained below.

A.    **Fact Discovery**

Since summary judgment motions were briefed and argued, both sides undertook additional fact discovery including document production, subpoenas, and depositions. That fact discovery is ongoing and can be completed by year end. Interrogatory responses also should be updated, by both sides, as appropriate in view of the fact and expert discovery obtained since the

summary judgment process began more than a year ago and the '907 Patent Summary Judgment

Opinion & Order entered on September 26, 2019 (ECF No. 180) ("Opinion & Order").

Ironically, Leupold produced documents the day of the conference with the Court on

October 18, 2019, and served a supplemental expert report the day before—then told the Court

that discovery "should be formally closed." (Tr. at 11:3.) While Leupold may be satisfied that it

needs no more discovery, Nightforce has a small amount remaining to complete.

### 1.    <u>Additional Evidence Regarding Schmidt & Bender Prior Art</u>

A subpoena for records relating to the prior art Schmidt & Bender scope with a spiral

cam is outstanding to U.S. Customs. Nightforce may take a fact deposition relating to documents

obtained about that scope.

This evidence alone can be case dispositive. The Court is now familiar with the Schmidt

& Bender prior art—which Leupold has not distinguished from any of the asserted '907 patent

claims, thereby invalidating them if proved to be prior art. It is important evidence relating to

prior art Leupold has long known about and Nightforce should be permitted time to complete the

small amount of discovery remaining. The schedule proposed by Nightforce permits the orderly

completion of limited fact discovery relating to the '907 patent without interfering with other

pretrial dates and events. That discovery began while there was no schedule or trial date set in

this case and it should be completed.

Leupold would not be prejudiced. Leupold identifies no specific discovery it would take

as a result of Nightforce completing a limited amount of fact discovery related to the prior art

Schmidt & Bender scopes, which discovery would merely cement the status of Schmidt &

Bender spiral cam scopes as being prior art—a legal issue on which expert testimony would not

be proper.

More details about the fact discovery the parties both undertook since the summary judgment proceedings are provided below, in part to respond to Leupold's assertions relating to good cause and diligence.

### 2. In March 2019, Nightforce Promptly Disclosed Weatherby And Zeiss Spiral Cam Prior Art

Weatherby and Zeiss spiral cam prior art were produced to Leupold in March 2019, promptly after it was first found.[11] The Weatherby scopes were last sold approximately **45 years ago**, and the Zeiss scopes were from the **World War II era** and before. The Zeiss spiral cam is shown below:



Neither the Weatherby nor Zeiss prior art could have been readily located through keyword searches in patents or other publications, *e.g.*, for the word "spiral" or the like. Nor is a spiral cam feature visible without disassembling a scope, and it would be impracticable to obtain a sample of every prior art riflescope ever made and disassemble it. Nightforce engaged in far more than reasonable diligence to find spiral cam prior art that invalidates the '907 patent. Such prior art, including the invalidating Schmidt & Bender scopes, would have been much easier to find and fewer related third party records would have been destroyed had Leupold not waited over 10 years to sue Nightforce on the '907 patent. Leupold should not be heard to complain that

---

[11] But for a tip received in early 2019, Nightforce may have never found the Weatherby or Zeiss prior art.

delay or lack of diligence may prejudice it when Leupold itself unjustifiably delayed proceedings on the '907 patent, thereby prejudicing Nightforce.

After discovering the prior art Weatherby spiral cam scopes, Nightforce promptly served a subpoena on Weatherby for additional evidence in March 2019. Weatherby responded with information that it last sold its prior art scopes in the 1970s and that its relevant records largely had been destroyed or surrendered to the ATF. Nightforce then promptly served a subpoena on the ATF in May 2019. In July, the ATF produced records of many prior art Weatherby sales, including for scopes bearing specific serial numbers produced in this case. On September 12, the parties took a fact deposition of Weatherby in Sheridan, Wyoming.

In addition to subpoenaing third party documents and testimony, Nightforce promptly disclosed its intent to rely on the Weatherby and Zeiss spiral cam prior art in a supplemental interrogatory response served on March 19, 2019, stating for example "[i]f the '907 patent survives the pending summary judgment motions, and based on analysis to date, Nightforce intends to rely on the Weatherby Imperial scope as anticipating and rendering obvious all asserted '907 patent claims." Nightforce produced supplemental expert reports on that prior art in April 2019, which further disclosed Nightforce's intent to rely on this prior art at trial. Then Leupold itself served multiple expert reports relating to the Weatherby prior art.

When the Weatherby and Zeiss evidence was discovered and developed, fact discovery remained open and there was no trial date set. Leupold did not object to discovery proceeding on the Weatherby or Zeiss prior art or the need to prepare responsive expert reports. Nor did Leupold request additional fact discovery relating to that prior art despite that fact discovery was

open and Leupold pursued other discovery, including a deposition on May 1, 2019 of David

Larsen[12] and of Sony on March 15, 2019.

Leupold suggests it could need more fact discovery relating to the Weatherby and Zeiss

prior art if those defenses proceed to trial, but identifies no specific additional fact discovery

needed for the Weatherby or Zeiss prior art or any reason why such discovery was not pursued

earlier this year, before Leupold served multiple responsive expert reports on that prior art. In

any event, Nightforce's proposed schedule allows both parties time to complete by year end any

limited discovery needed—allowing approximately 10 weeks since the Court set trial in May

2020.

No prejudice will result from proceeding on the fuller record the parties built since

summary judgment motions were filed.

### B.    <u>**Expert Discovery**</u>

Based on fact discovery that continued while the summary judgment motions were under

submission, supplemental expert discovery also continued with both sides serving multiple

reports relating to the new evidence obtained. While Leupold now appears to assert that it may

be done, Nightforce should have the opportunity to respond to Leupold's expert opinions that

were provided after the initial expert reports served before the summary judgment process began.

For example, Leupold's expert Mr. Byron provided a new report by way of a declaration during

summary judgment briefing (*see* ECF No. 129), on issues on which Leupold bears the burden.

Nightforce should be permitted to provide responsive expert opinions and its proposed schedule

allows for that.

---

[12] A witness through whom Leupold apparently hoped to improve certain evidence of an alleged invention date after seeing the flaws Nightforce asserted in its summary judgment motion.

Nightforce's proposed schedule allows time for the limited expert discovery remaining to be completed.

### C.    Claim Construction And Invalidity Briefing

The '907 patent issues for the jury to decide can be dramatically simplified, or eliminated entirely, with a simple motion. At a minimum, some additional claim construction briefing is necessary as noted by the Court in its Opinion & Order. (*See id.* at 13-14.)

The '907 patent has two groups of asserted claims:

(1) claim 1 (and asserted dependent claims 2 and 6-8) relating to an adjustment mechanism with a spiral cam (Claim Set 1); and

(2) claim 10 (and asserted dependent claims 11, 16-17 and 19) relating to a telescopic rifle sight integrating a focus control device with multiple moving optical components within the rifle sight (Claim Set 2).

Both claim sets present issues for decision by the Court before trial preparation by the parties. These issues may dispose of the case on the '907 patent. Nightforce proposes filing its briefs relating to the following three issues by November 18, 2019, allowing time for briefing and decision before the other pretrial events that would be impacted by the Court's rulings.

Leupold asserts only procedural objections in response to Nightforce's proposals below. Leupold does not provide any substantive argument or position refuting the merits.

### 1.    Invalidating Weatherby Prior Art Discovered Since Summary Judgment Briefing

There is no genuine dispute as to any material fact that Claim Set 1 is invalid in view of Weatherby prior art that was first discovered after summary judgment motions were argued.

The Weatherby riflescope, sold from the 1950s to 1970s, used a spiral cam adjustment to adjust focus. A prior art Weatherby riflescope, partially disassembled to expose the spiral cam, is shown below (with annotations added):



As described above, both parties have conducted fact and expert discovery on this issue. Now a short, narrowly focused motion can establish that judgment of invalidity should be entered on Claim Set 1. Importantly, Leupold's multiple expert reports responding to the Weatherby evidence did not distinguish any aspect of the spiral cam mechanism of the prior art Weatherby riflescope from claim 1 of the '907 patent.

Leupold's objections to timing of the disclosure of Weatherby prior art were addressed above. There is good cause for allowing the Weatherby evidence and a motion directed to it. As set forth above, there is ample justification for first discovering Weatherby prior art after summary judgment motions were filed and Nightforce has diligently pursued it since. Nightforce reasonably considered further motion practice to be uninvited and inefficient while the Court considered the recently ruled on motions directed to the '907 patent. But in view of the recently

developed facts, and in the interests of further streamlining the issues for trial, a motion targeting Claim Set 1 with the Weatherby prior art is ripe.[13]

### 2.   **Claim Construction**

As the Court recognized in its Opinion & Order, additional construction of '907 patent claim 10 is necessary, requiring additional briefing from the parties to develop the arguments. (*See* Opinion & Order at 13-14.)

Claim 10 of the '907 patent includes two phrases using the term "outwardly from the," neither of which is in claim 1. Nightforce contends that Leupold's interpretation of the simple word "from" in asserting infringement of claim 10 is contrary to its plain and ordinary meaning[14] of "starting at a particular point and moving away." MacMillan Dictionary (available at https://www.macmillandictionary.com/dictionary/american/from#from_21); *see also* Webster's Third New International Dictionary 913 (1993) ("used as a function word to indicate a starting point").

The two phrases at issue in claim 10 are:

- "focus control device projecting *outwardly from the* exterior of the housing" and

- "the spiral cam track spiraling *outwardly from the* axis of rotation." (Emphasis added.)

---

[13] As to Leupold's other procedural objection that Nightforce has not formally moved to add the Weatherby prior art to its invalidity contentions, that is form over substance in view of the parties' exchanges of fact and expert discovery to date on that prior art. Nevertheless, if the Court prefers, a formal motion to amend could be included with a full explanation of the good cause supporting it. Courts routinely have permitted parties to rely on newly discovery prior art evidence after serving invalidity contentions. *See, e.g.,Cywee Group Ltd.*, 2018 WL 2289334. Indeed, even in a case cited by Leupold, the Court found that the party relying on the newly discovered prior art acted diligently at no prejudice to the other party. *REC Software USA*, 2012 WL 3527891, at *4-5.

[14] As the Court noted in its claim construction Opinion & Order (ECF No. 69), absent a clear disclaimer or disavowal or an inventor acting as his or her own lexicographer, "words of a claim are generally given their ordinary and customary meaning." (*Id.* at 3 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)).) Whether Leupold ascribed a special meaning or disclaimed the relevant ordinary meaning for the terms at issue is for the Court—not for the jury—to decide.

The parties' dispute presents issues of claim construction for the Court to decide. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

The Court should construe these two phrases having shared language consistently, if possible. It is a "strong" principle of patent claim construction that the same phrase presumptively has the same meaning each place it is found in the claims: "the principle that the same phrase in different claims of the same patent should have the same meaning is a strong one, overcome only if 'it is clear' that the same phrase has different meanings in different claims." *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) (citations omitted); *see also Scripps Research Inst. v. Illumina, Inc.*, No. 2018-2089, 2019 WL 4071879, at *4 (Fed. Cir. Aug. 29, 2019) (nonprecedential) (giving the same meaning to term appearing in different places in the same patent "following ordinary principles of internal-document coherence," and construing the same term to have the same meaning each place it appeared within a claim).

Since summary judgment briefing, Leupold has created another claim construction issue relating to whether the same spiral can be both "*substantially* Archimedean (linear)" and "non-Archimedean (non-linear)" to simultaneously satisfy claims 7-8 and 17-18.[15] This spiral-shape

---

[15] This claim construction issue arises at least in part from apparently inconsistent positions Mr. Byron has taken. For purposes of Mr. Byron's report alleging infringement, and before he was aware of Weatherby and Zeiss spiral cam prior art, he noted that a single Nightforce part for his claim 7 analysis "includes two adjacent groove segments, each of which is in the shape of an Archimedean spiral" and for his claim 8 analysis "has an overall curvature that would cause the cam follower and actuator to move at a nonlinear rate." (Sept. 22, 2018 Byron Report, ECF No. 83-3, ¶¶ 502, 505.) Then, analyzing Weatherby and Zeiss prior art, Mr. Byron argues that "like claims 7 and 8 discussed above, claims 17 and 18 add the diametrically opposed limitation that the spiral cam track either be substantially Archimedean (linear) or non-Archimedean (non-linear). As discussed above, the same cam track cannot possibly satisfy both of these claims at once …" (Jun. 12, 2019 Byron Report ¶ 172.)

issue also must be resolved so that experts are not arguing claim construction to the jury. *See generally O2 Micro*, 521 F.3d at 1362.

Nightforce requests the Court to construe the "outwardly from" phrases in claim 10 and the spiral-shape limitations following Nightforce's proposed briefing schedule, with its opening brief to be filed by November 18, 2019. This would allow time for decision before the other pretrial events that would be impacted by the Court's claim construction. Leupold's proposal to delay this claim construction to trial or the pretrial conference is inefficient and prejudicial to orderly preparation for trial.

If the Court construes either "outwardly from" limitation in the manner Nightforce will propose, it is expected that Leupold will stipulate to non-infringement of claim 10 and its asserted dependent claims, simplifying any trial.

### 3.    Reduction To Practice Of Claim 10

Leupold has not disputed that Claim Set 2 is invalid in view the Schmidt & Bender German Publication if it qualifies as prior art. It does qualify as prior art because Leupold offered no evidence that Claim Set 2 was reduced to practice before the German Publication.

An issue not addressed by the Court's Opinion & Order is whether Leupold made an embodiment of *claim 10* before the German Publication. To meet its burden of showing earlier reduction to practice, Leupold was required to produce corroborated evidence of an embodiment having "every limitation of the claim." *Hummer v. Adm'r of Nat. Aeronautics & Space Admin.*, 500 F.2d 1383, 1387 (C.C.P.A. 1974) ("To constitute an actual reduction to practice, the device demonstrated must include every limitation of the claim."); *Brinker v. Kray*, 460 F.2d 1073, 1075–76 (C.C.P.A. 1972) (corroboration of every claim limitation being present in an alleged reduction to practice required). That standard requires a claim by claim analysis—an

embodiment of "the invention" of claim 1 does not necessarily establish reduction to practice of "the invention" of claim 10.

*What* Leupold argued it reduced to practice before the German Publication was lost in the morass of issues raised and paper filed with summary judgment briefing. Leupold did not provide evidence to show reduction to practice of claim 10 and undertook no limitation by limitation analysis of its evidence to try to carry its burden to do so.[16] For example, Leupold failed to provide documents or other corroborating evidence showing reduction to practice before the German Publication of a rifle sight combining, at least, a spiral cam mechanism with an "adjustable aiming control device … for pivotally moving the erector assembly" as required to satisfy the limitation in claim 10(a), "a movable optical element slidably mounted within the housing" as required to satisfy the limitation of claim 10(b), "the actuator slide operatively connected to the movable optical element" as required to satisfy the limitation of claim 10(c)(ii) as well as other elements of claim 10 and its dependent claims (*e.g.*, the "spring" of claim 19).

Claim Set 2 is invalid in view of the German Publication because Leupold failed to produce evidence that its alleged earlier reduction to practice met every limitation of claim 10 or its dependent claims. Simplifying the case by eliminating Claim Set 2 on this basis can be accomplished by limited reconsideration of the Opinion & Order on the current evidentiary record, with or without short briefs from the parties. Nightforce could file a short brief on this issue by November 18, 2019. The proposed case schedule easily accommodates the Court taking up this narrow issue with or without additional briefs from the parties.

---

[16] *See, e.g.*, *D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1049 (Fed. Cir. 2018) (because "a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference," when challenged on summary judgment it is "on notice that [it] need[s] to present [its] entire argument and all [its] evidence regarding why the Patents-in-Suit could claim the earlier" date) (internal citations and quotation marks omitted).

Leupold's procedural objections on this issue do not hint at any substantive opposition on the merits. Lacking evidence or expert opinion on this issue, Leupold has not shown it could carry its burden at trial to show reduction to practice of claim 10 before the German Publication.

**D.    Pretrial Document Deadlines And Intervals**

Nightforce's proposed schedule matches the sequence and timing of the pretrial dates for expert motions and all following pretrial deadlines previously agreed by the parties and ordered by the Court, keyed backwards off the new trial date. The Court should adopt the previous sequence and timing, set out in Nightforce's proposed schedule, rather than adding time to the intervals as proposed by Leupold. There are fewer patents and issues to be tried, so expanding the time to complete the waves of pretrial filings as proposed by Leupold is unwarranted.

DATED November 8, 2019.

Respectfully submitted,

By: *s/Nathan C. Brunette*
 Kassim M. Ferris, OSB No. 965260
 kassim.ferris@stoel.com
 Nathan C. Brunette, OSB No. 090913
 nathan.brunette@stoel.com
 Elliott J. Williams, OSB No. 144835
 elliott.williams@stoel.com
 STOEL RIVES LLP
 760 SW Ninth Avenue, Suite 3000
 Portland, OR 97205
 Telephone: (503) 224-3380

 Brian C. Park (*pro hac vice*)
 brian.park@stoel.com
 STOEL RIVES LLP
 600 University Street, Suite 3600
 Seattle, WA 98101-4109
 Telephone: (206) 386-7542

 *Attorneys for Plaintiff*
 LEUPOLD & STEVENS, INC.

By: *s/Scott E. Davis*
 Scott E. Davis, OSB No. 022883
 Email: scott.davis@klarquist.com
 Todd M. Siegel, OSB No. 001049
 Email: todd.siegel@klarquist.com
 J. Christopher Carraway, OSB No. 961723
 Email: chris.carraway@klarquist.com
 KLARQUIST SPARKMAN, LLP
 121 S.W. Salmon St., Ste. 1600
 Portland, Oregon 97204
 Telephone: (503) 595-5300

 David A. Casimir, *pro hac vice*
 Email: dacasimir@casimirjones.com
 CASIMIR JONES, S.C.
 2275 Deming Way, Ste. 310
 Middleton, WI 53562
 Telephone: (608) 662-1277

 *Attorneys for Defendant*
 LIGHTFORCE USA, INC.

JOINT REPORT RE PROPOSED PRETRIAL DATES AND SCHEDULING   27