1              IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF OREGON

3
     LEUPOLD & STEVENS, INC.,          )
4                                      )
                  Plaintiff,           ) No. 3:16-cv-01570-HZ
5                                      )
           vs.                         ) October 18, 2019
6                                      )
     LIGHTFORCE USA, INC. doing        ) Portland, Oregon
7    business as NIGHTFORCE OPTICS     )
     doing business as NIGHTFORCE      )
8    USA,                              )
                                       )
9                 Defendant.           )
     --------------------------------

10

11

12

13

14

15                    **TELEPHONIC HEARING**

16               TRANSCRIPT OF PROCEEDINGS

17         BEFORE THE HONORABLE MARCO A. HERNANDEZ

18            UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

```
1                          APPEARANCES

2    FOR THE PLAINTIFF:    Brian C. Park
                           Stoel Rives LLP
3                          600 University Street
                           Suite 3600
4                          Seattle, WA  98101

5                          Nathan C. Brunette
                           Kassim M. Ferris
6                          Stoel Rives LLP
                           760 S. W. Ninth Avenue
7                          Suite 3000
                           Portland, OR  97205
8
     FOR THE DEFENDANT:    David A. Casimir
9                          Mary Ann D. Brow
                           Jason R. Bond
10                         Casimir Jones S.C.
                           2275 Deming Way
11                         Suite 310
                           Middleton, WI  53562
12
                           Scott E. Davis
13                         Todd M. Siegel
                           Klarquist Sparkman, LLP
14                         One World Trade Center
                           121 S. W. Salmon Street
15                         Suite 1600
                           Portland, OR  97204
16
     COURT REPORTER:       Nancy M. Walker, CSR, RMR, CRR
17                         United States District Courthouse
                           1000 S. W. Third Avenue, Room 301
18                         Portland, OR  97204
                           (503) 326-8186
19

20

21

22

23

24

25
```

```
1                      P R O C E E D I N G S
2              THE CLERK:  Good morning.  This is the matter of
3    Leupold versus Nightforce, Case No. 16-cr-1570, Judge
4    Hernandez presiding.  This is the time set for a status
5    conference.
6              Please note we have a court reporter present, so
7    please identify yourself each time you speak.
8              Counsel, please tell me who all is on the record,
9    starting with plaintiff.
10             MR. PARK:  Good morning.  For the plaintiff, Brian
11   Park.
12             MR. BRUNETTE:  And with him, Nathan Brunette.
13             MR. FERRIS:  And Kassim Ferris for plaintiff.
14             THE COURT:  For defense?
15             MR. CASIMIR:  David Casimir from Casimir Jones for
16   defense.
17             UNIDENTIFIED SPEAKER:  (Indiscernible).
18             MR. DAVIS:  Good morning, Your Honor.  Scott Davis
19   for defendant.
20             THE COURT:  All right.  I heard Casimir and I heard
21   Davis.  And then a woman was speaking, and I didn't hear that
22   because Mr. Davis was speaking.  So who else?
23             MS. BROW:  I'm sorry.  This is Mary Ann Brow with
24   David Casimir from Casimir Jones for the defendant.
25             MR. BOND:  And Jason Bond as well for the defendant.
```

1           MR. SIEGEL:  Todd Siegel from Klarquist is also on

2    for the defendant.

3           THE COURT:  I think that's all of you.  Thank you

4    very much for being here.

5           So I wanted to kind of update what the Court is doing

6    and explain some things and then start selecting some dates

7    for your trial.

8           So one of the things that happened as we were going

9    through your summary judgment motions is I realized that while

10   I was treating this as though it was one case, it really is

11   more like seven or eight different cases.  And that was my

12   mistake in not realizing that sooner.  And as I was going

13   through it, it occurred to me, this is what our problem is, is

14   that it's a huge packet of cases as opposed to one case.  And

15   so I decided to break it up, and that's why you received a

16   ruling on the '907 and have not received other rulings.

17          It is my intent to proceed to trial on the '907.

18   Before that trial occurs, it is my intent to have the issues

19   around 28 USC 1498 resolved for you, because they may be

20   relevant to the trial.

21          And I have hopes to have the '305 summary judgment

22   motions done towards the beginning of the year.  And the

23   parties can then confer and decide whether they want to do a

24   trial with the '907 and the '305 together or whether they want

25   to proceed to trial on the '907.

1          I am scheduling my trials right now in May, if you

2    want to get out your calendars.  That's what I'm looking at

3    for a trial.  Given that it is my sense that we are likely to

4    be trying the '907 by itself, perhaps with the '305, I'm

5    thinking that the trial will last five to 10 days.

6          But let me turn to the plaintiffs.  Given what I've

7    just told you, does a five- to 10-day trial in May sound

8    appropriate for the two patents that I've just suggested?

9          MR. PARK:  Your Honor, this is Brian Park.

10         For those two patents, we would think that a 10-day

11   trial, 10 court days, would be appropriate.  But we -- we

12   would have concerns with breaking up the case just to one or

13   two patents.

14         Aside from the fact that it would be inefficient and

15   very expensive and redundant, there are also some -- some

16   amendment issues regarding having different juries determine

17   the same facts that cross over between multiple patents.  We

18   have the same -- or a bulk of the same infringing riflescopes

19   that touch all patents.  There are a number of defenses,

20   including as to invalidity, that touch all the patents or

21   cross over.

22         As Your Honor mentioned, there's a government

23   contract sales defense.  There are many damages issues

24   regarding competition and market share.  Because many of the

25   same riflescopes embody the claims in each of the

1    patents-in-suit, we think it could be problematic to cleave

2    the case into separate trials.

3              THE COURT:  Let's assume that I disagree with you,

4    and that's what's going to happen, because keeping these all

5    together and putting this in front of one jury, there is no

6    way that they're going to be able to do this work that you're

7    asking them to do.  It just isn't going to happen.

8              Let me hear from the defense.

9              Mr. Casimir?

10             MR. CASIMIR:  Yes.  In terms of the timing, five to

11   10 days does seem appropriate with that scope in mind.

12             THE COURT:  So I'm looking in May for a trial date.

13   Get your calendars out.

14             MR. PARK:  Your Honor, for Brian Park, May is pretty

15   wide open.

16             THE COURT:  Okay.

17             MR. CASIMIR:  I don't know if we want to go through

18   plaintiff first.  I can hold off until plaintiff goes.

19             THE COURT:  Why don't you hold off until I give you

20   my dates, and then we'll talk.

21             THE CLERK:  May 19th.

22             THE COURT:  All right.  So I'm looking at May the

23   19th as a starting date for trial.  And it will run -- it

24   looks like Memorial Day is in there.

25             What have we got here?  Just a second.

1          Yeah, let's plan on doing May the 19th as a start

2    date.  And there's a holiday the subsequent week, but we will

3    take the Monday off and then begin again on the 26th, run

4    through the 29th.  Hopefully we'll be done by then.  But if

5    not, we can use that subsequent -- hang on.  That's June

6    the 1st.

7          So we would finish up, let's say, on June the 2nd if

8    we're not done.  June the 2nd is available.  All that

9    following week, the first week in June, is available for us.

10          All right.  Mr. Park, how does that look to you?

11          MR. PARK:  That's clear, Your Honor.

12          THE COURT:  And how about for defense?

13          MR. CASIMIR:  Dave Casimir speaking.  That is open,

14    yes.

15          THE COURT:  Okay.  So those will be our trial dates.

16          Hang on just a second.  I'll give you a pretrial

17    conference date.

18          THE CLERK:  The 11th or 8th.

19          THE COURT:  Let's do May the 11th.  And I will put

20    that at 11:00 in the morning.

21          All right.  Mr. Park, does that work for you?

22          MR. PARK:  Yes, Your Honor.

23          THE COURT:  And, Mr. Casimir, does that work for

24    defense?

25          MR. CASIMIR:  Yes, Your Honor.

1           THE COURT:  Okay.  So then let's talk about some

2    other things.

3           What's going on -- this is obviously a very

4    complicated case that's going to involve, now, multiple

5    trials.  What are you all doing with settling this case?

6           Mr. Park, talk to me.

7           MR. PARK:  Your Honor, after the mediation with Judge

8    Beckerman, the parties have largely been waiting for the

9    summary judgment rulings, because our view and I think the

10   other side's view is that those summary judgment orders would

11   largely frame the issues that need to be settled.  And so we

12   have not had renewed settlement discussions since then,

13   pending the Rule 56 rulings.

14          THE COURT:  Well, you have the '907 ruling now.  Is

15   that helpful to you in kind of moving the ball along?

16          MR. PARK:  It's helpful in part.  But the '305 and

17   the locking turret knob issues are all part of the same

18   package.

19          And so we can certainly reach out to the defense team

20   and see what might make sense.  But I'm not sure.  I'm not

21   sure.

22          THE COURT:  So the parties need to understand, this

23   case is going to get litigated over the next couple of years.

24   That's how long it's going to take for me to get through

25   everything and get what I anticipate to be two or three jury

1   trials done.  And then you all get to go to the Federal

2   Circuit and fight it out over there.  So keep that in mind as

3   you're kind of looking at what negotiations ought to look like

4   in this case.

5           Mr. Casimir, talk to me.  What's going on from your

6   perspective?

7           MR. CASIMIR:  Yes.  There have been a few settlement

8   volleys.  They involve the other case that Judge Acosta has as

9   well, so Brian's group may not have been in the discussion

10  group on that, because it's been with counsel in the other

11  case.

12          So there have been some settlement discussions that

13  have looked at a global settlement, as well as potentially

14  partitioning out individual patents in the group or having

15  small groups together.  Nightforce has been amenable to

16  settling out subpieces; to date, Leupold has not.

17          THE COURT:  So -- and that's fine, and I understand

18  that.  Litigants want everything to go away and so that they

19  can go on with their lives, and that makes some sense to me.

20  On the other hand, I understand your perspective:  Let's get

21  rid of the things that we can get rid of and litigate the

22  things that we can.  That's fine, too.  Both perspectives make

23  some sense to me.

24          Does it make sense to you, Mr. Casimir, from your

25  perspective, to go back to Judge Beckerman, or is this

1    something where you think a private mediator might be a better

2    approach or on your own and everybody just leaves you all

3    alone?

4              MR. CASIMIR:  I think all of those options would be

5    useful, as well as potentially -- and I don't know if Your

6    Honor is willing to entertain this or not -- some additional

7    filings we might be able to make with Your Honor to simplify

8    some of the issues or resolve some of the open hanging issues

9    that you identified in the opinion and order on the '907

10   summary judgment.

11             I think there are some opportunities to simplify

12   aspects of the case that would also then, I believe, push

13   toward a settlement.

14             THE COURT:  So there were a number of things where we

15   simply said we don't have enough information and the litigants

16   didn't give us enough information to reach a conclusion as to

17   the '907, and we just declined to kind of go there.

18             That's what you're referring to, I take it?

19             MR. CASIMIR:  Yes.

20             And then there's been one additional development

21   that's happened in the case since the summary judgment motion,

22   which is some very old prior art that does not implicate any

23   of the inventions at issue, that turned up with spiral cam

24   designs for riflescope knob adjustments.

25             THE COURT:  Oh, my goodness.

1            Mr. Park, what are your thoughts about all of that?

2            MR. PARK:  Your Honor, we think that fact discovery

3   has effectively run to ground and should be formally closed,

4   largely -- I mean, in our view, it is closed.  But we think it

5   would be appropriate for the Court to enter a scheduling order

6   now, guiding the parties' preparation towards trial.

7            As the Court knows, there's going to be a lot of

8   work, a lot of issues going into May, regardless of whether

9   it's just on the '907 or the '305 patents.  Expert discovery

10  is largely completed, except for a few issues or items that

11  the parties have agreed months ago to follow up on.

12           But we -- we don't agree.  We object to reopening new

13  prior art, chasing down third parties that could reopen a

14  number of issues, including claim construction, dispositive

15  rulings, certainly expert reports, likely more fact and expert

16  depositions.  We think it's time to close, formally, fact

17  discovery.

18           THE COURT:  Mr. Park, as far as scheduling, I don't

19  know what else is out there other than a pretrial conference

20  and a trial.  Is there anything else to be scheduled, from

21  your perspective?

22           MR. PARK:  Well, Your Honor, we know the Court

23  oftentimes uses a standard kind of ramp-up to trial pretrial

24  scheduling order.  I think that would be helpful.

25           In one of the prior iterations, the parties had

1   submitted to the Court, by stipulation -- it laid out

2   deadlines for the various pretrial rulings and the closing of

3   fact and expert discovery, things of that nature.  So we think

4   that would be helpful.

5          THE COURT:  Has that schedule been adopted by the

6   Court?  Honestly, I don't recall; and I don't have CM/ECF

7   right in front of me.

8          MR. PARK:  Sure.  So in the past some of those

9   schedules were adopted, but currently, while the summary

10  judgment motions have been pending, we don't have a schedule.

11         THE COURT:  All right.  So what I want you to do is

12  I want both sides to confer with each other, and you come up

13  with a proposed schedule as to what's going to happen.  And to

14  the extent that you disagree or can't agree, then come back to

15  the Court, and I will set whatever scheduling issues or

16  resolve whatever scheduling issues need to be resolved.

17         MR. PARK:  Understood.  This is Brian.  Understood.

18         THE COURT:  Thank you, Mr. Park.

19         Mr. Casimir, does that make sense to you?

20         MR. CASIMIR:  It does, yes.  Thank you, Your Honor.

21         THE COURT:  And as regards the other pieces that you

22  think need to be picked up or you might find it useful for the

23  Court to pick up and you want to submit additional briefing on

24  those issues, before you do that, I want you to confer with

25  the other side, Mr. Casimir, and see if you can reach some

1   agreement on those issues.  And if not, we'll set a conference

2   and we'll talk about what to do about those issues.

3          MR. CASIMIR:  That makes sense.  Thank you.

4          THE COURT:  And before we kind of get there, you're

5   going to need to highlight which points you would want me to

6   resolve, so that I can get back on top of the summary judgment

7   opinion and order that I issued and know where it is you think

8   that the places that you want resolution are and where the

9   ones that you can simply kind of march on without resolution

10  are as well.

11         MR. CASIMIR:  Very good.  We will meet and confer

12  with the plaintiff and see if we can come to an agreement.

13         THE COURT:  Yeah.  And don't spend a lot of time

14  doing that, because May is going to come quickly.  And you're

15  going to want answers or ignore those issues until trial, one

16  way or the other, but you're going to want to know whether

17  you're going to need further litigation or not.

18         And, in particular, because I want to get some of

19  these other patents and your summary judgment motions on those

20  patents done, to the extent that you're filing additional

21  briefing on issues that you think need resolution, that's

22  going to detract from my availability to resolve the other

23  issues that I'd like to get resolved before we get to trial.

24  So keep that in mind as well.

25         Mr. Casimir, from your perspective, is there anything

1    that the Court can do to help you move your settlement

2    discussions along?

3            And I don't really want you to disparage the other

4    side.  I'm really looking for you -- is there something out

5    there that you think might move things along that I can do?

6            MR. CASIMIR:  So I'm not sure, other than let me

7    raise one point that I think would help with settlement

8    discussions, because it's an economic point.

9            The parties, long ago, exchanged expert damages

10   reports, so we all have each other's numbers.  The numbers are

11   relatively low in this case under a reasonable royalty theory

12   and higher under a lost profits theory.  And I guess

13   one -- if -- and I'll note that Nightforce believes that there

14   is not a lost profits theory that is viable in this case.

15           If there were any way to get a view or opinion or

16   analysis on that point, I think that would push towards

17   settlement, because the reasonable royalty numbers, on nearly

18   every one of these issues, are small enough that it's

19   certainly not worth the parties even spending the time

20   fighting about it.

21           THE COURT:  Is that consistent with your analysis,

22   Mr. Park?

23           MR. PARK:  No.  I would say the numbers -- I can

24   agree the numbers are lower, but I wouldn't say they're low.

25           THE COURT:  Well, that's not my question.  My

1    question is if you had some kind of guidance on that issue,

2    would that help you towards settlement?

3                MR. PARK:  I'm not sure, Your Honor.  I would have to

4    think about that and perhaps connect with the Schwabe firm to

5    see what discussions have taken place of a global nature in

6    the other case.  But that's something that the defense team

7    and the plaintiff's team can meet and confer about.

8                THE COURT:  All right.  Go ahead and do that.

9                And I don't know that I can give you an answer to the

10   question that's being raised without giving you an advisory

11   opinion, and I'm not going to do that.  But what might be

12   something that you would consider is getting somebody like a

13   special master or somebody who has experience in this area, in

14   order to ask what their opinion on that particular issue is,

15   if it's helpful to resolution of your case.

16               So, again, I will leave it up to you.  I'm not going

17   to do anything at this particular moment.  Keep talking

18   amongst yourselves and see what things might work in order to

19   help move your case towards resolution.  And if it helps,

20   that's fine.  If it doesn't, that's fine as well.  We'll keep

21   marching along on our end.

22               Mr. Park, is there anything else from your

23   perspective that you want me to address at this time?

24               MR. PARK:  No, I don't think so, Your Honor.

25               Nathan, is there anything that you think we should

1    raise that we haven't already discussed?

2              MR. BRUNETTE:  No.  I think we've discussed it.

3              THE COURT:  Mr. Casimir, from your perspective, is

4    there anything else that you think I need to address?

5              MR. CASIMIR:  No further issues for me.

6              Let me check with counsel in Oregon to see if they

7    have any issues.

8              MR. DAVIS:  No, Your Honor.  I think this has been

9    helpful.

10             THE COURT:  Who is speaking, please?

11             MR. DAVIS:  Scott Davis.  Sorry.

12             THE COURT:  Thank you, Mr. Davis.

13             Okay.  Then I'm going to let you get back to work in

14   trying to resolve your patent dispute and get out of your way.

15             Everybody have a good afternoon.  And, again, once

16   you kind of start narrowing the issues and you need

17   communication with the Court, let us know right away, and I

18   will set up another phone conference.

19             Go ahead and submit your proposed schedule, and then

20   we'll be visiting again once I get that.

21             Thank you.  That's all for today.

22             MR. PARK:  Thank you, Your Honor.

23             MR. CASIMIR:  Thank you, Your Honor.

24

25             (Proceedings concluded.)

1                                    --oOo--

2

3          I certify, by signing below, that the

4       foregoing is a correct transcript of the record

5       of proceedings in the above-titled cause.  A

6       transcript without an original signature,

7       conformed signature or digitally signed signature

8       is not certified.

9

10

11       */s/ Nancy M. Walker*                    *10-30-19*

12       _____    _____

13       NANCY M. WALKER, CSR, RMR, CRR          DATE
         Official Court Reporter
14       Oregon CSR No. 90-0091

15

16

17

18

19

20

21

22

23

24

25

## '

**'305** [5] - 4:21, 4:24, 5:4, 8:16, 11:9
**'907** [9] - 4:16, 4:17, 4:24, 4:25, 5:4, 8:14, 10:9, 10:17, 11:9

## /

**/s** [1] - 17:11

## 1

**10** [3] - 5:5, 5:11, 6:11
**10-30-19** [1] - 17:11
**10-day** [2] - 5:7, 5:10
**1000** [1] - 2:17
**11:00** [1] - 7:20
**11th** [2] - 7:18, 7:19
**121** [1] - 2:14
**1498** [1] - 4:19
**16-cr-1570** [1] - 3:3
**1600** [1] - 2:15
**18** [1] - 1:5
**19th** [3] - 6:21, 6:23, 7:1
**1st** [1] - 7:6

## 2

**2019** [1] - 1:5
**2275** [1] - 2:10
**26th** [1] - 7:3
**28** [1] - 4:19
**29th** [1] - 7:4
**2nd** [2] - 7:7, 7:8

## 3

**3000** [1] - 2:7
**301** [1] - 2:17
**310** [1] - 2:11
**326-8186** [1] - 2:18
**3600** [1] - 2:3
**3:16-cv-01570-HZ** [1] - 1:4

## 5

**503** [1] - 2:18
**53562** [1] - 2:11
**56** [1] - 8:13

## 6

**600** [1] - 2:3

## 7

**760** [1] - 2:6

## 8

**8th** [1] - 7:18

## 9

**90-0091** [1] - 17:13
**97204** [2] - 2:15, 2:18
**97205** [1] - 2:7
**98101** [1] - 2:4

## A

**able** [2] - 6:6, 10:7
**above-titled** [1] - 17:5
**Acosta** [1] - 9:8
**additional** [4] - 10:6, 10:20, 12:23, 13:20
**address** [2] - 15:23, 16:4
**adjustments** [1] - 10:24
**adopted** [2] - 12:5, 12:9
**advisory** [1] - 15:10
**afternoon** [1] - 16:15
**ago** [2] - 11:11, 14:9
**agree** [3] - 11:12, 12:14, 14:24
**agreed** [1] - 11:11
**agreement** [2] - 13:1, 13:12
**ahead** [2] - 15:8, 16:19
**alone** [1] - 10:3
**amenable** [1] - 9:15
**amendment** [1] - 5:16
**analysis** [2] - 14:16, 14:21
**Ann** [2] - 2:9, 3:23
**answer** [1] - 15:9
**answers** [1] - 13:15
**anticipate** [1] - 8:25
**APPEARANCES** [1] - 2:1
**approach** [1] - 10:2
**appropriate** [4] - 5:8, 5:11, 6:11, 11:5
**area** [1] - 15:13
**art** [2] - 10:22, 11:13
**aside** [1] - 5:14
**aspects** [1] - 10:12
**assume** [1] - 6:3
**availability** [1] - 13:22
**available** [2] - 7:8, 7:9
**Avenue** [2] - 2:6, 2:17

## B

**ball** [1] - 8:15
**Beckerman** [2] - 8:8, 9:25
**BEFORE** [1] - 1:17
**begin** [1] - 7:3
**beginning** [1] - 4:22
**believes** [1] - 14:13
**below** [1] - 17:3
**better** [1] - 10:1
**between** [1] - 5:17

**Bond** [2] - 2:9, 3:25
**BOND** [1] - 3:25
**break** [1] - 4:15
**breaking** [1] - 5:12
**Brian** [5] - 2:2, 3:10, 5:9, 6:14, 12:17
**Brian's** [1] - 9:9
**briefing** [2] - 12:23, 13:21
**Brow** [2] - 2:9, 3:23
**BROW** [1] - 3:23
**Brunette** [2] - 2:5, 3:12
**BRUNETTE** [3] - 3:12, 16:2
**bulk** [1] - 5:18
**business** [2] - 1:7, 1:7

## C

**calendars** [2] - 5:2, 6:13
**cam** [1] - 10:23
**Case** [1] - 3:3
**case** [17] - 4:10, 4:14, 5:12, 6:2, 8:4, 8:5, 8:23, 9:4, 9:8, 9:11, 10:12, 10:21, 14:11, 14:14, 15:6, 15:15, 15:19
**cases** [2] - 4:11, 4:14
**casimir** [1] - 2:8
**Casimir** [15] - 2:10, 3:15, 3:20, 3:24, 6:9, 7:13, 7:23, 9:5, 9:24, 12:19, 12:25, 13:25, 16:3
**CASIMIR** [14] - 3:15, 6:10, 6:17, 7:13, 7:25, 9:7, 10:4, 10:19, 12:20, 13:3, 13:11, 14:6, 16:5, 16:23
**Center** [1] - 2:14
**certainly** [3] - 8:19, 11:15, 14:19
**certified** [1] - 17:8
**certify** [1] - 17:3
**chasing** [1] - 11:13
**check** [1] - 16:6
**Circuit** [1] - 9:2
**claim** [1] - 11:14
**claims** [1] - 5:25
**clear** [1] - 7:11
**cleave** [1] - 6:1
**CLERK** [3] - 3:2, 6:21, 7:18
**close** [1] - 11:16
**closed** [2] - 11:3, 11:4
**closing** [1] - 12:2
**CM/ECF** [1] - 12:6
**communication** [1] - 16:17
**competition** [1] - 5:24
**completed** [1] - 11:10
**complicated** [1] - 8:4
**concerns** [1] - 5:12
**concluded** [1] - 16:25
**conclusion** [1] - 10:16
**confer** [5] - 4:23, 12:12, 12:24, 13:11, 15:7
**conference** [5] - 3:5, 7:17, 11:19, 13:1, 16:18
**conformed** [1] - 17:7
**connect** [1] - 15:4

consider [1] - 15:12
consistent [1] - 14:21
construction [1] - 11:14
contract [1] - 5:23
correct [1] - 17:4
counsel [3] - 3:8, 9:10, 16:6
couple [1] - 8:23
court [2] - 3:6, 5:11
COURT [34] - 1:1, 1:18, 2:16, 3:14, 3:20, 4:3, 6:3, 6:12, 6:16, 6:19, 6:22, 7:12, 7:15, 7:19, 7:23, 8:1, 8:14, 8:22, 9:17, 10:14, 10:25, 11:18, 12:5, 12:11, 12:18, 12:21, 13:4, 13:13, 14:21, 14:25, 15:8, 16:3, 16:10, 16:12
Court [11] - 4:5, 11:5, 11:7, 11:22, 12:1, 12:6, 12:15, 12:23, 14:1, 16:17, 17:13
Courthouse [1] - 2:17
cross [2] - 5:17, 5:21
CRR [2] - 2:16, 17:12
CSR [3] - 2:16, 17:12, 17:13

**D**

damages [2] - 5:23, 14:9
DATE [1] - 17:12
date [5] - 6:12, 6:23, 7:2, 7:17, 9:16
dates [3] - 4:6, 6:20, 7:15
Dave [1] - 7:13
David [3] - 2:8, 3:15, 3:24
Davis [5] - 2:12, 3:18, 3:21, 16:11, 16:12
DAVIS [3] - 3:18, 16:8, 16:11
davis [1] - 3:22
days [3] - 5:5, 5:11, 6:11
deadlines [1] - 12:2
decide [1] - 4:23
decided [1] - 4:15
declined [1] - 10:17
Defendant [1] - 1:9
defendant [4] - 3:19, 3:24, 3:25, 4:2
DEFENDANT [1] - 2:8
defense [8] - 3:14, 3:16, 5:23, 6:8, 7:12, 7:24, 8:19, 15:6
defenses [1] - 5:19
Deming [1] - 2:10
depositions [1] - 11:16
designs [1] - 10:24
determine [1] - 5:16
detract [1] - 13:22
development [1] - 10:20
different [2] - 4:11, 5:16
digitally [1] - 17:7
disagree [2] - 6:3, 12:14
discovery [4] - 11:2, 11:9, 11:17, 12:3
discussed [2] - 16:1, 16:2
discussion [1] - 9:9
discussions [5] - 8:12, 9:12, 14:2, 14:8, 15:5
disparage [1] - 14:3
dispositive [1] - 11:14

dispute [1] - 16:14
DISTRICT [3] - 1:1, 1:2, 1:18
District [1] - 2:17
done [5] - 4:22, 7:4, 7:8, 9:1, 13:20
down [1] - 11:13

**E**

economic [1] - 14:8
effectively [1] - 11:3
eight [1] - 4:11
embody [1] - 5:25
end [1] - 15:21
enter [1] - 11:5
entertain [1] - 10:6
except [1] - 11:10
exchanged [1] - 14:9
expensive [1] - 5:15
experience [1] - 15:13
expert [5] - 11:9, 11:15, 12:3, 14:9
explain [1] - 4:6
extent [2] - 12:14, 13:20

**F**

fact [5] - 5:14, 11:2, 11:15, 11:16, 12:3
facts [1] - 5:17
far [1] - 11:18
Federal [1] - 9:1
FERRIS [1] - 3:13
Ferris [2] - 2:5, 3:13
few [2] - 9:7, 11:10
fight [1] - 9:2
fighting [1] - 14:20
filing [1] - 13:20
filings [1] - 10:7
fine [4] - 9:17, 9:22, 15:20
finish [1] - 7:7
firm [1] - 15:4
first [2] - 6:18, 7:9
five [3] - 5:5, 5:7, 6:10
follow [1] - 11:11
following [1] - 7:9
FOR [3] - 1:2, 2:2, 2:8
foregoing [1] - 17:4
formally [2] - 11:3, 11:16
frame [1] - 8:11
front [2] - 6:5, 12:7

**G**

given [2] - 5:3, 5:6
global [2] - 9:13, 15:5
goodness [1] - 10:25
government [1] - 5:22
ground [1] - 11:3
group [3] - 9:9, 9:10, 9:14
groups [1] - 9:15
guess [1] - 14:12

guidance [1] - 15:1
guiding [1] - 11:6

**H**

hand [1] - 9:20
hang [2] - 7:5, 7:16
hanging [1] - 10:8
hear [2] - 3:21, 6:8
heard [2] - 3:20
HEARING [1] - 1:15
help [4] - 14:1, 14:7, 15:2, 15:19
helpful [6] - 8:15, 8:16, 11:24, 12:4, 15:15, 16:9
helps [1] - 15:19
Hernandez [1] - 3:4
HERNANDEZ [1] - 1:17
higher [1] - 14:12
highlight [1] - 13:5
hold [2] - 6:18, 6:19
holiday [1] - 7:2
honestly [1] - 12:6
Honor [18] - 3:18, 5:9, 5:22, 6:14, 7:11, 7:22, 7:25, 8:7, 10:6, 10:7, 11:2, 11:22, 12:20, 15:3, 15:24, 16:8, 16:22, 16:23
HONORABLE [1] - 1:17
hopefully [1] - 7:4
hopes [1] - 4:21
huge [1] - 4:14

**I**

identified [1] - 10:9
identify [1] - 3:7
ignore [1] - 13:15
implicate [1] - 10:22
IN [1] - 1:1
INC [2] - 1:3, 1:6
including [2] - 5:20, 11:14
indiscernible) [1] - 3:17
individual [1] - 9:14
inefficient [1] - 5:14
information [2] - 10:15, 10:16
infringing [1] - 5:18
intent [2] - 4:17, 4:18
invalidity [1] - 5:20
inventions [1] - 10:23
involve [2] - 8:4, 9:8
issue [3] - 10:23, 15:1, 15:14
issued [1] - 13:7
issues [22] - 4:18, 5:16, 5:23, 8:11, 8:17, 10:8, 11:8, 11:10, 11:14, 12:15, 12:16, 12:24, 13:1, 13:2, 13:15, 13:21, 13:23, 14:18, 16:5, 16:7, 16:16
items [1] - 11:10
iterations [1] - 11:25
itself [1] - 5:4

3

## J

**Jason** [2] - 2:9, 3:25
**Jones** [3] - 2:10, 3:15, 3:24
**JUDGE** [1] - 1:18
**Judge** [4] - 3:3, 8:7, 9:8, 9:25
**judgment** [9] - 4:9, 4:21, 8:9, 8:10, 10:10, 10:21, 12:10, 13:6, 13:19
**June** [4] - 7:5, 7:7, 7:8, 7:9
**juries** [1] - 5:16
**jury** [2] - 6:5, 8:25

## K

**Kassim** [2] - 2:5, 3:13
**keep** [4] - 9:2, 13:24, 15:17, 15:20
**keeping** [1] - 6:4
**kind** [9] - 4:5, 8:15, 9:3, 10:17, 11:23, 13:4, 13:9, 15:1, 16:16
**Klarquist** [2] - 2:13, 4:1
**knob** [2] - 8:17, 10:24
**knows** [1] - 11:7

## L

**laid** [1] - 12:1
**largely** [4] - 8:8, 8:11, 11:4, 11:10
**last** [1] - 5:5
**leave** [1] - 15:16
**leaves** [1] - 10:2
**LEUPOLD** [1] - 1:3
**Leupold** [2] - 3:3, 9:16
**LIGHTFORCE** [1] - 1:6
**likely** [2] - 5:3, 11:15
**litigants** [2] - 9:18, 10:15
**litigate** [1] - 9:21
**litigated** [1] - 8:23
**litigation** [1] - 13:17
**lives** [1] - 9:19
**LLP** [3] - 2:2, 2:6, 2:13
**locking** [1] - 8:17
**look** [2] - 7:10, 9:3
**looked** [1] - 9:13
**looking** [5] - 5:2, 6:12, 6:22, 9:3, 14:4
**looks** [1] - 6:24
**lost** [2] - 14:12, 14:14
**low** [2] - 14:11, 14:24
**lower** [1] - 14:24

## M

**march** [1] - 13:9
**marching** [1] - 15:21
**MARCO** [1] - 1:17
**market** [1] - 5:24
**Mary** [2] - 2:9, 3:23
**master** [1] - 15:13
**matter** [1] - 3:2
**mean** [1] - 11:4
**mediation** [1] - 8:7

**mediator** [1] - 10:1
**meet** [2] - 13:11, 15:7
**Memorial** [1] - 6:24
**mentioned** [1] - 5:22
**Middleton** [1] - 2:11
**might** [7] - 8:20, 10:1, 10:7, 12:22, 14:5, 15:11, 15:18
**mind** [3] - 6:11, 9:2, 13:24
**mistake** [1] - 4:12
**moment** [1] - 15:17
**Monday** [1] - 7:3
**months** [1] - 11:11
**morning** [4] - 3:2, 3:10, 3:18, 7:20
**motion** [1] - 10:21
**motions** [4] - 4:9, 4:22, 12:10, 13:19
**move** [3] - 14:1, 14:5, 15:19
**moving** [1] - 8:15
**MR** [37] - 3:10, 3:12, 3:13, 3:15, 3:18, 3:25, 4:1, 5:9, 6:10, 6:14, 6:17, 7:11, 7:13, 7:22, 7:25, 8:7, 8:16, 9:7, 10:4, 10:19, 11:2, 11:22, 12:8, 12:17, 12:20, 13:3, 13:11, 14:6, 14:23, 15:3, 15:24, 16:2, 16:5, 16:8, 16:11, 16:22, 16:23
**MS** [1] - 3:23
**multiple** [2] - 5:17, 8:4

## N

**Nancy** [1] - 17:11
**nancy** [1] - 2:16
**NANCY** [1] - 17:12
**narrowing** [1] - 16:16
**Nathan** [3] - 2:5, 3:12, 15:25
**nature** [1] - 12:3, 15:5
**nearly** [1] - 14:17
**need** [9] - 8:11, 8:22, 12:16, 12:22, 13:5, 13:17, 13:21, 16:4, 16:16
**negotiations** [1] - 9:3
**new** [1] - 11:12
**next** [1] - 8:23
**NIGHTFORCE** [2] - 1:7, 1:7
**Nightforce** [2] - 3:3, 9:15, 14:13
**Ninth** [1] - 2:6
**note** [2] - 3:6, 14:13
**number** [3] - 5:19, 10:14, 11:14
**numbers** [5] - 14:10, 14:17, 14:23, 14:24

## O

**object** [1] - 11:12
**obviously** [1] - 8:3
**occurred** [1] - 4:13
**occurs** [1] - 4:18
**October** [1] - 1:5
**OF** [2] - 1:2, 1:16
**Official** [1] - 17:13
**oftentimes** [1] - 11:23
**old** [1] - 10:22
**once** [2] - 16:15, 16:20

**One** [1] - 2:14
**one** [11] - 4:8, 4:10, 4:14, 5:12, 6:5, 10:20, 11:25, 13:15, 14:7, 14:13, 14:18
**ones** [1] - 13:9
**oOo** [1] - 17:1
**open** [3] - 6:15, 7:13, 10:8
**opinion** [5] - 10:9, 13:7, 14:15, 15:11, 15:14
**opportunities** [1] - 10:11
**opposed** [1] - 4:14
**OPTICS** [1] - 1:7
**options** [1] - 10:4
**OR** [3] - 2:7, 2:15, 2:18
**order** [6] - 10:9, 11:5, 11:24, 13:7, 15:14, 15:18
**orders** [1] - 8:10
**OREGON** [1] - 1:2
**Oregon** [3] - 1:6, 16:6, 17:13
**original** [1] - 17:6
**ought** [1] - 9:3
**own** [1] - 10:2

## P

**package** [1] - 8:18
**packet** [1] - 4:14
**Park** [12] - 2:2, 3:11, 5:9, 6:14, 7:10, 7:21, 8:6, 11:1, 11:18, 12:18, 14:22, 15:22
**PARK** [15] - 3:10, 5:9, 6:14, 7:11, 7:22, 8:7, 8:16, 11:2, 11:22, 12:8, 12:17, 14:23, 15:3, 15:24, 16:22
**part** [2] - 8:16, 8:17
**particular** [3] - 13:18, 15:14, 15:17
**parties** [8] - 4:23, 8:8, 8:22, 11:11, 11:13, 11:25, 14:9, 14:19
**parties'** [1] - 11:6
**partitioning** [1] - 9:14
**past** [1] - 12:8
**patent** [1] - 16:14
**patents** [11] - 5:8, 5:10, 5:13, 5:17, 5:19, 5:20, 6:1, 9:14, 11:9, 13:19, 13:20
**patents-in-suit** [1] - 6:1
**pending** [2] - 8:13, 12:10
**perhaps** [2] - 5:4, 15:4
**perspective** [7] - 9:6, 9:20, 9:25, 11:21, 13:25, 15:23, 16:3
**perspectives** [1] - 9:22
**phone** [1] - 16:18
**pick** [1] - 12:23
**picked** [1] - 12:22
**pieces** [1] - 12:21
**place** [1] - 15:5
**places** [1] - 13:8
**Plaintiff** [1] - 1:4
**plaintiff** [6] - 3:9, 3:10, 3:13, 6:18, 13:12
**PLAINTIFF** [1] - 2:2
**plaintiff's** [1] - 15:7

**plaintiffs** [1] - 5:6
**plan** [1] - 7:1
**point** [3] - 14:7, 14:8, 14:16
**points** [1] - 13:5
**Portland** [4] - 1:6, 2:7, 2:15, 2:18
**potentially** [2] - 9:13, 10:5
**preparation** [1] - 11:6
**present** [1] - 3:6
**presiding** [1] - 3:4
**pretrial** [4] - 7:16, 11:19, 11:23, 12:2
**pretty** [1] - 6:14
**private** [1] - 10:1
**problem** [1] - 4:13
**problematic** [1] - 6:1
**proceed** [2] - 4:17, 4:25
**PROCEEDINGS** [1] - 1:16
**proceedings** [2] - 16:25, 17:5
**profits** [2] - 14:12, 14:14
**proposed** [2] - 12:13, 16:19
**push** [2] - 10:12, 14:16
**put** [1] - 7:19
**putting** [1] - 6:5

## Q

**quickly** [1] - 13:14

## R

**raise** [2] - 14:7, 16:1
**raised** [1] - 15:10
**ramp** [1] - 11:23
**ramp-up** [1] - 11:23
**reach** [3] - 8:19, 10:16, 12:25
**realized** [1] - 4:9
**realizing** [1] - 4:12
**really** [3] - 4:10, 14:3, 14:4
**reasonable** [2] - 14:11, 14:17
**received** [2] - 4:15, 4:16
**record** [2] - 3:8, 17:4
**redundant** [1] - 5:15
**referring** [1] - 10:18
**regarding** [2] - 5:16, 5:24
**regardless** [1] - 11:8
**regards** [1] - 12:21
**relatively** [1] - 14:11
**relevant** [1] - 4:20
**renewed** [1] - 8:12
**reopen** [1] - 11:13
**reopening** [1] - 11:12
**REPORTER** [1] - 2:16
**Reporter** [1] - 17:13
**reporter** [1] - 3:6
**reports** [2] - 11:15, 14:10
**resolution** [5] - 13:8, 13:9, 13:21, 15:15, 15:19
**resolve** [5] - 10:8, 12:16, 13:6, 13:22, 16:14
**resolved** [3] - 4:19, 12:16, 13:23

**rid** [2] - 9:21
**riflescope** [1] - 10:24
**riflescopes** [2] - 5:18, 5:25
**Rives** [2] - 2:2, 2:6
**RMR** [2] - 2:16, 17:12
**Room** [1] - 2:17
**royalty** [2] - 14:11, 14:17
**Rule** [1] - 8:13
**ruling** [2] - 4:16, 8:14
**rulings** [5] - 4:16, 8:9, 8:13, 11:15, 12:2
**run** [3] - 6:23, 7:3, 11:3

## S

**S.C** [1] - 2:10
**sales** [1] - 5:23
**Salmon** [1] - 2:14
**schedule** [4] - 12:5, 12:10, 12:13, 16:19
**scheduled** [1] - 11:20
**schedules** [1] - 12:9
**scheduling** [6] - 5:1, 11:5, 11:18, 11:24, 12:15, 12:16
**Schwabe** [1] - 15:4
**scope** [1] - 6:11
**Scott** [3] - 2:12, 3:18, 16:11
**Seattle** [1] - 2:4
**second** [2] - 6:25, 7:16
**see** [6] - 8:20, 12:25, 13:12, 15:5, 15:18, 16:6
**seem** [1] - 6:11
**selecting** [1] - 4:6
**sense** [7] - 5:3, 8:20, 9:19, 9:23, 9:24, 12:19, 13:3
**separate** [1] - 6:2
**set** [4] - 3:4, 12:15, 13:1, 16:18
**settled** [1] - 8:11
**settlement** [9] - 8:12, 9:7, 9:12, 9:13, 10:13, 14:1, 14:7, 14:17, 15:2
**settling** [2] - 8:5, 9:16
**seven** [1] - 4:11
**share** [1] - 5:24
**side** [2] - 12:25, 14:4
**side's** [1] - 8:10
**sides** [1] - 12:12
**SIEGEL** [1] - 4:1
**Siegel** [2] - 2:13, 4:1
**signature** [3] - 17:6, 17:7
**signed** [1] - 17:7
**signing** [1] - 17:3
**simplify** [2] - 10:7, 10:11
**simply** [2] - 10:15, 13:9
**small** [2] - 9:15, 14:18
**sooner** [1] - 4:12
**sorry** [2] - 3:23, 16:11
**sound** [1] - 5:7
**Sparkman** [1] - 2:13
**SPEAKER** [1] - 3:17
**speaking** [4] - 3:21, 3:22, 7:13, 16:10
**special** [1] - 15:13

**spend** [1] - 13:13
**spending** [1] - 14:19
**spiral** [1] - 10:23
**standard** [1] - 11:23
**start** [3] - 4:6, 7:1, 16:16
**starting** [2] - 3:9, 6:23
**STATES** [2] - 1:1, 1:18
**States** [1] - 2:17
**status** [1] - 3:4
**STEVENS** [1] - 1:3
**stipulation** [1] - 12:1
**Stoel** [2] - 2:2, 2:6
**Street** [2] - 2:3, 2:14
**submit** [2] - 12:23, 16:19
**submitted** [1] - 12:1
**subpieces** [1] - 9:16
**subsequent** [2] - 7:2, 7:5
**suggested** [1] - 5:8
**suit** [1] - 6:1
**Suite** [4] - 2:3, 2:7, 2:11, 2:15
**summary** [9] - 4:9, 4:21, 8:9, 8:10, 10:10, 10:21, 12:9, 13:6, 13:19

## T

**team** [3] - 8:19, 15:6, 15:7
**TELEPHONIC** [1] - 1:15
**terms** [1] - 6:10
**THE** [39] - 1:1, 1:2, 1:17, 2:2, 2:8, 3:2, 3:14, 3:20, 4:3, 6:3, 6:12, 6:16, 6:19, 6:21, 6:22, 7:12, 7:15, 7:18, 7:19, 7:23, 8:1, 8:14, 8:22, 9:17, 10:14, 10:25, 11:18, 12:5, 12:11, 12:18, 12:21, 13:4, 13:13, 14:21, 14:25, 15:8, 16:3, 16:10, 16:12
**theory** [3] - 14:11, 14:12, 14:14
**thinking** [1] - 5:5
**third** [1] - 11:13
**Third** [1] - 2:17
**thoughts** [1] - 11:1
**three** [1] - 8:25
**timing** [1] - 6:10
**titled** [1] - 17:5
**today** [1] - 16:21
**Todd** [2] - 2:13, 4:1
**together** [3] - 4:24, 6:5, 9:15
**top** [1] - 13:6
**touch** [2] - 5:19, 5:20
**toward** [1] - 10:13
**towards** [5] - 4:22, 11:6, 14:16, 15:2, 15:19
**Trade** [1] - 2:14
**TRANSCRIPT** [1] - 1:16
**transcript** [2] - 17:4, 17:6
**treating** [1] - 4:10
**trial** [18] - 4:7, 4:17, 4:18, 4:20, 4:24, 4:25, 5:3, 5:5, 5:7, 5:11, 6:12, 6:23, 7:15, 11:6, 11:20, 11:23, 13:15, 13:23
**trials** [4] - 5:1, 6:2, 8:5, 9:1

**trying** [2] - 5:4, 16:14
**turn** [1] - 5:6
**turned** [1] - 10:23
**turret** [1] - 8:17
**two** [4] - 5:8, 5:10, 5:13, 8:25

## U

**under** [2] - 14:11, 14:12
**understood** [2] - 12:17
**UNIDENTIFIED** [1] - 3:17
**United** [1] - 2:17
**UNITED** [2] - 1:1, 1:18
**University** [1] - 2:3
**up** [11] - 4:15, 5:12, 7:7, 10:23, 11:11, 11:23, 12:12, 12:22, 12:23, 15:16, 16:18
**update** [1] - 4:5
**USA** [2] - 1:6, 1:8
**USC** [1] - 4:19
**useful** [2] - 10:5, 12:22
**uses** [1] - 11:23

## V

**various** [1] - 12:2
**versus** [1] - 3:3
**viable** [1] - 14:14
**view** [4] - 8:9, 8:10, 11:4, 14:15
**visiting** [1] - 16:20
**volleys** [1] - 9:8
**vs** [1] - 1:5

## W

**WA** [1] - 2:4
**waiting** [1] - 8:8
**WALKER** [1] - 17:12
**Walker** [2] - 2:16, 17:11
**week** [3] - 7:2, 7:9
**WI** [1] - 2:11
**wide** [1] - 6:15
**willing** [1] - 10:6
**woman** [1] - 3:21
**World** [1] - 2:14
**worth** [1] - 14:19

## Y

**year** [1] - 4:22
**years** [1] - 8:23
**yourself** [1] - 3:7
**yourselves** [1] - 15:18