Kassim M. Ferris, OSB No. 965260
Nathan C. Brunette, OSB No. 090913
STOEL RIVES LLP
760 S.W. Ninth Ave., Suite 3000
Portland, OR  97205
Telephone: (503) 224-3380
Facsimile:  (503) 220-2480

Brian C. Park (*pro hac vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101-4109
Telephone: (206) 386-7542
Facsimile:  (206) 386-7500

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LEUPOLD & STEVENS, INC.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>    v.<br><br>LIGHTFORCE USA, INC. d/b/a NIGHTFORCE OPTICS and NIGHTFORCE USA,<br><br>    Defendant/Counterclaimant. | No. 3:16-cv-1570-HZ<br><br>**PLAINTIFF LEUPOLD & STEVENS, INC.'S RESPONSE BRIEF RE CONSTRUCTION OF '907 PATENT PHRASE "*A MANUALLY ADJUSTABLE FOCUS CONTROL DEVICE PROJECTING OUTWARDLY FROM THE EXTERIOR OF THE HOUSING*"** |

The Court permitted the parties to brief at this time, ECF # 192, ECF # 193 (Tr. at 11-14), a single claim construction issue: whether Claim 10's language **"a manually adjustable focus control device projecting outwardly from the exterior of the housing"** requires that "the actuator slide must be located entirely outside of the housing." ECF # 180 at 13. The answer is: **No**.[1]

**A.      The Plain Meaning of the Disputed Language of Claim 10 Defines a Direction the Focus Control Device Must Project, but It Does Not Preclude Components of the Focus Control Device from Also Being Inside the Housing.**

Nightforce asserts that Leupold's proposed construction would improperly "read[] … out of the claims" the word "from" in the claim language "a manually adjustable focus control device projecting outwardly from the exterior of the housing." ECF # 194 at 2, 10. That assertion is inaccurate. The word "from" has meaning in the context of the broader phrase "projecting outwardly from the exterior of the housing in a direction transverse to the longitudinal axis" — it indicates *a direction* in which the "focus control device" must project. The phrase "projecting outwardly from the exterior of the housing in a direction transverse to the longitudinal axis" uses "outwardly from" to describe *the direction* of projection of the knob, as reflected in the subsequent claim language further describing the direction of projection: outwardly from the exterior of the housing "*in a direction* transverse to the longitudinal axis" (emphasis added).

Nightforce changes the plain and ordinary meaning of the claim language, by asserting that the preposition "from" somehow precludes any part of the "focus control device" from existing anywhere further inward than the exterior of the housing. Such a quizzical construction is erroneous because Claim 10 of the '907 patent uses the transition word "comprising," a term of art (like "including") that "is non-restrictive terminology that neither 'foreclose[s] additional elements that need not satisfy the stated limitations,' nor requires 'additional, unspecified elements.'" ECF # 180 (MSJ Opinion & Order) at 37 (citations omitted); *see also* ECF # 195 at 3-

---

[1] Contrary to the Court's direction, Nightforce also briefed a second claim construction issue, as to the meaning of the claim language "the spiral cam track spiraling outwardly from the axis of rotation." ECF # 194 at 8-10. Leupold disagrees with Nightforce's arguments as to this term as well but, consistent with the Court's direction, will address this issue in its pre-trial filings and reserves the right to respond to Nightforce's premature and unauthorized arguments about this second term then.

5 (citing and discussing additional cases). For example, just as a smoke ventilation system *comprising* a <u>chimney projecting outwardly from a roof</u> does not preclude chimney parts from <u>also projecting inwardly</u> from the roof to connect to a fireplace or stove, here, the claim language here *requires* only that at least some part of the focus control device projects outwardly from the exterior of the housing. <u>The language does **not** in any way preclude elements of the focus control device from being located elsewhere, such as further inward, inside the housing.</u> *See* ECF # 195 (Leupold Opening Br.) at 2-5; ECF # 197-1 (Byron Rpt.) ¶ 5. For this reason alone, Nightforce's proposed construction should be rejected and Leupold's common sense construction adopted.

B.  **Nightforce's Arguments Do Not Support Adoption of a Legally Erroneous Construction Contrary to the Plain Meaning and the Teachings of the Specification.**

Nightforce's strained re-writing of the claim language rests on a fundamental error in claim construction methodology. Rather than starting from the invention described in the claims and the specification (the intrinsic evidence), Nightforce starts from a definition of the common preposition "from," selected from a general purpose dictionary, to re-write the claim language contrary to the teaching of the specification.[2] Nightforce's selection and application of dictionaries is legal error. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (allowing use of dictionary evidence "as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence"); *Lexington Luminance LLC v. Amazon.com Inc.*, 601 F. App'x 963, 970 (Fed. Cir. 2015) (vacating noninfringement order for "adopting a construction based on general-purpose dictionaries that is inconsistent with the intrinsic record").[3]

---

[2] For instance, Webster's Third also defines "fromward," closer to the claim phrase "outwardly from," as simply "away." ECF # 190-2. From the MacMillan Dictionary, Nightforce picked one out of 15 definitions of "from"—selecting a definition illustrated by the following examples: "He's on the 3 o'clock flight from Chicago" and "Start from that tree over there and run to the house." Such usage of "from" is not controlling or persuasive here, given the inconsistency of Nightforce's construction with the specification, figures, and claim language ("projecting outwardly from … in a direction").

[3] Nightforce's discussion comparing its accused products to the features of the allegedly prior art Weatherby device is legally irrelevant to claim construction, which turns on the intrinsic evidence from the '907 Patent itself, and as necessary extrinsic evidence of the meaning of the terms used in the '907 Patent to a person of ordinary skill in the art ("POSA"). ECF # 69 at 3-5. There is no need to consider Weatherby at all in construing Claim 10 of the '907 Patent, and certainly no need to contort the meaning

(continued . . .)

Here Nightforce's erroneous methodology leads it to propose a construction that would read out the single preferred embodiment discussed and illustrated in the specification and figures 1-6 of the '907 Patent. *See* '907 Patent at 4:30-46; ECF # 197-1 ¶ 11 (Figs. 1-6 show a single embodiment). As shown at right (*see also* ECF # 197-1 ¶¶ 6-7), the actuator (126) in the preferred embodiment depicted in Figs. 1-6 of the '907 Patent is located partially inside (left of the red line) and partially outside (right of the red line) the exterior of the housing. As such, the sole preferred embodiment would not satisfy the claim language under Nightforce's strained construction, proving that construction to be legally improper. *See* ECF # 69 at 11 ("Adopting Defendant's construction would improperly limit the claims such that they would exclude the preferred embodiments."); ECF # 195 at 5-7 (citing additional cases).[4]



FIG. 5

---

of Claim 10. While comparing the '907 Patent to Nightforce's alleged prior art is an issue for another day, the Weatherby reference undisputedly lacks '907 Patent, Claim 10's pivoting erector assembly.

[4] Nothing in the two cases Nightforce cites, ECF # 194 at 6, 10, undermines this blackletter principle of claim construction. Nightforce's reliance on *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), is misplaced. *Mentor* concerns whether an originally filed patent claim can provide written description support for a claimed feature described nowhere else in the patent specification, *id.* at 1296-97, and has nothing to do with construing claims to exclude the preferred embodiment. *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324 (Fed. Cir. 2013) is an example of the extremely rare facts necessary to justify interpreting patent claim language to exclude the preferred embodiment. In *Bayer*, the Federal Circuit noted that Bayer, the patent owner, got ahead of its own science in filing the patent application, anticipating in draft claim language the expected basis for an enzymatic reaction *its scientists did not yet fully understand. Id.* at 1326-27. However, Bayer did not revise the claim language when it later became clear that the reaction worked differently than as described in the original claim language. As such, the claim language as written (based on an
(continued . . .)

Nightforce also asserts that its construction is somehow supported by the separate claim language requiring the actuator slide to be slidably mounted "to" the housing. ECF # 194 at 4. The Court has held that this claim language is <u>not</u> limited to exemplary embodiments (*e.g.,* ECF # 69 at 11-12; ECF # 180 at 12-14) *and* that this claim language does <u>not</u> require an actuator mounted *directly* to the housing (ECF # 180 at 14). Nothing in the claim language differentiates whether the actuator is slidably mounted (directly or indirectly) to the ***interior or exterior*** of the housing.

Likewise, Nightforce's reliance on a single statement in the specification as to the location of the actuator (*see* ECF # 194 at 5 (block quoting '907 Patent at 3:27-36)) is misplaced. That statement is properly read as describing an invention embodiment, consistent with Fig. 5 and with Leupold's proposed construction. The Court has recognized that claim language cannot be narrowed by statements in the specification <u>in the absence of express "clear and unmistakable" disavowal</u>. ECF # 69 at 14 (quoting *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fec. Cir. 2014)).[5] The passage Nightforce quotes from the specification does not amount to such a clear and unmistakable disavowal of claim scope, since it merely describes the *sole invention embodiment*, as illustrated, which would be **excluded** by Nightforce's proposed construction.[6]

Further, Nightforce's interpretation of the quoted section from the specification ('907 Patent at 3:27-36) is moot, since (1) the specification describing an invention embodiment in which

---

incorrect assumption) excluded all functional enzymes, including the preferred embodiment. While the Federal Circuit noted that construing the claim language to exclude the preferred embodiment is strongly disfavored, it was necessary to do so given the unmistakably clear claim language in that unique context. *Id.* at 1332 (while such a result is disfavored "skilled artisans would readily understand the explanation here, namely Bayer's initial mistaken belief about its enzyme's properties and then its insistence on retaining claim language reflecting that belief even after it was known to be false").

[5] *See also Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (holding no disavowal of claim scope absent "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope" (internal quotation marks and citation omitted)); *see generally* 1 Robert A. Matthews, Jr., *Annotated Patent Digest* § 5:60, Westlaw "Cases refusing to find a disclaimer of claim scope" (database updated Dec. 2019).

[6] The figures showing the preferred embodiment are ***consistent*** with the specification text Nightforce quotes (the actuator in Fig. 5 is between the cam hub and part of the housing), but are ***inconsistent*** with Nightforce's proposed construction (parts of the actuator in Fig. 5 are located further inward than the exterior of the housing, as shown above). Thus, the quoted specification text, even if somehow deemed to modify and narrow the broader claim language, does not support Nightforce's construction.

the cam hub is "mounted to the housing" with a component (the drive hub) facing inward does <u>not</u> require that the cam hub be (entirely or partially) outside the housing, as opposed to just mounted to it; and (2) the location of the actuator alone does not define the location of the entire focus control device, which may include more components than just the actuator slide and cam hub.

Finally, Nightforce suggests that Leupold is somehow giving inconsistent meanings to the generic preposition "from" in different parts of Claim 10 of the '907 Patent. ECF # 194 at 1, 8, 10. Although the meaning of "from" is context-dependent and may vary in a patent claim, here Leupold gives **consistent** meaning to "from" in both contexts Nightforce highlights. "From" is used by the claim language to define **<u>a direction</u>**: projecting in a direction away from (or spiraling in a direction away from) a defined location. *See* ECF # 195 at 2-3, 7 n.3; ECF # 197 ¶¶ 5, 9-14.[7] In the context of the "projecting" limitation, the claim language requires only that *some part* of the focus control device projects in a direction "outwardly from the exterior of the housing." Nothing in the claim language prevents other components of the focus control device from being located inward of the housing just like the actuator of the preferred embodiment. *See* ECF # 197-1 ¶¶ 6-7.

## C.    CONCLUSION

As stated in Leupold's opening brief, ECF # 195 at 7-9, Nightforce has waived the opportunity to argue noninfringement based on the currently disputed claim language by its prior admissions. In any event, Claim 10 of the '907 Patent does not require that "the actuator slide must be located entirely outside of the housing." *See* ECF # 180 at 13. Nightforce's construction should be rejected in favor of the plain and ordinary meaning: the focus control device (knob), which includes the cam hub and actuator slide, projects outwardly from the exterior of the housing. Nothing prevents such an outwardly projecting structure from also having interior parts.

---

[7] The remaining two cases Nightforce cites, ECF # 194 at 10, provide no support for its position. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (holding preamble of patent claim constituted claim limitation in context because preamble language was necessary to give life and meaning to later claim structure identified only in the preamble); *Scripps Research Inst. v. Illumina, Inc.*, 782 F. App'x 1018, 1023 (Fed. Cir. 2019) (nonprecedential) (in context of invention, POSA would understand variables in formula term $(X_n)_a$ to have the same meaning throughout patent claims).

PLAINTIFF'S RESPONSE BRIEF RE ADDITIONAL CLAIM CONSTRUCTION — 5

DATED this 26th day of December, 2019.

Respectfully submitted,
STOEL RIVES LLP
*/s/ Nathan C. Brunette*
Kassim M. Ferris, OSB No. 965260
Nathan C. Brunette, OSB No. 090913
760 S.W. Ninth Ave., Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
*kassim.ferris@stoel.com*
*nathan.brunette@stoel.com*

Brian C. Park (*pro hac vice*)
600 University Street, Suite 3600
Seattle, WA 98101-4109
Telephone: (206) 386-7542
Facsimile: (206) 386-7500
*brian.park@stoel.com*

Attorneys for Leupold & Stevens, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed today with the Clerk of the Court using the Court's CM/ECF system, which will send notification and serve such filing to all counsel for the parties who have appeared in this case:

David A. Casimir, Ph.D.
Casimir Jones, S.C.
2275 Deming Way, Suite 310
Middleton, WI  53562

Scott E. Davis
Todd M. Siegel
J. Christopher Carraway
Klarquist Sparkman, LLP
One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, OR  97204

    Attorneys for Defendants

DATED:  December 26, 2019.

    STOEL RIVES LLP

    */s/ Nathan C. Brunette*
    NATHAN C. BRUNETTE
    OSB No. 090913
    Telephone: (503) 224-3380

    Attorneys for Plaintiff/Counterclaim-Defendant
    LEUPOLD & STEVENS, INC.