1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF OREGON

3
   LEUPOLD & STEVENS, INC.,          )
4                                    )
                Plaintiff,           ) No. 3:16-cv-01570-HZ
5                                    )
        vs.                          ) January 27, 2020
6                                    )
   LIGHTFORCE USA, INC. d/b/a        ) Portland, Oregon
7  NIGHTFORCE OPTICS and             )
   NIGHTFORCE USA,                   )
8                                    )
                Defendant.           )
9  ---------------------------------

10

11

12

13

14

15                      **TELEPHONIC HEARING**

16                   TRANSCRIPT OF PROCEEDINGS

17          BEFORE THE HONORABLE MARCO A. HERNANDEZ

18            UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

1                            APPEARANCES

2    FOR THE PLAINTIFF:     Brian C. Park
                            Stoel Rives LLP
3                           600 University Street
                            Suite 3600
4                           Seattle, WA  98101

5                           Nathan C. Brunette
                            Kassim M. Ferris
6                           Stoel Rives LLP
                            760 S. W. Ninth Avenue
7                           Suite 3000
                            Portland, OR  97205

8
     FOR THE DEFENDANT:     David A. Casimir
9                           Casimir Jones S.C.
                            2275 Deming Way
10                          Suite 310
                            Middleton, WI  53562

11
                            Scott E. Davis
12                          Klarquist Sparkman, LLP
                            One World Trade Center
13                          121 S. W. Salmon Street
                            Suite 1600
14                          Portland, OR  97204

15   COURT REPORTER:        Nancy M. Walker, CSR, RMR, CRR
                            United States District Courthouse
16                          1000 S. W. Third Avenue, Room 301
                            Portland, OR  97204
17                          (503) 326-8186

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2       THE CLERK:  Good morning, Counsel.

3       Your Honor, we are here today for a discovery hearing

4  in the matter of Leupold & Stevens, Inc. versus Lightforce

5  USA, Inc., Civil Case No. 16-cv-1570.

6       Beginning with plaintiff's counsel, please state your

7  appearances for the record.  Thank you.

8       MR. PARK:  Brian Park for Leupold & Stevens.

9       MR. FERRIS:  Kassim Ferris for Leupold & Stevens.

10       MR. BRUNETTE:  Nathan Brunette for Leupold & Stevens.

11       MR. DAVIS:  Scott Davis for defendant.

12       MR. CASIMIR:  And David Casimir for Defendant

13  Nightforce.

14       THE COURT:  Good morning.  This is Judge Hernandez.

15       I received your e-mail strings, including the one

16  that was sent just this morning -- I don't know, maybe a

17  half-hour ago or so.

18       So let's visit for a minute about the issues here.

19  I'm going to first turn to the initial e-mail that I got.  I

20  believe it came from Nightforce, and it was talking about

21  adding an 11th deposition for a Mr. Lazzeroni in Tucson.

22       Then I guess related to that are two other

23  depositions that Leupold is concerned with, and that has to do

24  with -- their names escape me right now.  Cromwell is one.

25       Excuse me.  Johnson and Stockdill are -- those are

1   the other two that I want to talk about, and I guess we can

2   also talk about Mr. Cromwell as well.

3            So let me first turn to Nightforce.  It looks like

4   we started with an issue involving Mr. Lazzeroni.  And like

5   everything in this case, it seems to have blossomed into other

6   areas.

7            Is there anything else, other than what you told me

8   about Mr. Lazzeroni, that you want to tell me right now?

9            MR. DAVIS:  Your Honor, this is Scott Davis for

10  defendants.

11           Just briefly, we'd like to make note that that's

12  potentially the most important evidence to the defendant in

13  this case.  And it wasn't for lack of diligence or trying that

14  it wasn't located and found out earlier that Mr. Lazzeroni has

15  key evidence of the key scope that has been at issue in the

16  case between these parties since 2006.

17           THE COURT:  Thank you.

18           What about from plaintiff's perspective?

19           MR. BRUNETTE:  Your Honor, from plaintiff's

20  perspective, the issues with respect to Mr. Lazzeroni are, in

21  part, tied up with the same issues with respect to

22  Mr. Cromwell, which is to say our primary concern is that

23  since the last case management conference, Nightforce has

24  taken the position that it has free license to take whatever

25  fact discovery it likes and however much of it likes up until

the day before trial and has continued to do so, serving new document productions, new subpoenas on third parties, coming forward with new riflescopes, and even recently indicating that there may be yet more -- further expert reports coming.

We're very concerned about the parties' ability and our ability, in particular, to prepare for trial while Nightforce is shifting its position in this regard.  We initially tried to work with Nightforce to work something out, made a proposal that Nightforce rejected; and now Nightforce has gone even further with additional new sets of supplemental discovery responses, a new third-party declaration and other things.

And, Your Honor, turning specifically to the point that Mr. Davis just made, there is a lack of diligence issue. Mr. Cromwell has been known to Nightforce since May of 2018. He was indicated in Nightforce's supplemental initial disclosures as a potential witness at that time.  Nightforce, for whatever reason, did not elect to take his deposition or pursue him for discovery at that time.  It was allowed to sit for nearly two years, and Nightforce now contends that they got information from Mr. Cromwell that made Mr. Lazzeroni relevant.

But this is all discovery that should have been taken during the fact discovery phase of this case.  And we have heard no explanation of why it was not, why it could not have

1   been, or why it needs to be done now, at the eleventh hour,

2   when the parties are trying to prepare for trial on the

3   theories already in the case.

4           THE COURT:  Thank you.

5           THE COURT REPORTER:  Counsel, this is the court

6   reporter.  You did not identify yourself.

7           MR. BRUNETTE:  I apologize.  This is Mr. Brunette.

8           THE COURT:  As regards Mr. Lazzeroni, I'm going to

9   order that he be allowed to be subpoenaed and deposed; and

10  I'll leave it to the parties to work out the specific

11  arrangements.

12          Let's now turn to Mr. Cromwell.  And, again, I don't

13  know.  Is it Mr. Davis that's been responding to these issues

14  or Mr. Casimir?  But please identify yourself.

15          So let's talk about Cromwell.  And it is a good

16  question.  Why is it taking so long to get around to Cromwell?

17          MR. DAVIS:  Yes, Your Honor, Scott Davis for

18  defendant.

19          Mr. Cromwell certainly was disclosed in 2018 by

20  Nightforce as potentially having relevant information.  He's

21  the former president of Schmidt & Bender, Inc., which is the

22  U.S. operation for Schmidt & Bender.  He was interviewed early

23  in the case, and we were led to believe that he did not have

24  any information of relevance anymore.

25          Once he gave up his position and the business of

1   Smith & Bender, Inc., which has since moved to Georgia under

2   new management, he -- he had informed us that he had returned

3   all of his materials to Schmidt & Bender in Germany and he

4   didn't have anything more.

5           And as it is with third parties, there's no control

6   over them.  But sometimes with persistence, it can pay off.

7   And we -- maybe it's just a function of asking in a different

8   way or on a different day.  But at the end of last year, he

9   was finally able to locate the records -- very few records,

10  but one of which was in the e-mail to the Court, which

11  literally was provided to us on December 31st of 2019 for the

12  first time, indicating that the key scope had been shipped to

13  Mr. Lazzeroni in Tucson, Arizona, in 1997.

14          So, you know, it's a function of old records that

15  were very, very old; and finally the third party was able to

16  locate something for us.  And we certainly wish he had found

17  it earlier.  There's no reason that we wanted to hold out and

18  not have this evidence until this point in time.  This is key

19  evidence that Nightforce would have liked to have had from

20  Day 1 of the '907 patent being in the case.

21          THE COURT:  Thank you.

22          Mr. Brunette, do you have anything else on

23  Mr. Cromwell?

24          MR. BRUNETTE:  Your Honor, I think it is exactly as

25  I previously mentioned, which is to say that Nightforce, for

1   whatever reason, elected not to pursue formal discovery as to

2   Mr. Cromwell back during the actual fact discovery phase of

3   this case and could have done so.

4          Nightforce has represented to this Court, in its

5   joint submission before the last telephone conference, that it

6   was done taking discovery, apart from following up on an

7   outstanding subpoena to U.S. Customs, and yet now is taking

8   more third-party discovery and continuing to turn over new

9   documents and new theories in the case.

10         And we're not at all sure that this evidence is going

11  to be relevant.  It is not nearly as conclusive as Mr. Davis's

12  e-mail to the Court makes it seem, that there is any relevance

13  to any of this.  And we have a lot of work to do to prepare

14  for trial imminently.

15         THE COURT:  Okay.  Thank you.

16         Mr. Cromwell -- I'm going to go ahead and allow

17  Mr. Cromell's deposition.

18         Let's move on and talk about the other two

19  individuals that were noted in, I think, the e-mail from

20  Leupold, and that's Mr. Stockdill and Mr. Johnson.

21         And, as I recall, they were originally hybrid

22  witnesses that were going to be talking about particular areas

23  as regards their expert testimony; and, from Leupold's

24  perspective, those areas have expanded.  That's my

25  understanding.

1          And I'll turn first to you, Mr. Brunette.  What do

2    you want to tell me about these two fellows?

3          MR. BRUNETTE:  Your Honor, I think you've got that

4    exactly right.  These are individuals who are both employees

5    of Nightforce, who were deposed in their fact witness capacity

6    previously.

7          We were given, on August 10th of 2018, an initial set

8    of fairly broad and vague disclosures about what their expert

9    testimony was going to be.  Your Honor previously ruled on a

10   motion to compel regarding privilege waiver as to these

11   individuals.  And shortly after that ruling, we were given, by

12   counsel for Nightforce, a new set of disclosures that much

13   more strictly limited the testimony of these two witnesses.

14   Specifically, with respect to Mr. Johnson, he was limited to

15   only one issue he was going to talk about; and Mr. Stockdill

16   was limited to four relatively narrow topics.

17         Virtually on the eve of their scheduled depositions

18   earlier this month, we received, in an evening production, a

19   surprise set of new supplemental designations designating them

20   on a variety of new topics which, from our perspective, were

21   issues that are not in any way newly discovered by Nightforce

22   but could have been addressed a long time ago and had not

23   been.

24         We believe these disclosures are untimely and that

25   the Court should enforce the scope of Nightforce's

1    December 12th, 2018 disclosure on the substance of these

2    witnesses' testimony.

3            THE COURT:  And what are the new areas that they're

4    going to be talking about?

5            MR. BRUNETTE:  Your Honor, the December 12, 2018

6    topics, Mr. Johnson was supposed to talk only about the

7    availability and acceptability or superiority of

8    non-infringing alternative designs to the '907 and '305

9    patents, for example.  That's the sole topic that he had at

10   that time.

11           Now there are a whole variety of different invalidity

12   assertions as to the '907 patent, without going through the

13   detail of all of them, opining about various prior art

14   theories and non-prior art theories, some of which other

15   Nightforce experts have addressed and some of which appear to

16   be unique to Mr. Johnson.

17           THE COURT:  All right.  Thank you.

18           And you mentioned Mr. Johnson.  Is the same thing

19   true for the other individual as well, Mr. Stockdill?

20           MR. BRUNETTE:  Mr. Stockdill -- Your Honor, this is

21   Mr. Brunette again.  Mr. Stockdill was also -- in addition to

22   the topic of non-infringing alternatives in the December 12th

23   e-mail, he was also designated to talk about Nightforce's own

24   erectors and assembly process; Nightforce's repair and

25   inspection operations; and, third, Nightforce's side focus

1   parallax adjustment knobs in and before 2000.

2          And now Mr. Stockdill has a similar set of new

3   non-Nightforce prior art invalidity theories that he has been

4   designated to talk about.

5          THE COURT:  Thank you.

6          Mr. Davis, what do you want to tell me?

7          MR. DAVIS:  Thank you, Your Honor.

8          As to both of those witnesses, Mr. Stockdill and

9   Mr. Johnson, the recent disclosure and supplement of their

10   proposed opinion testimony is commensurate in scope with what

11   they were originally designated on in August of 2018.

12          And what we did is we provided a high level of detail

13   in the recent disclosure; and I think it's the additional

14   detail that is, in part, giving Leupold concerns, making it

15   look like it's more testimony or subjects than they had

16   originally been designated to handle, but it really is not.

17   It's actually narrowed and focused on the '907 patent.  There

18   were also disclosures as to the '305 patent, which is out of

19   the case at this point; and, obviously, we don't expect

20   they'll be deposed about that.

21          But to the extent there's new information in the

22   recent disclosure, our view is that it was in direct response

23   to the Court allowing the Weatherby and Zeiss evidence into

24   the case for the '907 patent at the November 21st, 2019

25   conference.  And they are also directly responding -- their

opinions are directly responsive to Mr. Byron's opinions
relating to Weatherby and Zeiss, some of which were disclosed
in his most -- well, not his most recent, but one of his most
recent reports, on October 17 of 2019.

And when Leupold complained about the recent
disclosures being too close to the original deposition dates
for Mr. Johnson and Mr. Stockdill, we readily accommodated
changing their deposition dates to the now-agreed dates next
week --

THE COURT:  Thank you.

MR. DAVIS:  -- so they would have ample opportunity
to prepare.

THE COURT:  Thank you.

As you may have gathered, I am loath to exclude
evidence unless I have to.  And to the extent that I need to
accommodate Leupold in order to allow additional
discovery -- which looks to me like there is some dispute
about the scope and whether it is crossing other lines that I
have previously drawn or not.  It's not clear to me that it
does.  But because I'm loath to exclude evidence as a remedy,
I'm going to allow Johnson and Stockdill as well to be
deposed; and we will adjust the schedule, as needed, in order
to accommodate Leupold's sense that they need more time in
order to adjust to the depositions that are going to take
place.

1          I think those are all of the things that were sent to

2     me originally.  I'm not talking about what was sent to me this

3     morning.

4          From the defendant's perspective, am I correct about

5     that?

6          MR. DAVIS:  Yes, Your Honor, excluding what came in

7     this morning.

8          THE COURT:  Okay.  Thank you.

9          And from plaintiff's perspective, have I wrapped up

10    everything except for what came in this morning?

11         MR. BRUNETTE:  Your Honor, from our perspective, I

12    think we have two outstanding questions, one of which is

13    where do we stand on the *Daubert* briefing schedule, which we

14    think will need to be adjusted, as indicated in our e-mail.  I

15    think the Court may have implicitly indicated that that would

16    be acceptable, but I wanted to ask about that.

17         And, in addition, what is the Court's position on

18    fact discovery going forward, other than the specific items

19    that were just listed?  And should the parties assume that

20    fact discovery on all other issues is currently closed?

21         THE COURT:  Let's take them one at a time.

22         I'm willing to adopt the dates that you gave me from

23    Leupold's perspective.  Is there anything else I need to do

24    regarding adjusting deadlines?

25         MR. BRUNETTE:  Not at this time, Your Honor, although

1    the parties are still working on one expert deposition that

2    may be rescheduled.  And depending on where that goes, the

3    parties may have a further request about the *Daubert* briefing

4    schedule.

5            THE COURT:  Okay.  And then, secondly --

6            MR. DAVIS:  Your Honor --

7            THE COURT:  Yes, sir.

8            MR. DAVIS:  Your Honor, this is Scott Davis for

9    defendant.

10           On the schedule, now that we've sort of moved on to

11    the issues raised this morning, I think there are new issues

12    since the e-mails went in last week that could affect the

13    schedule.  We certainly don't object to the extension of the

14    expert motion briefing, an extension of it, but as proposed by

15    Leupold, I don't think that's going to be enough time.

16           We just found out this morning that it's unlikely

17    Leupold will be able to present this expert witness,

18    Mr. Byron, for his deposition before mid February.  And, in

19    fact, it sounds like he's planning to prepare another report

20    responding to whatever Mr. Johnson and Mr. Stockdill say in

21    their depositions.  So as a practical matter, I don't think

22    we'll even have the deposition of Mr. Byron done until the end

23    of February; and we would need a reasonable time after that to

24    prepare expert motions.

25           So big picture, it seems like the schedule, in

Nightforce's view, is somewhat in jeopardy for pretrial
preparation and even the trial date at this point in time, to
be able to get everything done in an orderly way.

Also, as noted in the e-mail this morning, we
received a new witness disclosure that Leupold apparently may
or will call CEO Bruce Pettet as a witness at the trial.  We
didn't find that out until last week.  He had not been
previously disclosed.

Nightforce is still evaluating, but may seek to take
his deposition before trial and would like to have the
opportunity to do that, if it decides that's in its best
interest.

And as to additional legal theories in the case,
Leupold last week, after the e-mails went into the Court,
updated some of its interrogatory responses and, for the first
time, distinguished certain claims in the '907 patent
purportedly from the Schmidt & Bender prior art that's been
front and center in the case, which they had, as the Court
knows from the summary judgment briefing, not previously
disputed on the merits, but if proved to be prior art, then
the claims all would be invalid.  And now we're trying to save
a couple of claims by distinguishing them, even if Schmidt &
Bender is proved to be prior art, which we think, in view of
the new evidence, Nightforce will be able to establish.

And as well on Friday, Leupold updated in their

interrogatory response to assert doctrine of equivalents
infringement as to all patents, not just the '907 patent, but
including the '907 patent.  And that typically involves a host
of additional issues in a case where a party in Leupold's
position would need to offer expert opinion to support that
new infringement theory.  It's not simply a fallback position,
under Federal Circuit law, to a failed literal infringement
case.

And as identified in our interrogatory response last
week, it appears that the reason for asserting doctrine of
equivalents infringement, at least as to the '907 patent, is
tied directly to the claim construction issues pending before
the Court.  And until those are resolved, it's unclear if
Leupold will be pursuing doctrine of equivalents or providing
additional expert opinion about that.

THE COURT:  Well, that tells me that you need to talk
to each other about what a schedule might look like.

But let me -- before I move off of that or before I
get to that topic, I want to talk about what came in this
morning.  I understand Leupold wants to -- or it updated
initial disclosures regarding Mr. Pettet, and Nightforce is
thinking they may want to do additional discovery with
Mr. Pettet as a result of the updated disclosures.

And then, also, in response to interrogatories,
Leupold, according to the e-mail that was sent to me, raised

1   some issues regarding the Schmidt & Bender prior art and has

2   asserted the theory of the doctrine of equivalents on all

3   patents as an alternative to literal infringement; and I'm

4   assuming that includes the '907.  I don't know what the

5   question is before the Court that either side wants me to

6   address as regards that.

7            So other than the defense telling me they think

8   they're going to need more time, Mr. Davis, from your

9   perspective, is there anything else you want me to do about

10  those issues?

11           MR. DAVIS:  Your Honor, I think that we would ask

12  that the expert motion deadline be moved out further than

13  requested by plaintiff, and that it looks like that's going to

14  run up against the current March 16th deadline for the first

15  wave of pretrial filings, such that expert motions may not

16  even be ready to be filed by then.

17           All of this really is putting the trial date in

18  jeopardy, in Nightforce's view, for this case to really be

19  prepared for trial.  And if doctrine of equivalents is an

20  issue, and we don't really know that until after the Court

21  rules on claim construction, expert reports would need to

22  follow from that, and it could take months more time than we

23  have, Your Honor.

24           THE COURT:  Thank you.

25           Mr. Brunette, what do you want to tell me?

1          MR. BRUNETTE:  Your Honor, from plaintiff's

2    perspective, there are a number of new issues that Mr. Davis

3    spoke to that I would like to be heard on.

4          First of all --

5          THE COURT:  Well, can I interrupt you?  Mr. Brunette,

6    can I interrupt you for just a second?

7          My inclination is to direct the parties to confer

8    about a new schedule and then just let the Court know what you

9    come up with.

10         Is that acceptable to you or do you want me to

11   resolve something right now on scheduling?  Because given what

12   I've been told, I can pick dates, but they would certainly be

13   arbitrary and not informed.

14         MR. BRUNETTE:  Your Honor, we are just fine with

15   conferring with opposing counsel and coming up with a

16   schedule.

17         From Leupold's perspective, we are very committed to

18   keeping the existing trial date and would want to make sure

19   that the parties are both shooting towards a schedule that

20   preserves the existing trial date.

21         THE COURT:  Okay.  Well, why don't you confer amongst

22   yourselves.

23         And then I didn't -- I did cut you off, and I meant

24   to, but I also didn't want to rob you of the opportunity to

25   tell me if there was something else you needed me to resolve

 1    this morning.

 2              MR. BRUNETTE:   No, Your Honor.   We disagree with a

 3    number of the assertions that were made, but given the Court's

 4    ruling, that's not something that needs to be addressed right

 5    now.

 6              The only other issue we have, Your Honor, is that

 7    at -- I believe it's at the last scheduling conference, the

 8    Court indicated that it would be entering an order about the

 9    four pretrial waves; and that, I believe, has not yet been

10    entered as to what the substance of those waves are -- I think

11    both parties have seen it before -- and then our outstanding

12    question of whether fact discovery is closed.

13              THE COURT:   Okay.   So I want you to confer about all

14    of those issues because, again, I don't know what else might

15    be floating around out there.   This is a moving target in a

16    lot of ways.   And I've seen this in patent cases before.

17    People find new inventions at the last minute or they find

18    other art that they think is prior art, and it just changes

19    the landscape.

20              And that's exactly what has happened in this case.

21    The defense found evidence that brings some date issues

22    regarding Smith & Bender to the forefront; and, not

23    surprisingly, Leupold, who didn't think they had to worry

24    about that is now worried about it and adjusting as a result

25    of that.

1           I'm okay with all of that.  I get it.  It takes

2    longer for the case to develop as these kinds of things come

3    up.

4           So I'm okay with moving dates around to the extent

5    that they need to be moved around.  I would like to preserve

6    the trial date just because I would like to get this case off

7    my plate and move on to the next series of patents that we

8    still need to talk about.

9           So I want the parties to confer, then get back to the

10   Court about what it is you think we need to do next and when.

11   And to the extent that there is disagreement, then I'll

12   resolve your issues.

13          Is that acceptable to plaintiff?  Mr. Brunette, does

14   that sound okay to you?

15          MR. BRUNETTE:  Yes, Your Honor.

16          THE COURT:  Mr. Davis?

17          MR. DAVIS:  Yes, Your Honor.

18          THE COURT:  And so, Mr. Brunette, how much time do

19   you think you're going to need to work with the other side and

20   come up with either a schedule that you both agree upon or let

21   me know where the disagreements are?

22          MR. BRUNETTE:  Your Honor, from plaintiff's

23   perspective, we would be ready to find a time this afternoon

24   to confer with counsel for the defendant and move this process

25   along.

1          THE COURT:  Mr. Davis, does that sound okay to you?

2          MR. DAVIS:  Yes, Your Honor.

3          THE COURT:  Hang on just a second.

4          (Pause)  And then as regards the fact discovery, from

5     Nightforce's perspective, is there any other fact discovery

6     that you're planning on engaging in?

7          MR. DAVIS:  Not other than has been mentioned and

8     described on this call, barring any unforeseen circumstance

9     where good cause could lead to follow-up on something after a

10    deposition that takes place.

11         THE COURT:  So at this point, then, can I say that

12    fact discovery is closed, from defendant's perspective?

13         MR. DAVIS:  Yes, Your Honor, subject to allowing the

14    discovery the Court has ordered here and potentially also of

15    Mr. Pettet, the CEO of Leupold.

16         THE COURT:  Mr. Brunette, does that make sense to

17    you?

18         MR. BRUNETTE:  Yes, Your Honor, subject to routine

19    supplementation.  I know both parties, for example, have sales

20    numbers they would like to supplement.

21         THE COURT:  Okay.  So I'm going to order that fact

22    discovery is closed, I think -- that's a technical, legal

23    thing -- because, again, you may run into other pieces of

24    evidence that change that.  But let's operate under the

25    assumption that fact discovery is closed, other than as I've

1    talked about today.  And then if something comes up, confer

2    amongst yourselves and see if you can resolve it.

3              Mr. Brunette, do you have anything else for me that

4    I need to talk about?

5              MR. BRUNETTE:  No, Your Honor, thank you.

6              THE COURT:  Mr. Davis, how about from defense

7    perspective?

8              MR. DAVIS:  No, Your Honor.

9              THE COURT:  All right.  Thank you both.  Thank you

10   all.

11             MR. DAVIS:  Thank you.

12

13

14             (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

--oOo--

            I certify, by signing below, that the
     foregoing is a correct transcript of the record
     of proceedings in the above-titled cause.  A
     transcript without an original signature,
     conformed signature or digitally signed signature
     is not certified.


     */s/ Nancy M. Walker*                    *1-28-20*
     _____    _____
     NANCY M. WALKER, CSR, RMR, CRR            DATE
     Official Court Reporter
     Oregon CSR No. 90-0091

## '

**'305** [2] - 10:8, 11:18
**'907** [10] - 7:20, 10:8, 10:12, 11:17, 11:24, 15:16, 16:2, 16:3, 16:11, 17:4

## /

**/s** [1] - 23:11

## 1

**1** [1] - 7:20
**1-28-20** [1] - 23:11
**1000** [1] - 2:16
**10th** [1] - 9:7
**11th** [1] - 3:21
**12** [1] - 10:5
**121** [1] - 2:13
**12th** [2] - 10:1, 10:22
**16-cv-1570** [1] - 3:5
**1600** [1] - 2:13
**16th** [1] - 17:14
**17** [1] - 12:4
**1997** [1] - 7:13

## 2

**2000** [1] - 11:1
**2006** [1] - 4:16
**2018** [6] - 5:15, 6:19, 9:7, 10:1, 10:5, 11:11
**2019** [3] - 7:11, 11:24, 12:4
**2020** [1] - 1:5
**21st** [1] - 11:24
**2275** [1] - 2:9
**27** [1] - 1:5

## 3

**3000** [1] - 2:7
**301** [1] - 2:16
**310** [1] - 2:10
**31st** [1] - 7:11
**326-8186** [1] - 2:17
**3600** [1] - 2:3
**3:16-cv-01570-HZ** [1] - 1:4

## 5

**503** [1] - 2:17
**53562** [1] - 2:10

## 6

**600** [1] - 2:3

## 7

**760** [1] - 2:6

## 9

**90-0091** [1] - 23:13
**97204** [2] - 2:14, 2:16
**97205** [1] - 2:7
**98101** [1] - 2:4

## A

**ability** [2] - 5:5, 5:6
**able** [5] - 7:9, 7:15, 14:17, 15:3, 15:24
**above-titled** [1] - 23:5
**acceptability** [1] - 10:7
**acceptable** [3] - 13:16, 18:10, 20:13
**accommodate** [2] - 12:16, 12:23
**accommodated** [1] - 12:7
**according** [1] - 16:25
**actual** [1] - 8:2
**adding** [1] - 3:21
**addition** [2] - 10:21, 13:17
**additional** [7] - 5:10, 11:13, 12:16, 15:13, 16:4, 16:15, 16:22
**address** [1] - 17:6
**addressed** [3] - 9:22, 10:15, 19:4
**adjust** [2] - 12:22, 12:24
**adjusted** [1] - 13:14
**adjusting** [2] - 13:24, 19:24
**adjustment** [1] - 11:1
**adopt** [1] - 13:22
**affect** [1] - 14:12
**afternoon** [1] - 20:23
**ago** [2] - 3:17, 9:22
**agree** [1] - 20:20
**agreed** [1] - 12:8
**ahead** [1] - 8:16
**allow** [3] - 8:16, 12:16, 12:21
**allowed** [2] - 5:19, 6:9
**allowing** [1] - 11:23, 21:13
**alternative** [2] - 10:8, 17:3
**alternatives** [1] - 10:22
**ample** [1] - 12:11
**apart** [1] - 8:6
**apologize** [1] - 6:7
**appear** [1] - 10:15
**appearances** [1] - 3:7
**APPEARANCES** [1] - 2:1
**arbitrary** [1] - 18:13
**areas** [4] - 4:6, 8:22, 8:24, 10:3
**Arizona** [1] - 7:13
**arrangements** [1] - 6:11
**art** [9] - 10:13, 10:14, 11:3, 15:17, 15:20, 15:23, 17:1, 19:18
**assembly** [1] - 10:24
**assert** [1] - 16:1
**asserted** [1] - 17:2
**asserting** [1] - 16:10
**assertions** [2] - 10:12, 19:3
**assume** [1] - 13:19
**assuming** [1] - 17:4

**assumption** [1] - 21:25
**August** [2] - 9:7, 11:11
**availability** [1] - 10:7
**Avenue** [2] - 2:6, 2:16

## B

**barring** [1] - 21:8
**BEFORE** [1] - 1:17
**beginning** [1] - 3:6
**below** [1] - 23:3
**Bender** [8] - 6:21, 6:22, 7:1, 7:3, 15:17, 15:23, 17:1, 19:22
**best** [1] - 15:11
**between** [1] - 4:16
**big** [1] - 14:25
**blossomed** [1] - 4:5
**Brian** [2] - 2:2, 3:8
**briefing** [4] - 13:13, 14:3, 14:14, 15:19
**briefly** [1] - 4:11
**brings** [1] - 19:21
**broad** [1] - 9:8
**Bruce** [1] - 15:6
**BRUNETTE** [16] - 3:10, 4:19, 6:7, 7:24, 9:3, 10:5, 10:20, 13:11, 13:25, 18:1, 18:14, 19:2, 20:15, 20:22, 21:18, 22:5
**Brunette** [12] - 2:5, 3:10, 6:7, 7:22, 9:1, 10:21, 17:25, 18:5, 20:13, 20:18, 21:16, 22:3
**business** [1] - 6:25
**Byron** [2] - 14:18, 14:22
**Byron's** [1] - 12:1

## C

**capacity** [1] - 9:5
**Case** [1] - 3:5
**case** [20] - 4:5, 4:13, 4:16, 4:23, 5:24, 6:3, 6:23, 7:20, 8:3, 8:9, 11:19, 11:24, 15:13, 15:18, 16:4, 16:8, 17:18, 19:20, 20:2, 20:6
**cases** [1] - 19:16
**CASIMIR** [1] - 3:12
**casimir** [1] - 2:8
**Casimir** [3] - 2:9, 3:12, 6:14
**Center** [1] - 2:12
**center** [1] - 15:18
**CEO** [2] - 15:6, 21:15
**certain** [1] - 15:16
**certainly** [4] - 6:19, 7:16, 14:13, 18:12
**certified** [1] - 23:8
**certify** [1] - 23:3
**change** [1] - 21:24
**changes** [1] - 19:18
**changing** [1] - 12:8
**Circuit** [1] - 16:7
**circumstance** [1] - 21:8
**Civil** [1] - 3:5
**claim** [2] - 16:12, 17:21
**claims** [3] - 15:16, 15:21, 15:22

**clear** [1] - 12:19
**CLERK** [1] - 3:2
**close** [1] - 12:6
**closed** [5] - 13:20, 19:12, 21:12, 21:22, 21:25
**coming** [3] - 5:2, 5:4, 18:15
**commensurate** [1] - 11:10
**committed** [1] - 18:17
**compel** [1] - 9:10
**complained** [1] - 12:5
**concern** [1] - 4:22
**concerned** [2] - 3:23, 5:5
**concerns** [1] - 11:14
**concluded** [1] - 22:14
**conclusive** [1] - 8:11
**confer** [6] - 18:7, 18:21, 19:13, 20:9, 20:24, 22:1
**conference** [4] - 4:23, 8:5, 11:25, 19:7
**conferring** [1] - 18:15
**conformed** [1] - 23:7
**construction** [2] - 16:12, 17:21
**contends** [1] - 5:20
**continued** [1] - 5:1
**continuing** [1] - 8:8
**control** [1] - 7:5
**correct** [2] - 13:4, 23:4
**Counsel** [2] - 3:2, 6:5
**counsel** [4] - 3:6, 9:12, 18:15, 20:24
**couple** [1] - 15:22
**COURT** [33] - 1:1, 1:18, 2:15, 3:14, 4:17, 6:4, 6:5, 6:8, 7:21, 8:15, 10:3, 10:17, 11:5, 12:10, 12:13, 13:8, 13:21, 14:5, 14:7, 16:16, 17:24, 18:5, 18:21, 19:13, 20:16, 20:18, 21:1, 21:3, 21:11, 21:16, 21:21, 22:6, 22:9
**court** [1] - 6:5
**Court** [16] - 7:10, 8:4, 8:12, 9:25, 11:23, 13:15, 15:14, 15:18, 16:13, 17:5, 17:20, 18:8, 19:8, 20:10, 21:14, 23:13
**Court's** [2] - 13:17, 19:3
**Courthouse** [1] - 2:15
**Cromell's** [1] - 8:17
**Cromwell** [12] - 3:24, 4:2, 4:22, 5:15, 5:21, 6:12, 6:15, 6:16, 6:19, 7:23, 8:2, 8:16
**crossing** [1] - 12:18
**CRR** [2] - 2:15, 23:12
**CSR** [3] - 2:15, 23:12, 23:13
**current** [1] - 17:14
**Customs** [1] - 8:7
**cut** [1] - 18:23

## D

**d/b/a** [1] - 1:6
**DATE** [1] - 23:12
**date** [6] - 15:2, 17:17, 18:18, 18:20, 19:21, 20:6
**dates** [6] - 12:6, 12:8, 13:22, 18:12, 20:4

**Daubert** [2] - 13:13, 14:3
**David** [2] - 2:8, 3:12
**Davis** [13] - 2:11, 3:11, 4:9, 5:14, 6:13, 6:17, 11:6, 14:8, 17:8, 18:2, 20:16, 21:1, 22:6
**DAVIS** [15] - 3:11, 4:9, 6:17, 11:7, 12:11, 13:6, 14:6, 14:8, 17:11, 20:17, 21:2, 21:7, 21:13, 22:8, 22:11
**Davis's** [1] - 8:11
**deadline** [2] - 17:12, 17:14
**deadlines** [1] - 13:24
**December** [4] - 7:11, 10:1, 10:5, 10:22
**decides** [1] - 15:11
**declaration** [1] - 5:11
**Defendant** [2] - 1:8, 3:12
**defendant** [5] - 3:11, 4:12, 6:18, 14:9, 20:24
**DEFENDANT** [1] - 2:8
**defendant's** [2] - 13:4, 21:12
**defendants** [1] - 4:10
**defense** [3] - 17:7, 19:21, 22:6
**Deming** [1] - 2:9
**deposed** [4] - 6:9, 9:5, 11:20, 12:22
**deposition** [10] - 3:21, 5:18, 8:17, 12:6, 12:8, 14:1, 14:18, 14:22, 15:10, 21:10
**depositions** [4] - 3:23, 9:17, 12:24, 14:21
**described** [1] - 21:8
**designated** [4] - 10:23, 11:4, 11:11, 11:16
**designating** [1] - 9:19
**designations** [1] - 9:19
**designs** [1] - 10:8
**detail** [3] - 10:13, 11:12, 11:14
**develop** [1] - 20:2
**different** [3] - 7:7, 7:8, 10:11
**digitally** [1] - 23:7
**diligence** [2] - 4:13, 5:14
**direct** [2] - 11:22, 18:7
**directly** [3] - 11:25, 12:1, 16:12
**disagree** [1] - 19:2
**disagreement** [1] - 20:11
**disagreements** [1] - 20:21
**disclosed** [3] - 6:19, 12:2, 15:8
**disclosure** [5] - 10:1, 11:9, 11:13, 11:22, 15:5
**disclosures** [8] - 5:17, 9:8, 9:12, 9:24, 11:18, 12:6, 16:21, 16:23
**discovered** [1] - 9:21
**discovery** [21] - 3:3, 4:25, 5:11, 5:19, 5:23, 5:24, 8:1, 8:2, 8:6, 8:8, 12:17, 13:18, 13:20, 16:22, 19:12, 21:4, 21:5, 21:12, 21:14, 21:22, 21:25
**dispute** [1] - 12:17
**disputed** [1] - 15:20
**distinguished** [1] - 15:16
**distinguishing** [1] - 15:22
**DISTRICT** [3] - 1:1, 1:2, 1:18
**District** [1] - 2:15

**doctrine** [5] - 16:1, 16:10, 16:14, 17:2, 17:19
**document** [1] - 5:2
**documents** [1] - 8:9
**done** [5] - 6:1, 8:3, 8:6, 14:22, 15:3
**drawn** [1] - 12:19
**during** [2] - 5:24, 8:2

## E

**e-mail** [9] - 3:15, 3:19, 7:10, 8:12, 8:19, 10:23, 13:14, 15:4, 16:25
**e-mails** [2] - 14:12, 15:14
**early** [1] - 6:22
**either** [2] - 17:5, 20:20
**elect** [1] - 5:18
**elected** [1] - 8:1
**eleventh** [1] - 6:1
**employees** [1] - 9:4
**end** [2] - 7:8, 14:22
**enforce** [1] - 9:25
**engaging** [1] - 21:6
**entered** [1] - 19:10
**entering** [1] - 19:8
**equivalents** [5] - 16:1, 16:11, 16:14, 17:2, 17:19
**erectors** [1] - 10:24
**escape** [1] - 3:24
**establish** [1] - 15:24
**evaluating** [1] - 15:9
**eve** [1] - 9:17
**evening** [1] - 9:18
**evidence** [11] - 4:12, 4:15, 7:18, 7:19, 8:10, 11:23, 12:15, 12:20, 15:24, 19:21, 21:24
**exactly** [3] - 7:24, 9:4, 19:20
**example** [2] - 10:9, 21:19
**except** [1] - 13:10
**exclude** [2] - 12:14, 12:20
**excluding** [1] - 13:6
**excuse** [1] - 3:25
**existing** [2] - 18:18, 18:20
**expanded** [1] - 8:24
**expect** [1] - 11:19
**expert** [12] - 5:4, 8:23, 9:8, 14:1, 14:14, 14:17, 14:24, 16:5, 16:15, 17:12, 17:15, 17:21
**experts** [1] - 10:15
**explanation** [1] - 5:25
**extension** [2] - 14:13, 14:14
**extent** [4] - 11:21, 12:15, 20:4, 20:11

## F

**fact** [13] - 4:25, 5:24, 8:2, 9:5, 13:18, 13:20, 14:19, 19:12, 21:4, 21:5, 21:12, 21:21, 21:25
**failed** [1] - 16:7
**fairly** [1] - 9:8
**fallback** [1] - 16:6

**February** [2] - 14:18, 14:23
**Federal** [1] - 16:7
**fellows** [1] - 9:2
**FERRIS** [1] - 3:9
**Ferris** [2] - 2:5, 3:9
**few** [1] - 7:9
**filed** [1] - 17:16
**filings** [1] - 17:15
**finally** [2] - 7:9, 7:15
**fine** [1] - 18:14
**first** [7] - 3:19, 4:3, 7:12, 9:1, 15:15, 17:14, 18:4
**floating** [1] - 19:15
**focus** [1] - 10:25
**focused** [1] - 11:17
**follow** [2] - 17:22, 21:9
**follow-up** [1] - 21:9
**following** [1] - 8:6
**FOR** [3] - 1:2, 2:2, 2:8
**forefront** [1] - 19:22
**foregoing** [1] - 23:4
**formal** [1] - 8:1
**former** [1] - 6:21
**forward** [2] - 5:3, 13:18
**four** [2] - 9:16, 19:9
**free** [1] - 4:24
**Friday** [1] - 15:25
**front** [1] - 15:18
**function** [2] - 7:7, 7:14

## G

**gathered** [1] - 12:14
**Georgia** [1] - 7:1
**Germany** [1] - 7:3
**given** [4] - 9:7, 9:11, 18:11, 19:3
**guess** [2] - 3:22, 4:1

## H

**half** [1] - 3:17
**half-hour** [1] - 3:17
**handle** [1] - 11:16
**hang** [1] - 21:3
**heard** [2] - 5:25, 18:3
**hearing** [1] - 3:3
**HEARING** [1] - 1:15
**Hernandez** [1] - 3:14
**HERNANDEZ** [1] - 1:17
**high** [1] - 11:12
**hold** [1] - 7:17
**Honor** [30] - 3:3, 4:9, 4:19, 5:13, 6:17, 7:24, 9:3, 9:9, 10:5, 10:20, 11:7, 13:6, 13:11, 13:25, 14:6, 14:8, 14:17, 17:23, 18:1, 18:14, 19:2, 19:6, 20:15, 20:17, 20:22, 21:2, 21:13, 21:18, 22:5, 22:8
**HONORABLE** [1] - 1:17
**host** [1] - 16:3
**hour** [2] - 3:17, 6:1

**hybrid** [1] - 8:21

## I

**identified** [1] - 16:9
**identify** [2] - 6:6, 6:14
**imminently** [1] - 8:14
**implicitly** [1] - 13:15
**important** [1] - 4:12
**IN** [1] - 1:1
**Inc** [4] - 3:4, 3:5, 6:21, 7:1
**INC** [2] - 1:3, 1:6
**inclination** [1] - 18:7
**includes** [1] - 17:4
**including** [2] - 3:15, 16:3
**indicated** [4] - 5:16, 13:14, 13:15, 19:8
**indicating** [2] - 5:3, 7:12
**individual** [1] - 10:19
**individuals** [3] - 8:19, 9:4, 9:11
**information** [4] - 5:21, 6:20, 6:24, 11:21
**informed** [2] - 7:2, 18:13
**infringement** [5] - 16:2, 16:6, 16:7, 16:11, 17:3
**infringing** [2] - 10:8, 10:22
**initial** [4] - 3:19, 5:16, 9:7, 16:21
**inspection** [1] - 10:25
**interest** [1] - 15:12
**interrogatories** [1] - 16:24
**interrogatory** [3] - 15:15, 16:1, 16:9
**interrupt** [2] - 18:5, 18:6
**interviewed** [1] - 6:22
**invalid** [1] - 15:21
**invalidity** [2] - 10:11, 11:3
**inventions** [1] - 19:17
**involves** [1] - 16:3
**involving** [1] - 4:4
**issue** [6] - 4:4, 4:15, 5:14, 9:15, 17:20, 19:6
**issues** [16] - 3:18, 4:20, 4:21, 6:13, 9:21, 13:20, 14:11, 16:4, 16:12, 17:1, 17:10, 18:2, 19:14, 19:21, 20:12
**items** [1] - 13:18

## J

**January** [1] - 1:5
**jeopardy** [2] - 15:1, 17:18
**Johnson** [10] - 3:25, 8:20, 9:14, 10:6, 10:16, 10:18, 11:9, 12:7, 12:21, 14:20
**joint** [1] - 8:5
**Jones** [1] - 2:9
**Judge** [1] - 3:14
**JUDGE** [1] - 1:18
**judgment** [1] - 15:19

## K

**Kassim** [2] - 2:5, 3:9
**keeping** [1] - 18:18
**key** [4] - 4:15, 7:12, 7:18

**kinds** [1] - 20:2
**Klarquist** [1] - 2:12
**knobs** [1] - 11:1
**known** [1] - 5:15
**knows** [1] - 15:19

## L

**lack** [2] - 4:13, 5:14
**landscape** [1] - 19:19
**last** [9] - 4:23, 7:8, 8:5, 14:12, 15:7, 15:14, 16:9, 19:7, 19:17
**law** [1] - 16:7
**Lazzeroni** [8] - 3:21, 4:4, 4:8, 4:14, 4:20, 5:21, 6:8, 7:13
**lead** [1] - 21:9
**least** [1] - 16:11
**leave** [1] - 6:10
**led** [1] - 6:23
**legal** [2] - 15:13, 21:22
**Leupold** [19] - 3:4, 3:8, 3:9, 3:10, 3:23, 8:20, 11:14, 12:5, 12:16, 14:15, 14:17, 15:5, 15:14, 15:25, 16:14, 16:20, 16:25, 19:23, 21:15
**LEUPOLD** [1] - 1:3
**Leupold's** [5] - 8:23, 12:23, 13:23, 16:4, 18:17
**level** [1] - 11:12
**license** [1] - 4:24
**Lightforce** [1] - 3:4
**LIGHTFORCE** [1] - 1:6
**limited** [3] - 9:13, 9:14, 9:16
**lines** [1] - 12:18
**listed** [1] - 13:19
**literal** [2] - 16:7, 17:3
**literally** [1] - 7:11
**LLP** [3] - 2:2, 2:6, 2:12
**loath** [2] - 12:14, 12:20
**locate** [2] - 7:9, 7:16
**located** [1] - 4:14
**look** [2] - 11:15, 16:17
**looks** [3] - 4:3, 12:17, 17:13

## M

**mail** [9] - 3:15, 3:19, 7:10, 8:12, 8:19, 10:23, 13:14, 15:4, 16:25
**mails** [2] - 14:12, 15:14
**management** [2] - 4:23, 7:2
**March** [1] - 17:14
**MARCO** [1] - 1:17
**materials** [1] - 7:3
**matter** [2] - 3:4, 14:21
**meant** [1] - 18:23
**mentioned** [3] - 7:25, 10:18, 21:7
**merits** [1] - 15:20
**mid** [1] - 14:18
**Middleton** [1] - 2:10
**might** [2] - 16:17, 19:14

minute [2] - 3:18, 19:17
month [1] - 9:18
months [1] - 17:22
morning [11] - 3:2, 3:14, 3:16, 13:3, 13:7, 13:10, 14:11, 14:16, 15:4, 16:20, 19:1
most [4] - 4:12, 12:3
motion [3] - 9:10, 14:14, 17:12
motions [2] - 14:24, 17:15
move [4] - 8:18, 16:18, 20:7, 20:24
moved [4] - 7:1, 14:10, 17:12, 20:5
moving [2] - 19:15, 20:4
MR [34] - 3:8, 3:9, 3:10, 3:11, 3:12, 4:9, 4:19, 6:7, 6:17, 7:24, 9:3, 10:5, 10:20, 11:7, 12:11, 13:6, 13:11, 13:25, 14:6, 14:8, 17:11, 18:1, 18:14, 19:2, 20:15, 20:17, 20:22, 21:2, 21:7, 21:13, 21:18, 22:5, 22:8, 22:11

**N**

names [1] - 3:24
nancy [1] - 2:15
Nancy [1] - 23:11
NANCY [1] - 23:12
narrow [1] - 9:16
narrowed [1] - 11:17
Nathan [2] - 2:5, 3:10
nearly [2] - 5:20, 8:11
need [14] - 12:15, 12:23, 13:14, 13:23, 14:23, 16:5, 16:16, 17:8, 17:21, 20:5, 20:8, 20:10, 20:19, 22:4
needed [2] - 12:22, 18:25
needs [2] - 6:1, 19:4
new [21] - 5:1, 5:2, 5:3, 5:10, 5:11, 7:2, 8:8, 8:9, 9:12, 9:19, 9:20, 10:3, 11:2, 11:21, 14:11, 15:5, 15:24, 16:6, 18:2, 18:8, 19:17
newly [1] - 9:21
next [3] - 12:8, 20:7, 20:10
Nightforce [23] - 3:13, 3:20, 4:3, 4:23, 5:7, 5:8, 5:9, 5:15, 5:17, 5:20, 6:20, 7:19, 7:25, 8:4, 9:5, 9:12, 9:21, 10:15, 11:3, 15:9, 15:24, 16:21
NIGHTFORCE [2] - 1:7, 1:7
Nightforce's [8] - 5:16, 9:25, 10:23, 10:24, 10:25, 15:1, 17:18, 21:5
Ninth [1] - 2:6
non [4] - 10:8, 10:14, 10:22, 11:3
non-infringing [2] - 10:8, 10:22
non-Nightforce [1] - 11:3
non-prior [1] - 10:14
note [1] - 4:11
noted [2] - 8:19, 15:4
November [1] - 11:24
now-agreed [1] - 12:8
number [2] - 18:2, 19:3
numbers [1] - 21:20

**O**

object [1] - 14:13
obviously [1] - 11:19
October [1] - 12:4
OF [2] - 1:2, 1:16
offer [1] - 16:5
Official [1] - 23:13
old [2] - 7:14, 7:15
once [1] - 6:25
One [1] - 2:12
one [8] - 3:15, 3:24, 7:10, 9:15, 12:3, 13:12, 13:21, 14:1
oOo [1] - 23:1
operate [1] - 21:24
operation [1] - 6:22
operations [1] - 10:25
opining [1] - 10:13
opinion [3] - 11:10, 16:5, 16:15
opinions [2] - 12:1
opportunity [3] - 12:11, 15:11, 18:24
opposing [1] - 18:15
OPTICS [1] - 1:7
OR [3] - 2:7, 2:14, 2:16
order [6] - 6:9, 12:16, 12:22, 12:24, 19:8, 21:21
ordered [1] - 21:14
orderly [1] - 15:3
OREGON [1] - 1:2
Oregon [1] - 1:6, 23:13
original [2] - 12:6, 23:6
originally [4] - 8:21, 11:11, 11:16, 13:2
outstanding [3] - 8:7, 13:12, 19:11
own [1] - 10:23

**P**

parallax [1] - 11:1
Park [2] - 2:2, 3:8
PARK [1] - 3:8
part [4] - 4:21, 11:14
particular [2] - 5:6, 8:22
parties [13] - 4:16, 5:2, 6:2, 6:10, 7:5, 13:19, 14:1, 14:3, 18:7, 18:19, 19:11, 20:9, 21:19
parties' [1] - 5:5
party [4] - 5:11, 7:15, 8:8, 16:4
patent [10] - 7:20, 10:12, 11:17, 11:18, 11:24, 15:16, 16:2, 16:3, 16:11, 19:16
patents [4] - 10:9, 16:2, 17:3, 20:7
Pause [1] - 21:4
pay [1] - 7:6
pending [1] - 16:12
people [1] - 19:17
persistence [1] - 7:6
perspective [15] - 4:18, 4:20, 8:24, 9:20, 13:4, 13:9, 13:11, 13:23, 17:9, 18:2, 18:17, 20:23, 21:5, 21:12, 22:7
Pettet [4] - 15:6, 16:21, 16:23, 21:15

phase [2] - 5:24, 8:2
pick [1] - 18:12
picture [1] - 14:25
pieces [1] - 21:23
place [2] - 12:25, 21:10
Plaintiff [1] - 1:4
plaintiff [2] - 17:13, 20:13
PLAINTIFF [1] - 2:2
plaintiff's [6] - 3:6, 4:18, 4:19, 13:9, 18:1, 20:22
planning [2] - 14:19, 21:6
plate [1] - 20:7
point [5] - 5:13, 7:18, 11:19, 15:2, 21:11
Portland [4] - 1:6, 2:7, 2:14, 2:16
position [6] - 4:24, 5:7, 6:25, 13:17, 16:5, 16:6
potential [1] - 5:17
potentially [3] - 4:12, 6:20, 21:14
practical [1] - 14:21
preparation [1] - 15:2
prepare [5] - 5:6, 6:2, 8:13, 12:12, 14:19, 14:24
prepared [1] - 17:19
present [1] - 14:17
preserve [1] - 20:5
preserves [1] - 18:20
president [1] - 6:21
pretrial [3] - 15:1, 17:15, 19:9
previously [6] - 7:25, 9:6, 9:9, 12:19, 15:8, 15:19
primary [1] - 4:22
privilege [1] - 9:10
proceedings [2] - 22:14, 23:5
PROCEEDINGS [1] - 1:16
process [2] - 10:24, 20:24
production [1] - 9:18
productions [1] - 5:2
proposal [1] - 5:9
proposed [2] - 11:10, 14:14
proved [2] - 15:20, 15:23
provided [2] - 7:11, 11:12
providing [1] - 16:14
purportedly [1] - 15:17
pursue [2] - 5:19, 8:1
pursuing [1] - 16:14
putting [1] - 17:17

**Q**

questions [1] - 13:12

**R**

raised [2] - 14:11, 16:25
readily [1] - 12:7
ready [2] - 17:16, 20:23
really [4] - 11:16, 17:17, 17:18, 17:20
reason [4] - 5:18, 7:17, 8:1, 16:10
reasonable [1] - 14:23

received [3] - 3:15, 9:18, 15:5
recent [6] - 11:9, 11:13, 11:22, 12:3, 12:4, 12:5
recently [1] - 5:3
record [2] - 3:7, 23:4
records [3] - 7:9, 7:14
regard [1] - 5:7
regarding [5] - 9:10, 13:24, 16:21, 17:1, 19:22
regards [4] - 6:8, 8:23, 17:6, 21:4
rejected [1] - 5:9
related [1] - 3:22
relating [1] - 12:2
relatively [1] - 9:16
relevance [2] - 6:24, 8:12
relevant [3] - 5:22, 6:20, 8:11
remedy [1] - 12:20
repair [1] - 10:24
report [1] - 14:19
reporter [1] - 6:6
Reporter [1] - 23:13
REPORTER [2] - 2:15, 6:5
reports [3] - 5:4, 12:4, 17:21
represented [1] - 8:4
request [1] - 14:3
requested [1] - 17:13
rescheduled [1] - 14:2
resolve [4] - 18:11, 18:25, 20:12, 22:2
resolved [1] - 16:13
respect [3] - 4:20, 4:21, 9:14
responding [3] - 6:13, 11:25, 14:20
response [4] - 11:22, 16:1, 16:9, 16:24
responses [2] - 5:11, 15:15
responsive [1] - 12:1
result [2] - 16:23, 19:24
returned [1] - 7:2
riflescopes [1] - 5:3
Rives [2] - 2:2, 2:6
RMR [2] - 2:15, 23:12
rob [1] - 18:24
Room [1] - 2:16
routine [1] - 21:18
ruled [1] - 9:9
rules [1] - 17:21
ruling [2] - 9:11, 19:4
run [2] - 17:14, 21:23

## S

S.C [1] - 2:9
sales [1] - 21:19
Salmon [1] - 2:13
save [1] - 15:21
schedule [11] - 12:22, 13:13, 14:4, 14:10, 14:13, 14:25, 16:17, 18:8, 18:16, 18:19, 20:20
scheduled [1] - 9:17
scheduling [2] - 18:11, 19:7
Schmidt [6] - 6:21, 6:22, 7:3, 15:17,

15:22, 17:1
scope [5] - 4:15, 7:12, 9:25, 11:10, 12:18
Scott [5] - 2:11, 3:11, 4:9, 6:17, 14:8
Seattle [1] - 2:4
second [2] - 18:6, 21:3
secondly [1] - 14:5
see [1] - 22:2
seek [1] - 15:9
seem [1] - 8:12
sense [2] - 12:23, 21:16
sent [4] - 3:16, 13:1, 13:2, 16:25
series [1] - 20:7
serving [1] - 5:1
set [4] - 9:7, 9:12, 9:19, 11:2
sets [1] - 5:10
shifting [1] - 5:7
shipped [1] - 7:12
shooting [1] - 18:19
shortly [1] - 9:11
side [3] - 10:25, 17:5, 20:19
signature [3] - 23:6, 23:7
signed [1] - 23:7
signing [1] - 23:3
similar [1] - 11:2
simply [1] - 16:6
sit [1] - 5:19
Smith [2] - 7:1, 19:22
sole [1] - 10:9
sometimes [1] - 7:6
somewhat [1] - 15:1
sort [1] - 14:10
sound [2] - 20:14, 21:1
sounds [1] - 14:19
Sparkman [1] - 2:12
specific [2] - 6:10, 13:18
specifically [2] - 5:13, 9:14
stand [1] - 13:13
started [1] - 4:4
state [1] - 3:6
STATES [2] - 1:1, 1:18
States [1] - 2:15
STEVENS [1] - 1:3
Stevens [4] - 3:4, 3:8, 3:9, 3:10
still [3] - 14:1, 15:9, 20:8
stockdill [1] - 10:20
Stockdill [10] - 3:25, 8:20, 9:15, 10:19, 10:21, 11:2, 11:8, 12:7, 12:21, 14:20
Stoel [2] - 2:2, 2:6
Street [2] - 2:3, 2:13
strictly [1] - 9:13
strings [1] - 3:15
subject [2] - 21:13, 21:18
subjects [1] - 11:15
submission [1] - 8:5
subpoena [1] - 8:7
subpoenaed [1] - 6:9
subpoenas [1] - 5:2
substance [2] - 10:1, 19:10

Suite [4] - 2:3, 2:7, 2:10, 2:13
summary [1] - 15:19
superiority [1] - 10:7
supplement [2] - 11:9, 21:20
supplemental [3] - 5:10, 5:16, 9:19
supplementation [1] - 21:19
support [1] - 16:5
supposed [1] - 10:6
surprise [1] - 9:19
surprisingly [1] - 19:23

## T

target [1] - 19:15
technical [1] - 21:22
telephone [1] - 8:5
TELEPHONIC [1] - 1:15
testimony [6] - 8:23, 9:9, 9:13, 10:2, 11:10, 11:15
THE [36] - 1:1, 1:2, 1:17, 2:2, 2:8, 3:2, 3:14, 4:17, 6:4, 6:5, 6:8, 7:21, 8:15, 10:3, 10:17, 11:5, 12:10, 12:13, 13:8, 13:21, 14:5, 14:7, 16:16, 17:24, 18:5, 18:21, 19:13, 20:16, 20:18, 21:1, 21:3, 21:11, 21:16, 21:21, 22:6, 22:9
theories [6] - 6:3, 8:9, 10:14, 11:3, 15:13
theory [2] - 16:6, 17:2
thinking [1] - 16:22
third [6] - 5:2, 5:11, 7:5, 7:15, 8:8, 10:25
Third [1] - 2:16
third-party [2] - 5:11, 8:8
tied [2] - 4:21, 16:12
titled [1] - 23:5
today [2] - 3:3, 22:1
topic [3] - 10:9, 10:22, 16:19
topics [3] - 9:16, 9:20, 10:6
towards [1] - 18:19
Trade [1] - 2:12
transcript [2] - 23:4, 23:6
TRANSCRIPT [1] - 1:16
trial [12] - 5:1, 5:6, 6:2, 8:14, 15:2, 15:6, 15:10, 17:17, 17:19, 18:18, 18:20, 20:6
tried [1] - 5:8
true [1] - 10:19
trying [3] - 4:13, 6:2, 15:21
Tucson [2] - 3:21, 7:13
turn [5] - 3:19, 4:3, 6:12, 8:8, 9:1
turning [1] - 5:13
two [7] - 3:22, 4:1, 5:20, 8:18, 9:2, 9:13, 13:12
typically [1] - 16:3

## U

U.S [2] - 6:22, 8:7
unclear [1] - 16:13
under [3] - 7:1, 16:7, 21:24
unforeseen [1] - 21:8

**unique** [1] - 10:16
**United** [1] - 2:15
**UNITED** [2] - 1:1, 1:18
**University** [1] - 2:3
**unless** [1] - 12:15
**unlikely** [1] - 14:16
**untimely** [1] - 9:24
**up** [12] - 4:21, 4:25, 6:25, 8:6, 13:9,
    17:14, 18:9, 18:15, 20:3, 20:20, 21:9,
    22:1
**updated** [4] - 15:15, 15:25, 16:20, 16:23
**USA** [3] - 1:6, 1:7, 3:5

## V

**vague** [1] - 9:8
**variety** [2] - 9:20, 10:11
**various** [1] - 10:13
**versus** [1] - 3:4
**view** [4] - 11:22, 15:1, 15:23, 17:18
**virtually** [1] - 9:17
**visit** [1] - 3:18
**vs** [1] - 1:5

## W

**WA** [1] - 2:4
**waiver** [1] - 9:10
**WALKER** [1] - 23:12
**Walker** [2] - 2:15, 23:11
**wants** [2] - 16:20, 17:5
**wave** [1] - 17:15
**waves** [2] - 19:9, 19:10
**ways** [1] - 19:16
**Weatherby** [2] - 11:23, 12:2
**week** [5] - 12:9, 14:12, 15:7, 15:14,
    16:10
**whole** [1] - 10:11
**WI** [1] - 2:10
**willing** [1] - 13:22
**wish** [1] - 7:16
**witness** [5] - 5:17, 9:5, 14:17, 15:5, 15:6
**witnesses** [3] - 8:22, 9:13, 11:8
**witnesses'** [1] - 10:2
**World** [1] - 2:12
**worried** [1] - 19:24
**worry** [1] - 19:23
**wrapped** [1] - 13:9

## Y

**year** [1] - 7:8
**years** [1] - 5:20
**yourself** [2] - 6:6, 6:14
**yourselves** [2] - 18:22, 22:2

## Z

**Zeiss** [2] - 11:23, 12:2