IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEUPOLD & STEVENS, INC.,      No. 3:16-cv-01570-HZ

    Plaintiff,      OPINION & ORDER

  v.

LIGHTFORCE USA, INC. d/b/a
NIGHTFORCE OPTICS and
NIGHTFORCE USA,

    Defendant.

Kassim M. Ferris
Nathan C. Brunette
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205

1- OPINION & ORDER

Brian C. Park
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101

    Attorneys for Plaintiff

Scott E. Davis
Klarquist Sparkman, LLP
121 SW Salmon St., Suite 1600
Portland, OR 97204

David Casimir
Casimir Jones S.C.
2275 Deming Way, Suite 310
Middleton, WI 53562

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Leupold & Stevens, Inc. ("Leupold") brings this action against Defendant Lightforce USA, Inc. ("Nightforce"), alleging that it infringes eight of Leupold's patents concerning optical devices such as riflescopes. Both parties submitted motions for summary judgment on all eight patents, addressing more than seventy claims and numerous defenses. In this opinion, the Court resolves only those motions related to Nightforce's affirmative defense under 28 U.S.C. § 1498(a). For the reasons that follow, both parties' motions are DENIED.

## BACKGROUND

Leupold and Nightforce design, manufacture, and sell, among other things, optical scopes. Am. Compl. ¶¶ 2–4, ECF 28. Leupold alleges that Nightforce's accused products infringe its eight patents-in-suit involving optical device structures and functions including: locking adjustment knobs; pivoting lens units; and pivoting lens covers. *Id.* at ¶¶ 10–16.

//

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

## DISCUSSION

28 U.S.C. § 1498(a) provides:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture . . . .

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

As the Supreme Court has explained, the statute's purpose is "to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims." *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 343 (1928); *see also Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002) ("[T]here are two important features of § 1498(a). It relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States."). To this end, § 1498(a) "allows the Government to obtain what it needs from third parties, whether goods, services, or research, regardless of potential patent infringement, with compensation provided later to patent holders in a suit against the Government." *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 606 (M.D.N.C. 2006). Thus, "[t]he coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement." *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986).

In a suit between private parties, "§ 1498(a) operates as an affirmative defense." *Madey*, 413 F. Supp. 2d at 607. The party raising the defense must establish that use of a patented invention was (1) "for the Government;" and (2) "with the authorization and consent of the Government." *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007) (quoting 28 U.S.C. § 1498(a)).

As to the first prong, "for the Government" "appears to impose only a requirement that the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government." *Id.* As to the second prong, "the Government generally consents and authorizes the use of a particular device by inserting an authorization and consent clause into its contracts, according to federal procedures." *Parker Beach Restoration, Inc. v. United States*, 58 Fed. Cl. 126, 132 (2003). A specific contract clause containing express authorization and consent is not, however, required. *Id.* Rather, authorization and consent may also be implied. *TVI Energy Corp.*, 806 F.2d at 1060; *Larson v. United States*, 26 Cl. Ct. 365, 369–70 (1992) (Implied authorization or consent may be proven by "explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement.").

Here, the parties do not contest that the alleged use of a patented invention was "for the Government;" Nightforce sold the identified products to the Government or to Government subcontractors working on behalf of the Government. The question is therefore whether any use of a patented invention was with the authorization and consent of the Government.

I. **Express Authorization and Consent**

"Although not required by § 1498 itself, the Government generally consents and authorizes the use of a particular device by inserting an authorization and consent clause into its contracts." *Parker Beach Restoration*, 58 Fed. Cl. at 132; *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Cl. Ct. 1976) (recognizing that express authorization and consent clauses "comport[] with the broad purpose and policy of § 1498(a)").

Nightforce purports to identify several contracts that include a standard authorization and consent clause—the "FAR 52.227-1." The primary version of FAR 52.227-1 reads:

(a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent—

   (1) Embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract; or

   (2) Used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a United States patent shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

(b) The Contractor shall include the substance of this clause, including this paragraph (b), in all subcontracts that are expected to exceed the simplified acquisition threshold. However, omission of this clause from any subcontract, including those at or below the simplified acquisition threshold, does not affect this authorization and consent.

48 C.F.R. § 52.227-1.

There is no dispute that the patented inventions are alleged to be embodied in the structure of the contracted-for goods. There is also no dispute that the Government accepted the contracted-for goods. The Court therefore agrees that, where FAR 52.227-1 appears in a Nightforce contract, the Government has likely provided express consent for infringement.

There are, however, outstanding questions of fact as to whether the FAR 52.227-1 appears in, and applies to, the contracts at issue.¹ For example, Nightforce suggests that each ADS purchase order incorporates the FAR 52.227-1 through the following sentence at the bottom of each page: "The flowdown provisions found at https://ADSinc.com/Order-Flowdowns-A are hereby incorporated in this Purchase Order by reference." Def. Resp. 37, ECF 120. However, as Leupold points out, many of these purchase orders actually reference "the terms and conditions found at http://www.adsinc.com/po-flowdowns." *See, e.g.*, Bracken Decl. Ex. 6, ECF 96-6. "Http://www.adsinc.com/po-flowdowns" is not live hyperlink; instead, it automatically routs users to the "ADS Code of Business Ethics & Conduct" at https://adsinc.com/ads-inc-equipment-procurement-support-solutions/code-of-conduct/. The Court sees no reference to any flowdown provision on this web page.

Even if the Court were to accept that these purchase orders intended to incorporate the text found at https://ADSinc.com/Order-Flowdowns-A, the Court notes that, according to https://ADSinc.com/Order-Flowdowns-A, FAR 52.227-1 applies only to purchase orders over $150,000. Bracken Decl. Ex. 3 at 2, ECF 125-3. Yet Nightforce has identified purchase orders for less than $150,000 in its calculations. *See, e.g.*, Bracken Decl. Ex. 31, ECF 96-31; *see also* Ferris Decl. ¶ 12, ECF 137.

In sum, while certain contracts may, in fact, include the Government's express authorization and consent to the use of a patented invention, there are significant questions of fact as to *which* contracts and purchase orders contain this authorization. The Court therefore

---

[1] There also appears to be a question as to which orders, alleged to contain the FAR 52.227-1, were included in Leupold's damages calculations in the first place.

denies the parties' motions for summary judgment as to those contracts and purchase orders alleged to contain express authorization and consent.

## II. Implied Authorization and Consent

Implied authorization or consent is proven by "explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement." *Larson*, 26 Ct. Cl. at 369–70. The Government may provide implied authorization and consent, for example, "'by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement, [or] by post hoc intervention of the Government in pending infringement litigation against individual contractors.'" *Parker Beach*, 58 Fed. Cl. at 132 (quoting *Hughes Aircraft Co.*, 534 F.2d at 901). "This includes situations where '(1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement.'" *Madey*, 413 F. Supp. 2d at 609 (quoting *Larson*, 26 Cl. Ct. at 370). "Implied authorization and consent will also be found where the government requires the private contractor to use or manufacture the allegedly infringing device." *Id.*; *see also Bereslavsky v. Esso Standard Oil Co.*, 175 F.2d 148, 150 (4th Cir. 1949) (finding implied authorization and consent because "although the written contract did not provide in express terms for delivery of a product which would infringe the patent, it did require maximum production, which necessarily resulted in a product containing the infringing ingredients"); *TVI Energy Corp.*, 806 F.2d at 1060 ("Government authorization was expressed by the specific requirement that [defendant] demonstrate, under the guidelines of the bidding procedure, the allegedly infringing targets at Fort Knox.").

Here, Nightforce argues the Government provided implicit consent by ordering specific scopes by part number, accepting delivery of those scopes, and paying Nightforce for the accepted scopes. According to Nightforce, because the Government ordered specific scopes by part number, it was "obligated to sell the government that product, even if a similar product [was] available or possible." Def. Reply 9, ECF 138.

The Court does not agree that the Government's purchase and acceptance of an allegedly infringing product is sufficient to prove that the Government intended to accept liability for a specific act of infringement. Nightforce's cited cases do not mandate a different conclusion. In both *Croydon Co., Inc. v. Unique Furnishing, Ltd.*, 831 F. Supp. 480 (E.D.N.C. 1993) and *Nasatka v. Delta Scientific Corp.* No. C.A. 93–1420–A, 1994 WL 16781686 (E.D. Va. Feb. 4, 1994), for example, the contracts at issue actually contained express "Authorization and Consent" clauses. In *Bereslavsky*, the disputed contract "require[d] maximum production, which necessarily resulted in a product containing the infringing ingredients; *and this was known to and encouraged by officials of the government*." *Bereslavsky*, 175 F.2d at 150 (emphasis added). In *Racing Optics v. Clear Defense, LLC*, the district court noted that: (1) defendant was "designated as the sole Government-approved supplier of the Accused Products;" (2) defendant "manufactured [the products] for, and sold them to, exclusively the Government or one of its contractors;" (3) "the Government tested, qualified, and approved the Accused Products," (4) the contract prohibited defendant "from altering the products without the Government's approval," and (5) defendant "provide[d] the Accused Product pursuant to that product's approved specification, and the Government or its contractor accept[ed] them for use." 1:16-cv-288, 2017 WL 3242258, *5 (M.D.N.C. July 28, 2017).

In *TVI Energy Corp.*, the only cited and relevant Federal Circuit case, the Government invited bids for a contract to supply the military with disposable thermal targets. 806 F.2d at 1059. The bidding procedure required the defendant to provide the Government with a model thermal target and conduct a live demonstration. *Id.* On these facts, the court found that "Government authorization was expressed by the specific requirement that [defendant] demonstrate, under the guidelines of the bidding procedure, the allegedly infringing targets." *Id.* at 160. However, as noted by the court *in Hutchinson Industries Inc. v. Accuride Corp.*, the bidding posture of *TVI Energy Corp.* is significant; courts construe implied authorization and consent more broadly in cases "where no Government contract has been awarded, and the alleged infringer is merely bidding on the contract." No. 09–1489 (FLW), 2010 WL 1379720, *7 (D.N.J. Mar. 30, 2010). In contrast, once a contract has been formed, "[b]ecause the parties have agreed to the terms of the contract, including when the Government will be liable for the contractor's infringement, a court should be hesitant to impose additional liability on the Government through a finding of implied authorization and consent." *Id.* at *6.

Not only do these cases fail to establish that the purchase and acceptance of an allegedly infringing product alone demonstrates implied authorization and consent, but each case relies on facts not present here. Unlike in *Bereslavsky*, Nightforce has offered no evidence that the Government knew that the scopes at issue contained allegedly infringing features. Unlike in *Racing Optics*, Nightforce has offered no evidence that it was either the Government's sole supplier of scopes or that it manufactured the scopes solely for the Government. Unlike in *TVI Energy Corp.*, Nightforce seeks to exclude contractual sales from the case; it did not provide the scopes in response to a request for pre-contract bids.

Additionally, while it may be true that the Government identified the scopes it wished to purchase "by part number," it appears to the Court that "part number" references the scope model rather than any particular feature. For example, an ADS purchase order calls for fifty units of "part number" "M243," described as "MIL-SPEC 5.5-22x56 WITH MIL-DOT RETICLE AND .250MOA ZEROSTOP." Bracken Decl. Ex. 1, ECF 96-1. Nightforce has not explained the significance of this "part number" or description, or argued that the Government specifically required any particular and patented features in its purchase orders or contracts. Indeed, without further argument or analysis, the Court can only conclude that a purchase by "part number" is merely standard practice. The Court therefore cannot conclude at this time that a purchase by part number—i.e., by scope model—somehow signifies the Government's intent to consent to the use of a patented invention.

While Nightforce may not be entitled to summary judgment on the current record, there are still questions of fact as to whether the Government implicitly consented to the use of a patented invention. For example, Nightforce argues in passing that, besides ordering specific scopes by part number and description, some Government contracts also include "a section for the Performance Specification for the Family of Dayscopes." Def. Mot. 5, ECF 93. While, in certain circumstances, the contents of a contract specification may demonstrate implied consent, Nightforce has made no attempt to interpret the contracts or specifications for the Court. *See Nextec Applications v. Brookwood Companies, Inc.*, 703 F. Supp. 2d 390, 434–35 (S.D.N.Y. 2010) (finding motion for summary judgment premature where the facts suggested it might be possible to meet the Government's specification without infringing the patents). The Court therefore denies the parties' motions for summary judgment as to those contracts and purchase orders alleged to contain implied authorization and consent.

## CONCLUSION

For the reasons stated above, the parties' motions for summary judgment are DENIED.

IT IS SO ORDERED.

Dated: _____March 29, 2020_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge