Scott E. Davis, OSB No. 022883
Email: scott.davis@klarquist.com
Todd M. Siegel, OSB No. 001049
Email: todd.siegel@klarquist.com
J. Christopher Carraway, OSB No. 961723
Email: chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone: (503) 595-5300

David A. Casimir, *pro hac vice*
Email: dacasimir@casimirjones.com
CASIMIR JONES, S.C.
2275 Deming Way, Ste. 310
Middleton, WI 53562
Telephone: (608) 662-1277

*Attorneys for Defendant*
LIGHTFORCE USA, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LEUPOLD & STEVENS, INC.,** | Civil Case No.: 3:16-cv-01570-HZ |
| Plaintiff, | **DEFENDANT NIGHTFORCE'S MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)** |
| v. | **REDACTED VERSION OF ECF NO. 226 FOR PUBLIC FILING** |
| **LIGHTFORCE USA, INC. d/b/a NIGHTFORCE OPTICS and NIGHTFORCE USA,** |  |
| Defendant. | **REQUEST FOR ORAL ARGUMENT** |

# TABLE OF CONTENTS

Page

LOCAL RULE 7-1 CERTIFICATION ........................................................................ 1

MOTION............................................................................................................. 1

MEMORANDUM ................................................................................................. 1

I.      INTRODUCTION ...................................................................................... 1

II.     LEGAL STANDARD .................................................................................. 4

III.    ARGUMENT ............................................................................................. 5

        A.      Finality As To The '305, '480 And '907 Patents................................ 5

        B.      No Just Reason For Delay Of Entry .................................................. 5

                1.      The Interests Of The Riflescope
                        Industry And Public Are Advanced By Finality......................... 6

                2.      It Would Be Inequitable To Force
                        Nightforce To Indefinitely Endure Uncertainty
                        About Whether Leupold Will Appeal Invalidity Of The '305 Patent ....... 7

                3.      Facilitating Settlement Favors Entering A Final Judgment Now ............. 10

                4.      Judgment On The '305, '480 And '907 Patents
                        Is Distinct And Unrelated To The Remaining "Turret Knob" Patents ..... 11

                5.      Final Judgment Is Appropriate Following
                        Effective Severance Of The '907 and '305 Patent Cases ......................... 12

        C.      Finality By Way Of A Judgment Is Equally
                Warranted For The "Withdrawn" '480 and '907 Patents .................................... 13

        D.      Leupold's Strawman Arguments Provide No Just Reason To Delay Entry ......... 14

                1.      Prevailing Party Status Need Not Be Decided
                        Now, And Is No Reason To Deny A Rule 54(b) Judgment...................... 15

                2.      A Preview Now Shows That Justice
                        Favors Any Step That Would Position Nightforce
                        As A Prevailing Party After Beating The '305  And
                        '907 Patent Cases—The Most Significant Cases In This Action ............. 15

i

    a) Leupold Knowingly Accused Prior Art
      Nightforce Scopes Of Infringing The '305 Patent ........................ 16

    b) Leupold's Untimely Assertion Of
      The'907 Patent, Knowing It To Be Invalid ................................. 21

IV.  CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Big Baboon, Inc. v. SAP Am., Inc.*,
  2019 WL 5088784 (N.D. Cal. Sept. 9, 2019),
   *report and recommendation adopted*, 2019 WL 5102644 (N.D. Cal. Oct. 11, 2019)............ 16

*Cold Metal Process Co. v. United Engineering & Foundry Co.*,
  351 U.S. 445 (1956) ....................................................................................................... 4

*Continental Datalabel, Inc. v. Avery Dennison Corp.*,
  2012 WL 6091248 (N.D. Ill. Dec. 7, 2012)....................................................................... 7, 8, 9

*Cooper Notification, Inc. v. Twitter, Inc.*,
  545 F. App'x 959 (Fed. Cir. 2013) ................................................................................... 14

*Curtiss-Wright Corp. v. General Elec. Co.*,
  446 U.S. 1 (1980) ........................................................................................................... 4, 8, 10

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  403 F.3d 683 (9th Cir. 2005) ........................................................................................... 13

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  2017 WL 5165606 (E.D. Tex. Oct. 15, 2017) ................................................................... 20

*Intergraph Corp. v. Intel Corp.*,
  253 F.3d 695 (Fed. Cir. 2001) ......................................................................................... 4

*Janssen Biotech, Inc. v. Celltrion Healthcare Co. Inc.*,
  210 F. Supp. 3d 244 (D. Mass. 2016)............................................................................... 7

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
  2009 WL 3806159 (M.D. Fla. Nov. 9, 2009)..................................................................... 7, 10

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969) ....................................................................................................... 6

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
  2012 WL 6680304 (N.D. Cal. Dec. 21, 2012).................................................................... 4

*Pope Mfg. Co. v. Gormully*,
  144 U.S. 224 (1892) ....................................................................................................... 3

iii

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*,
 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005) ....................................................... 17

*Seed Co. Ltd. v. Westerman*,
 2019 WL 3222412 (D.D.C. July 17, 2019) ............................................................. 5

*Shamley v. ITT Corp.*,
 869 F.2d 167 (2d Cir. 1989) ................................................................................. 7

*Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*,
 2018 WL 7893901 (D. Del. Dec. 17, 2018) ......................................................... 20

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
 329 F.3d 823 (Fed. Cir. 2003) .............................................................................. 4

*Sun Pharm. Indust. Ltd., v. Eli Lilly and Co.*,
 2009 WL 3497797 (E.D. Mich. Oct. 29, 2009) ................................................... 11

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
 57 F.3d 1054 (Fed. Cir. 1995) ............................................................................ 14

*Thermolife Int'l LLC v. GNC Corp.*,
 922 F.3d 1347 (Fed. Cir. 2019) .......................................................................... 23

*United Carbon Co. v. Binney & Smith Co.*,
 317 U.S. 228 (1942) .............................................................................................. 6

*W. L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*,
 975 F.2d 858 (Fed. Cir. 1992) .............................................................................. 4

*Wilson v. Hanrahan*,
 2019 WL 1386735 (E.D.N.Y. Mar. 27, 2019) ..................................................... 12

Statutes

28 U.S.C. § 1498 ........................................................................................................ 15

35 U.S.C. § 285 .......................................................................................................... 15

Rules

Fed. R. Civ. P. 54 ................................................................................................ Passim

Fed. R. Civ. P. 41 ..................................................................................................... 13

## LOCAL RULE 7-1 CERTIFICATION

In compliance with L.R. 7-1, the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so. Defendant ("Nightforce") files this motion with permission from the Court.

## MOTION

Nightforce moves for entry of a final judgment in accordance with Fed. R. Civ. P. 54(b), for three patents dispensed with in the first phase of this case. The judgment should be entered forthwith and:

(1)     Constitute a final judgment of invalidity of all asserted claims in U.S. Patent 6,816,305 (the '305 patent) (*see* ECF No. 204);

(2)     Render final Leupold's purported "withdrawal" with prejudice of its claims for infringement of U.S. Patent 7,721,480 (the '480 patent) (*see* ECF Nos. 223, 223-1); and

(3)     Render final Leupold's purported "withdrawal" with prejudice of its claims for infringement of U.S. Patent 6,351,907 (the '907 patent) (*see* ECF No. 220).

## MEMORANDUM

### I.     INTRODUCTION

Nightforce recognizes and appreciates the Court's guidance at the conference on September 2, 2020. Respectfully, the potential "to further complicate the case" by "open[ing] the door for all kinds of subsequent motions on those particular patents" (Sept. 2, 2020 Tr. at 4:22-24) may be avoided by case management orders as to the timing for briefing and decision of any subsequent motions. The potential issues the Court identified should be no barrier to the relief Nightforce requests.

Nightforce respectfully submits that a final judgment entered now on three patents would simplify what remains of this complex action, promote judicial efficiency, serve the interests of justice and mitigate the harmful anticompetitive cloud Leupold casts over the industry.

More specifically entering a final judgment now will:

1.    Serve the interests of justice for the public and entire riflescope industry by moving toward a final, final judgment of invalidity of the '305 patent and removing the cloud cast by Leupold's assertion of that patent and threat to appeal the Court's invalidity ruling;

2.    Avoid the inequity of any prolonged uncertainty over Nightforce's victory on the three patents that have been finally resolved in this Court, including Leupold's voluntary withdrawal of the '480 and '907 patents (seemingly because Leupold knew its '907 patent claims were futile);

3.    Promote productive settlement discussions by providing certainty as to which products and patents remain for future litigation, in this Court or on appeal;

4.    End litigation in this Court of up to 99.6% of the alleged damages and the vast majority of products accused of infringement, also facilitate potential settlement of the small portion of alleged damages remaining at issue (much of which is based on ███████████████████████████████████████████ ████████████████████████████████████████ ███████████); and

5.    Recognize the reality that the patents were by prior order already effectively severed into separate cases in this action that the Court has found to include "more like seven or eight different cases" (Oct. 18, 2019 Tr. at 4:11-17).

Important interests of the public strongly favor entry of a final judgment now. Leupold has said it may appeal the '305 patent invalidity ruling. If Leupold is permitted to delay appealing, or even deciding whether to appeal that ruling, a cloud of uncertainty will continue for the interested public, the riflescope industry and Nightforce, as there will be some question whether the Court's invalidity ruling will be upheld until there is a final, final judgment on the '305 patent. There is no just reason for the Court to permit that and needlessly extend marketplace uncertainty for an indefinite period by delaying a final judgment on the '305 patent until all other, unrelated claims are resolved in this Court at an indefinite time absent any trial or other dates being set in this action.

The interest of the industry is not hypothetical. At least ██████████████████ ████████████████ also have been accused of infringing the '305 patent as well as the '907 patent—and Leupold apparently has not withdrawn those allegations. Finality now, before every other patent asserted in this action is resolved, is "important to the public that competition should not be repressed by worthless patents." *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892).

Simply put, those patents that have been resolved—comprising up to 99.6% or ████ ████ of Leupold's damages claims—should be formally dispatched from this case by way of a judgment certified as final pursuant to Rule 54(b). There are no just reasons for delaying entry of a final judgment on the three patent "cases" within this action that have been finally adjudicated. The cloud cast over Nightforce, ██████████████████████, and others in the industry is not a light matter.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however, designated, that adjudicates fewer than all the claims or the rights and liability of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Therefore, "Rule 54(b) certification is proper where there is: (1) a final judgment; and (2) the district court determines that there is no just reason for delay of entry." *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 2012 WL 6680304, *2 (N.D. Cal. Dec. 21, 2012) (citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980)).

Federal Circuit law applies to Rule 54(b) certification in patent cases. *Storage Tech. Corp. v. Cisco Sys., Inc*. 329 F.3d 823, 830 (Fed. Cir. 2003). "[T]he factual relatedness of separate claims for relief is one of the factors a district court considers in deciding whether to exercise its discretion to certify an appeal." *W. L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 864 (Fed. Cir. 1992). Another factor to be considered is whether the Federal Circuit would need to "decide the same issues more than once even if there were subsequent appeals." *Id.* (citing *Curtiss-Wright*, 446 U.S. at 8). "Even for claims that arise out of the same transaction or occurrence, sound case management may warrant entry of partial final judgment. District courts have substantial discretion in determining when there is no just cause for delay in entering judgment under Rule 54(b)." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001) (citing *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445 (1956)).

There is no deadline to move for a Rule 54(b) judgment. *See Seed Co. Ltd. v. Westerman*, No. CV 08-355 (RJL), 2019 WL 3222412, at *4 (D.D.C. July 17, 2019) (finding movant "did not miss any deadline here"). Delay in "an interlude during which minimal litigation resources needed to be expended," does not provide "just reason to delay entry of final judgment" pursuant to Rule 54(b). *Id.* at *5.

## III.  ARGUMENT

There is no legitimate dispute that three of the eight patents in this action have reached finality in this Court. Absent any just reason to delay entry of final judgment on those three patents, the equitable and correct exercise of the Court's discretion is to enter judgment certified as final pursuant to Federal Rule of Civil Procedure 54(b).

The standard for entering a final judgment on the three patents at issue on this motion is met.

### A.    Finality As To The '305, '480 And '907 Patents

Leupold has not disputed—and there is no disputing—that nothing more need be done in this Court to enter final judgment disposing of the claims and counterclaims relating to the '305, '480 and '907 patents. The asserted claims of the'305 patent were found invalid. (*See* ECF No. 204.) Leupold has attempted to "withdraw" its assertion of the '480 and '907 patents "with prejudice." (*See* ECF Nos. 220, 223.)

### B.    No Just Reason For Delay Of Entry

There is no just reason to delay entry of judgment on three patents, and there are many sound reasons to enter a Rule 54(b) judgment now.

1.    **The Interests Of The Riflescope**
      **Industry And Public Are Advanced By Finality**

Leupold has asserted patents at issue on this motion against others in the industry. Of

those assertions disclosed to Nightforce, ██████████ continues to operate under threat of both

the '305 patent and the '907 patent. Leupold asserted that ██████████████████████

████████████████████ with a side parallax adjustment mechanism" infringes the '907 patent and

"all riflescopes offered by ██████████████████ infringe the '305 patent. (*See* ████

Decl. Ex. 2.) Despite the Court's invalidity ruling on the '305 patent, Leupold has *maintained* its

demands that ████████████████████████████████

████████████████████████████████████ and "provide an accounting" for

riflescopes alleged to infringe. (*See id.* ¶¶ 3-5, Ex. 2.) ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████.)

Presumably, Leupold also has not withdrawn its threats under the '305 and '907 patents

against ████████████████████ (If it had, any written communication to

that effect surely would have been produced to Nightforce.)

Perhaps Leupold has not withdrawn its assertions of the '305 patent because it plans to

appeal the Court's invalidity ruling on the '305 patent. (*See* Pellikaan Decl. Ex. 3 at 5 n.2.) In

any case, sowing uncertainty about its patent rights is good for Leupold because it deters lawful

competition from others. *Cf. Lear, Inc. v. Adkins*, 395 U.S. 653, 656 (1969) (considering "the

strong federal policy favoring free competition in ideas which do not merit patent protection");

*United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942) ("A zone of uncertainty

which enterprise and experimentation may enter only at the risk of infringement claims would

discourage invention only a little less than unequivocal foreclosure of the field.").

Just as for Nightforce, the industry and the public have an interest in the invalidity of the

'305 patent becoming final in a final and unappealable judgment. *See Janssen Biotech, Inc. v.*

*Celltrion Healthcare Co. Inc.*, 210 F. Supp. 3d 244, 252 (D. Mass. 2016) (entering final

judgment of invalidity under Rule 54(b) on opposed request of the accused infringer in part so

third party doctors could prescribe medication without protracted uncertainty concerning

potential infringement); *see also Shamley v. ITT Corp.*, 869 F.2d 167, 170 (2d Cir. 1989)

(approving entry of Rule 54(b) judgment to create res judicata effect in other litigation). There is

no just reason to leave any cloud of uncertainty about the '305 patent's invalidity pending

disposition of the remaining patents in this action.

> ### 2. It Would Be Inequitable To Force Nightforce To Indefinitely Endure Uncertainty About Whether Leupold Will Appeal Invalidity Of The '305 Patent

Alleging that every Nightforce riflescope model infringed the '305 patent, Leupold

sought over ███ million in damages on that patent alone through FY2018. (Pellikaan Decl. Ex. 6

at 7-8.) "Having prevailed on those claims, [Nightforce] should be allowed to proceed toward a

final disposition of them, whether through an appeal by [Leupold] or [Leupold]'s decision to

forego an appeal." *Continental Datalabel, Inc. v. Avery Dennison Corp.*, No. 09 C 5980, 2012

WL 6091248, at *4 (N.D. Ill. Dec. 7, 2012). The financial interests of Nightforce weigh in favor

of certifying a Rule 54(b) judgment in this case. *See id.*; *Johnson & Johnson Vision Care, Inc. v.*

*CIBA Vision Corp.*, 3:05-cv-135-J-32TEM, 2009 WL 3806159, *5, n.10 (M.D. Fla. Nov. 9,

2009) ("An immediate appeal and final resolution of these core liability issues will help alleviate

. . . business uncertainty . . .").

In *Continental Datalabel*, the district court entered a Rule 54(b) judgment on defendant Avery's defeat by summary judgment of plaintiff Continental's Lanham Act and tortious interference claims. *Id*. at *1. Continental's patent claims remained in the case, but they were stayed pending reexamination by the Patent and Trademark office. *Id*. At the time of the ruling, it was uncertain when reexamination proceedings would conclude and no trial for the patent claims had been scheduled. *Id*. at *4. The district court noted that Continental's expert had opined that Avery was unjustly enriched by $35.2 million by alleged false advertising, therefore the two claims on which Avery was successful had a substantial amount of money at stake. *Id.* The court considered it to "be inequitable to force Avery to endure the uncertain status of its victory on those claims—a form of financial uncertainty that could detrimentally affect Avery's planning and business transactions—until the perhaps very distant date at which the patent claims can at last be adjudicated." *Id.* The court noted that "[t]he prevailing party's financial interests are pertinent to the Rule 54(b) analysis, and here support entry of a Rule 54(b) judgment." *Id*. (citing *Curtiss-Wright Corp*., 446 U.S. at 11-12).

The reasoning in *Continental Datalabel* is applicable here. It would be unjust for Nightforce to face any financial uncertainty over the ▮ million+ Leupold sought on the '305 patent. As Nightforce is a much smaller company—less than ▮% the size as measured by gross sales[1]—than Avery (the prevailing defendant in *Continental Datalabel*), Leupold's damages demand is far more significant in this case.

Also similar to the plight of the defendant in *Continental Datalabel*, the delay until any possible appeal of the remaining patents in this action is indefinite, and likely substantial. First, no trial date has been set on any one of those patents—and Nightforce considers them to fit into

---

[1] *Compare* Pellikaan Decl. Ex. 7 at Exhibit 11.0 *with* Ex. 8 at 61.

three distinct categories warranting two or three separate trials. Discovery also is not complete. Among other issues, technical experts have not been deposed on their reports regarding the remaining patents on "turret knobs." Leupold also has proposed adding a new patent to this action, which would require additional discovery, dispositive motions, expert reports and claim construction proceedings, further delaying any final resolution as to the remaining patents in this Court. (*See* Pellikaan Decl. Ex. 9.) Any final trial in this Court is not likely to be soon.

Finally, as even the plaintiff recognized in *Continental Datalabel*, "there is some risk that fact witnesses and expert witnesses whose testimony is important to the . . . claims [on which the defendant sought a Rule 54(b) judgment] will become unavailable in the long run." *Id.* at *4. That risk of witnesses becoming unavailable already has been realized for other patents in this case with the passing of Bernard Windauer, the named inventor on the locking turret knob patents.[2] (*See* Pellikaan Decl. Ex. 10.)

This action has been pending for several years—because Leupold filed so many patent cases as a single action. The patents that have been resolved in this Court should be dispatched now to reduce prejudice and the risk of loss of evidence caused by any delay until the entire action may be resolved.

[2] The loss of Mr. Windauer effectively locks in the record to the limited summary judgment evidence Leupold offered to try to show an invention date before the filing date of the Windauer patent applications. Without prejudging the Windauer patent invention date issue pending before the Court on summary judgment motions, it is now clear that Leupold can offer no improved evidence at trial—such as Mr. Windauer's testimony—attempting to identify which (if any) portions of the computer files containing the only drawings offered to corroborate his alleged invention date were created before the far too late last "modified" date on those files (*see* ECF Nos. 137-1; 168-1 at 7-10).

DEFENDANT NIGHTFORCE'S MOTION FOR
ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)                    9

### 3.    Facilitating Settlement Favors Entering A Final Judgment Now

As recognized by the Supreme Court, a factor in Rule 54(b) certification can be to

"facilitate a settlement of the remainder of the claims." *Curtiss-Wright Corp.*, 446 U.S. at 8 n.2.

That factor may "offset" others, including "a possibility that an appellate court would have to

face the same issues on a subsequent appeal." *Id.*

Here, the remainder of the case is relatively small if Leupold's damages claims under the

'305 patent and the '907 patent are eliminated by a final judgment. Nightforce defeated up to

99.6% of Leupold's damages claims. (Pellikaan Decl. Ex. 6 at 10 (Updated Fig. 46, Alternative

B).) Much of the remaining alleged damages at issue are based on the Windauer patents for

which Leupold relies on ███████████████████████ (*see* Pellikaan Decl. Ex. 7 at

78)—███████████████████████████████████████████████

███████. Moreover, the number of riflescopes accused of infringing the remaining patents in the

action is less than 5% of the number accused of infringing the '305 patent, based on unit sales

through FY2018. (*See* Ex. 6 (Updated Exs. 4.3A-4.5A).)

While a settlement would not be certain following a Rule 54(b) judgment, the litigation

between these two parties in two separate actions pending in this District certainly would not

settle if the '305 patent invalidity ruling remains in play. A Rule 54(b) judgment should be

entered to "possibly facilitate global settlement of the pending litigation between these parties."

*Johnson & Johnson Vision Care*, 2009 WL 3806159 at *5.

4.    **Judgment On The '305, '480 And '907 Patents**
      **Is Distinct And Unrelated To The Remaining "Turret Knob" Patents**

All claims and issues related to the three patents on which final judgment should be entered are separate from and unrelated to the remaining "turret knob" patents. The patents remaining in this action all relate to very different technology (turret knobs) and name different inventors than the '305, '480, and '907 patents.

The fact that a small percentage of products alleged to infringe the '305 patent also stand accused of infringing the turret knob patents is of no moment. Prior art invalidity of the '305 patent has nothing to do with whether any of the remaining patents is invalid or not infringed, or what damages would be available for any of those patents. If Leupold did appeal the '305 patent invalidity ruling after a Rule 54(b) judgment, the Federal Circuit would not need to consider the same issues more than once even if either party were to appeal a later judgment on the remaining patents.

Moreover, there would be no reason to delay trial or other disposition of the turret knob patents pending any appeal of the '305 patent invalidity ruling. *See Sun Pharm. Indust. Ltd., v. Eli Lilly and Co.,* No. 07-cv-15087, 2009 WL 3497797, *2 (E.D. Mich. Oct. 29, 2009) (where trial on second patent is not delayed by entry of Rule 54(b) final judgment of invalidity on first patent, plaintiff's argument that judicial efficiency would be served by avoiding the possibility of two appeals was not persuasive). On the other hand, if an appeal of the '305 patent invalidity ruling completed before a trial on any of any remaining patents in this action, and in the unlikely event that the invalidity ruling was reversed, then judicial efficiency might be achieved by consolidating patents into a single trial.[3]

---

[3] That, of course, would require balancing any efficiency gain against the possibility of confusing or overwhelming a jury with unrelated patents, which may depend on which patents and issues remained in this action at that time.

**5.      Final Judgment Is Appropriate Following
Effective Severance Of The '907 and '305 Patent Cases**

The Court set the '907 patent for a separate trial, effectively severing this action:

> So one of the things that happened as we were going through your summary judgment motions is I realized that while ***I was treating this as though it was one case, it really is more like seven or eight different cases***. And that was my mistake in not realizing that sooner. And as I was going through it, it occurred to me, this is what our problem is, is that ***it's a huge packet of cases as opposed to one case***. And ***so I decided to break it up***, and that's why you received a ruling on the '907 and have not received other rulings.
>
> It is my intent to proceed to trial on the '907. Before that trial occurs, it is my intent to have the issues around 28 USC 1498 resolved for you, because they may be relevant to the trial.
>
> And I have hopes to have the '305 summary judgment motions done towards the beginning of the year. And the parties can then confer and decide whether they want to do a trial with the '907 and the '305 together or whether they want to proceed to trial on the '907.

(Oct. 18, 2019 Tr. at 4:8-25 (emphasis added).)

The Court expressly disagreed with Leupold's objection that there were "some [Seventh A]mendment issues regarding having different juries determine the same facts that cross over between multiple patents." (*Id.* at 5:15-17, 6:3-7.) Then, the parties agreed that the '305 patent, but no other patents, should be included along with the '907 patent in a first trial set in May 2020. (*See, e.g.*, ECF No. 183 at 5, n.4 (Leupold noting that both parties were "advocat[ing] for trying the '305 patent together with the '907 patent in the first trial.").)

The Court was correct in deciding that this action includes "a huge packet of cases as opposed to one case." (Oct. 18, 2019 Tr. at 4:14-15.) The Court also was correct to "break it up" as it did. (*Id.*) That is now law of the case. *See Wilson v. Hanrahan*, No. 12-CV-06024 (BMC), 2019 WL 1386735, at *9 (E.D.N.Y. Mar. 27, 2019) (treating "decision to sever" a claim as law of the case), *aff'd*, 804 F. App'x 58 (2d Cir. 2020).

Entering final judgment now on three of the patent cases within this action merely effectuates the Court's prior rulings effectively severing the '305 and '907 patent cases. Rule 54(b) "is simply an alternative to formal severance of the adjudicated claims from the remainder of the action under Rule 21 . . ." 10 Moore's Federal Practice - Civil § 54.20[2] (2020). The effect of a formal severance under Rule 21 and the requested 54(b) judgment here are no different. And the Court already made the finding that this action includes "a huge packet of cases as opposed to one case" and so therefore "decided to break it up." (Oct. 18, 2019 Tr. at 4:14-15.)

By way of this motion, Nightforce merely asks that the Court execute rather than reconsider its prior decision to "break up" this "huge packet of cases" and effectively sever the '305 and '907 patent cases.

### C.    Finality By Way Of A Judgment Is Equally Warranted For The "Withdrawn" '480 and '907 Patents

Claims and counterclaims on the '480 and the '907 patents technically remain pending. Leupold purported to "withdraw" the '480 and the '907 patent claims with prejudice. (*See* ECF Nos. 220, 223.) Leupold, however, did not use a procedure permitted by the Rules to do so. Federal Rule of Civil Procedure 41(a) allows for dismissal of an action at a plaintiff's request, but only by stipulation or court order at an advanced stage of the case. Leupold sought neither a stipulation nor an order. Nor is Rule 41 the applicable rule. "[W]ithdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendments to pleadings." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) (citation omitted).

Leupold "withdrew" the '907 patent three years after asserting it and less than three months before trial. Under those circumstances, a party cannot unilaterally drop a claim.

DEFENDANT NIGHTFORCE'S MOTION FOR
ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)                                    13

Nightforce was entitled to be heard on whether conditions should attach to Leupold's attempt to effectively amend its complaint to drop the '480 and the '907 patents with prejudice.

In any event, the applicable procedure provides the judicial imprimatur of a judgment and order dismissing claims under the '480 and the '907 patents with prejudice. Following a patentee's attempt to moot claims by suddenly issuing a covenant not to sue, as Leupold did for the '480 and the '907 patents, the Federal Circuit has affirmed dismissal with prejudice by district courts as the appropriate procedure. *See, e.g.*, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995) (in seminal case on point, affirming the order of the trial court dismissing the case with prejudice following patentee's promise not to sue) (abrogated on other grounds); *Cooper Notification, Inc. v. Twitter, Inc.*, 545 F. App'x 959, 967 (Fed. Cir. 2013) (affirming dismissal with prejudice where plaintiff sought to drop patent claims but later withdrew its stipulation).

Finally, only the Court's order and final judgment can provide Nightforce certainty that it "will never be confronted again with claims" in the '480 patent or '907 patent. *Cooper Notification*, 545 F. App'x at 967 (noting that the district court "was entitled to insulate the Defendants from the exact situation we have before us, *i.e.*, the desire of Cooper to reassert the claims at a later date"). Even if its claims are moot, the Court's imprimatur making Leupold's withdrawal of its '480 and '907 patent claims a final, and with prejudice, dismissal is appropriate. *See id.*

### D.    Leupold's Strawman Arguments Provide No Just Reason To Delay Entry

In Leupold's August 24, 2020, email to the Court opposing Nightforce's request for leave to file this motion, it erected inapposite and conclusory arguments. Leupold identified no just (or judicially recognized) reason for delaying entry of judgment that has not been already decided by

this Court—there are no overlapping issues of fact barring Rule 54(b) certification as the Court otherwise could not have decided to break up the case as it did.

### 1. Prevailing Party Status Need Not Be Decided Now, And Is No Reason To Deny A Rule 54(b) Judgment

Leupold emphasized in its email to the Court its concern that entering a Rule 54(b) judgment now necessarily would result in immediately briefing prevailing party issues such as attorney fees and costs. The Court echoed that concern: "I think it's going to further complicate the case, because it then opens the door for all kinds of subsequent motions on those particular patents that would be resolved if I were to follow the defendant's directions." (Sept. 2, 2020 Tr. at 4:22-25.)

Respectfully, to the extent those issues are a concern, they may be eliminated by simple case management orders regarding the time for briefing and deciding fees and costs. While Rule 54(d) sets a presumptive deadline to seek costs or fees following entry of judgment, the Court has discretion to reset that deadline for any later date, even a date after any appeals are resolved.

### 2. A Preview Now Shows That Justice Favors Any Step That Would Position Nightforce As A Prevailing Party After Beating The '305 And '907 Patent Cases—The Most Significant Cases In This Action

Leupold's real concern with this well-founded motion is the potential consequence. Leupold hopes to deny prevailing party status to Nightforce despite that Nightforce won on the important patents—comprising up to 99.6% of alleged damages in this action.[4] On the schedule allowed by the Court, Nightforce will show that Leupold's real concern is a real concern. Not only did Nightforce prevail, but also Leupold's litigation positions were exceptionally weak, warranting a fees award under 35 U.S.C. § 285.

---

[4] Turret knob patents are asserted against a very small percentage of sales, and are unimportant to all but some government sales (most or all of which are insulated by 28 U.S.C. § 1498).

**a)**    **Leupold Knowingly Accused Prior Art**
       **Nightforce Scopes Of Infringing The '305 Patent**

A fundamental problem with Leupold's assertion of the '305 patent was that accused Nightforce products were themselves *invalidating prior art*. Leupold was on notice of that fact very early[5] in the litigation—but it persisted. Those facts present a classic "exceptional case" warranting a fees award for compensation and deterrence: "In pursuing an infringement case against what was undisputed prior art, [Leupold]'s suit is 'exceptional' under Section 285." *Big Baboon, Inc. v. SAP Am., Inc.*, No. 17-CV-02082-HSG, 2019 WL 5088784, at *6 (N.D. Cal. Sept. 9, 2019), *report and recommendation adopted*, No. 17-CV-02082-EDL, 2019 WL 5102644 (N.D. Cal. Oct. 11, 2019), *aff'd*, __ Fed. App'x __, (Fed. Cir. Sept. 2, 2020).

Despite knowing Nightforce products were prior art, Leupold stubbornly demanded that Nightforce pay damages and stop making scopes the same way they had been made for approximately seven years before Leupold filed a patent application. It takes no training in the law to know that is wrong. This Court never should have had to rule on the simple point that a party should not be preempted from its longstanding business by a patent application filed years later. Leupold's counsel tried to thread a needle through what it perceived as a pinhole in the patent law. That effort was doomed at the outset. But, again, it takes no legal training to recognize that it was *wrong to assert the '305 patent against a product that preceded Leupold's patent application by many years*.

Leupold has offered no substantial justification for forcing 3½ years of litigation accusing Nightforce's *prior art products* of infringement. ███████████████████ Leupold knew Nightforce's invalidating prior art products were on sale in this country, more than one

---

[5] As shown in the timeline below, ████████████████████

year before filing the application resulting in the '305 patent. Leupold also was on notice that

Nightforce products were prior art long before filing suit because Nightforce provided evidence

of that in pre-suit correspondence. (*See* Pellikaan Decl. Ex. 11.) Finally, there was no doubt that

Leupold actually knew promptly after suing that it had accused prior art of infringing, because

Nightforce produced sales records, drawings and a physical specimen from the 1990s having the

same material design as accused products. *See Realtek Semiconductor Corp. v. Marvell*

*Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617, at *5-*6 (N.D. Cal. Nov. 21,

2005) (awarding fees where patent owner "should have known, prior to filing suit, that it could

not prevail" because the defendant's products were prior art and patent owner did "not explain

why it continued to pursue the instant lawsuit after April 8, 2005, the date on which [defendant]

produced sales data showing numerous sales of the accused product" in the prior art period).

    Nevertheless, Leupold persisted and maintained its baseless patent assertion for years,

without disputing that Nightforce NXS products were in fact prior art.

    Some portions of the relevant timeline relating to the '305 patent are summarized below.

| '305 Patent Partial Timeline | |
|---|---|
| 1995 – 2001 | **Nightforce markets and sells prior art NXS scopes.** |
| 1999 – June 2001 | **NXS scopes are widely publicized and known.**[6]  |
| ████ | ████████████████████████████ |
| October 28, 2001 | **Critical date for the '305 patent.** |

---

[6] *See, e.g.*, ECF Nos. 112-1; 112-2 and archived website pages
(https://web.archive.org/web/19991115054850/http://www.nightforcescopes.com/information.html; https://web.archive.org/web/20010618163343/http://www.nightforceoptics.com/nxs.html)

| '305 Patent Partial Timeline | |
|---|---|
| October 28, 2002 | **Leupold files patent application resulting in the '305 patent.** |
| January 30, 2004 | ████████████████████████████████ |
| November 2001 – 2004 | ████████████████████████████████ |
| November 9, 2004 | **Patent Office issues the '305 patent**, unaware of the prior art NXS scopes ████████████████████████████ |
| November 25, 2008 | ████████████████████████████████ |
| August 2, 2016 | **More than 12 years after** ████████ **Leupold sues Nightforce**, specifically accusing "NXS model names" (ECF No. 1 ¶ 53), ████████████████████ |
| January 26, 2017 | **Notice in litigation of invalidating prior art NXS scopes.** Nightforce puts Leupold on notice that prior art NXS scopes having "preassembled pivoting lens units" were publicly used and sold in the U.S. many years before the October 28, 2001, critical date for the '305 patent. (*See* Pellikaan Decl. Ex. 15.) |
| February 3, 2017 | **Invalidating drawings, catalogs and sales records for NXS scopes formally produced to Leupold.** Nightforce produced pre-critical date drawings, catalogs and invoices documenting many pre-critical date sales for NXS scopes. (Pellikaan Decl. Ex. 16; *see also* ECF Nos. 112-1, 112-2, 112-5.) |
| May 31, 2017 | **Leupold's deceptive claim construction.** Leupold proposes an apparently benign claim construction requiring the pivoting lens unit to be made "in a separate operation," citing in support an ordinary meaning: "Preassembled – 'assembled beforehand.' *McGraw-Hill*, Dictionary of |

| '305 Patent Partial Timeline | |
|---|---|
| | Engineering, pg. 381 (1997)." (Pellikaan Decl. Ex. 17.) Nightforce agreed as it was obvious that the operation of assembling the lens unit must precede positioning the lens unit in the housing. |
| July 2017 | **Production of invalidating NXS scope for inspection in litigation.** Nightforce provides a prior art NXS scope to Leupold to inspect. (Pellikaan Decl. Ex. 18.) |
| September 29, 2017 | **Leupold again offers ordinary meaning as support for the agreed claim construction.** In the parties' joint claim construction chart, Leupold's evidence provided to the Court in support of the agreed construction deceptively repeated an ordinary meaning: "Preassembled – 'assembled beforehand.' *McGraw-Hill*, Dictionary of Engineering, pg. 381 (1997)." (ECF No. 45 at 69.) |
| May 30, 2018 | **Fees warning as Leupold keeps its head in the sand.** Nightforce sends letter noting that Leupold had intentionally kept its head in the sand regarding invalidity of the '305 patent in view of prior art Nightforce NXS products, and that Nightforce would seek an exceptional case finding and an award of fees. (Pellikaan Decl. Ex. 19.) |
| September 10, 2018 | **Leupold Expert's head in the sand.** Mr. Byron posits only two ways the prior art NXS scopes might be assembled, and asserts Nightforce failed to provide evidence that those scopes were assembled the only practical way. He also relies on an alleged lack of evidence that prior art NXS scopes "were assembled in advance of installation in a separate operation," despite that he did not define what he contended "in a separate operation" required. (ECF No. 107-3 at 170-171.) |
| October 5, 2018 | **Leupold motion for summary judgment.** Having refused to narrow the set of asserted claims, Leupold moves for summary judgment on effectively every issue in the case other than the amount of damages. Leupold argues that<br>1. at least 11 claims in the '305 patent are infringed under Section 271(a), and<br>2. prior art NXS scopes were not invalidating absent proof the pivoting lens units "were assembled not just in advance of installation into the housing, but ***in a separate operation*** from housing installation" (whatever that means). (*See* ECF No. 101.) |

| '305 Patent Partial Timeline | |
|---|---|
| | **Nightforce moves for summary judgment.** Nightforce shows how every asserted claim in the '305 patent is invalid as anticipated or obvious in view of prior art NXS scopes, and cites controlling law that the method of manufacture (including whether it used "a separate operation") is irrelevant to invalidity of the 9 asserted apparatus claims (i.e., all asserted claims but 26 and 27). |
| October 26, 2018 | **Leupold abruptly drops the apparatus claims.** Having no argument that 9 of 11 asserted claims are not invalid, Leupold purports to drop those 9 claims rather than defend them against Nightforce's motion for summary judgment, with Leupold characterizing it as "an opportunity to reduce the number of asserted claims/defenses in the case as the Court has requested and to narrow the issues for decision." (ECF No. 124 at 9.) |
| November 19, 2018 | **Leupold asserts, contrary to law, that it is entitled to *more* damages because it *dropped* claims.** Through its expert, Leupold takes the position that it is entitled to *more* damages on the '305 patent after dropping the 9 apparatus claims.[7] (Ex. 6 at 5.) |
| December 17, 2018 | **At Court hearing, Leupold's counsel fails to define its understanding of "in a separate operation."** With one last chance at the summary judgment hearing, Leupold could identify only one thing that it believed was *not* preassembly in a separate operation (i.e., a single technician building a scope from start to finish), but had no reasonably certain definition of what it *is*. (*See* Dec. 17, 2018 Tr. at 64:9.) |
| January 21, 2020 | **Court finds asserted claims invalid.** Agreeing with Nightforce and rejecting Leupold's threadbare "in a separate operation" argument, the Court notes that "Leupold does not, in its briefing, at oral argument, or through its expert, define the term 'separate operation'" and "the Court sees no support within the patent for the term as conceptualized by Leupold." (ECF No. 204 at 17-18.) |

[7] It "defies logic" that Leupold would allege *more* damages as a result of its decision to drop apparatus claims in response to Nightforce's motion for summary judgment of invalidity (ECF Nos. 109, 124). *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 WL 5165606, at *3 (E.D. Tex. Oct. 15, 2017) (granting partial summary judgment of no pre-suit damages where apparatus claims were asserted, then dropped leaving only method claims and noting that to "conclude that application of the [marking] statute turns on a patent holder's decision to drop apparatus claims at some point during litigation defies logic"); *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. CV 16-284-LPS-CJB, 2018 WL 7893901, at *4 (D. Del. Dec. 17, 2018) (granting partial summary judgment of no pre-suit damages, where in addition to the method claims, "Siemens initially asserted an apparatus claim from the '850 patent, so the marking statute is applicable to that patent").

DEFENDANT NIGHTFORCE'S MOTION FOR
ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)                20

The lack of merit to Leupold's assertion of the '305 patent against scopes that were not challenged as being prior art makes this case exceptional and will support an award of fees and expenses to Nightforce. Leupold's litigation tactics relating to the '305 patent also make the case exceptional, and will support awarding fees and expenses for compensation and deterrence.

        **b)**      **Leupold's Untimely Assertion Of**
                      **The '907 Patent, Knowing It To Be Invalid**

Had the May 2020 trial proceeded in this action, Nightforce would have shown that the '907 patent was invalid, never should have been asserted, and ███████████████████████

A timeline similar to the foregoing for the '305 patent (but showing even more egregious conduct by Leupold) can be presented at a later date to show the exceptional weakness of Leupold's assertion of the '907 patent—for which it sought over ███ million in damages. A brief summary is set forth below:

The evidence at trial would have shown that ████████████████████████ ████████████████ the invalidating Schmidt & Bender 4-16x50 scopes with a spiral cam parallax adjustment knob had been offered for sale, sold, disclosed, and used in the United States before the critical date in January 1998.

As the record stands, the evidence shows that Leupold believed that invalidating Schmidt & Bender 4-16x50 scopes dated to 1997.[8] Leupold's former employees also believed ███ ████ in the 2000s when he said that the invalidating 4-16x50 scopes were shipped to the United States no later than December 1997, and Leupold's former employees would have so

---

[8] For example, Leupold's corporate representative testified that ████████████████████████ (ECF Nos. 131-7 at 151:22-24; 180 at 24 ("Werth eventually agreed that 'the presumption was' that the 1997 date of shipment was correctly documented in the emails . . . The Court finds this to be an admission.").)

testified at trial. ██████████████████████████████████████████████

████████████████ understood ████████ to be saying that the invalidating 4-16x50 scopes

were sold into the United States in 1997. Indeed, the question ██████████ as framed by

Leupold was whether ███████████████████████████████████████████

December 1997. (Ex. 20 at 2.) Leupold noted that the specific question ████████████████

██████ (*Id.*) ██████████ answered in the affirmative to the specific question posed: ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ (*Id.* at 1.) That Leupold's management believed Schmidt & Bender's 4-16x50

scopes were invalidating prior art is borne out by its failure to move forward and sue Nightforce

██████ in the 2000s. ████████████████████████████████████████████

████████████████████████████████████████████████ Nightforce

would have shown at trial that Leupold did not believe it should assert the '907 patent in view of

prior art, and made a business decision not to try to enforce it.

Moreover, Leupold gets no credit for having tried to stick its head in the sand to later

deny in this litigation that sufficient evidence of invalidity had been provided by Schmidt &

Bender. ████████████████████████████████████████████████████

████████████████████████████████ When the answers were bad for Leupold, it should

be no excuse that Leupold asked for no further clarification or evidence ████████████████

That supports finding Leupold acted in bad faith in filing the '907 patent case against

Nightforce—a decade after believing that Nightforce infringed (ECF No. 102 at 17-26) and after

much of the prior art evidence dissipated.

While Leupold knew invalidating Schmidt & Bender scopes were on sale in 1997, it sued anyway, more than a decade after ███████████████████████████████████. [9] Leupold maintained the '907 patent suit, at great expense to Nightforce, until essentially the eve of trial and then unilaterally attempted to drop it.

Despite not having a trial on its '907 patent defenses, Nightforce can use them to support that this was an exceptional case for which Nightforce should be awarded its fees and expenses. *See Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (affirming fees award where exceptional-case finding rested on an issue "that was neither fully adjudicated nor even fully litigated before the judgment on the merits").

## IV.    <u>CONCLUSION</u>

For at least the foregoing reasons, Nightforce's motion should be granted and a Rule 54(b) judgment certified as final should be entered forthwith for the '305, '480 and '907 patents.

DATED September 16, 2020.

Respectfully submitted,

By:  *s/Scott E. Davis*
Scott E. Davis, OSB No. 022883
Email: scott.davis@klarquist.com
Todd M. Siegel, OSB No. 001049
Email: todd.siegel@klarquist.com
J. Christopher Carraway, OSB No. 961723
Email: chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP

---

[9] Substantial additional evidence will not be detailed here. Leupold knew and had reason to know of Schmidt & Bender's release of the 4-16x50 before the '907 patent's critical date. The scope was at the industry trade show, SHOT. It was advertised in the same publications in which Leupold advertised etc. Everything pointed to the scope being prior art.

DEFENDANT NIGHTFORCE'S MOTION FOR
ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)                23

David A. Casimir, *pro hac vice*
Email: dacasimir@casimirjones.com
CASIMIR JONES, S.C.

*Attorneys for Defendant*
LIGHTFORCE USA, INC.